# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | | |
|---|---|---|
| **B.F. HICKS, GARY BOREN** | § | |
| **and KATHY BOREN** | § | |
| | § | |
| **v.** | § | **Civil Action No. 5:23cv81-RWS-JBB** |
| | § | |
| **SCOTT ANDREWS, ET AL.** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The above-referenced case was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. §636. Before the Court are the following pending motions:

> **Plaintiff's Motion to Remand and For Attorney's Fees (Dkt. No. 12) and supplement thereto (Dkt. No. 15);**
>
> **Plaintiff's Provisional Motion to Amend (Dkt. No. 13); and**
>
> **Defendant Scott Andrew's Motion to Dismiss (Dkt. No. 21).**

The Court, having reviewed the relevant briefing, recommends Plaintiffs' motion to remand be **DENIED.**[1] Plaintiffs' motion for leave to amend is **DENIED**. Having determined that Defendant Andrews was improperly joined, the undersigned recommends Plaintiffs' claims against Scott Andrews be **DISMISSED** without prejudice and that Defendant Scott Andrews' Motion to Dismiss (Dkt. No. 21) be **denied as moot**.

---

[1] *See Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th. Cir. 2016) ("[A] motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to de novo review.").

# I. **Background**

Plaintiffs B.F. Hicks, Gary Boren, and Kathy Boren ("Plaintiffs") originally filed this lawsuit in the 62nd Judicial District Court of Franklin County, Texas, on June 29, 2023, alleging causes of action against Scott Andrews, Stockyard Solar Project, LLC, Saddle House Solar Project, LLC, ("Saddle House") Enel Energy North America Texas, LLC, Enel Green Power Azure Blue Jay Solar Holdings, LLC, Enel Green Power Estonian Solar Project, LLC, Enel Green Power Lily Solar Holdings, LLC, Enel Green Power N.A. Development, LLC, Enel Green Power North America, Inc., Enel Green Power Roadrunner Solar Project I, LLC, Enel Green Power Roadrunner Solar Project II, LLC, and Enel Green Power Roseland Solar, LLC (collectively "Defendants") for (1) intentional nuisance; (2) negligent nuisance; (3) strict-liability nuisance; (4) anticipatory nuisance; (5) violation of the Texas Water Code; and (6) declaratory judgment. *See* Cause No. 13077, *B.F. Hicks, Gary Boren, and Kathy Boren v. Scott Andrews, et al.* (the "State Court Action"). Defendant Saddle House filed its Notice of Removal on July 28, 2023. Dkt. No. 1.

After Saddle House filed its Notice of Removal, Plaintiffs filed their amended complaint pursuant to this Court's Order and Advisory dated August 1, 2023. Dkt. No. 5. Plaintiffs allege as follows in the amended complaint.

This case involves Defendants' intentions to install 620,000 solar panels, DC electric lines that run to a 220 MW/AC storage facility (BESS) on the land surrounding Plaintiffs' acreage. Dkt. No. 7, ¶¶ 4, 21, 30. Simply stated, a BESS is "a collection of large lithium batteries for the purpose of storing electricity." *Id.,* ¶ 28; *see also Id.,* ¶ 29 (alleging "[t]he well-known danger of the lithium batteries comprising a BESS are fire, emission of toxic chemicals and gasses, and even explosion. A BESS is so hazardous that it should be surrounded by an Evacuation Zone in the event of a mishap as described above."); *See also Id.,* ¶ 32.

Plaintiff B.F. Hicks is an individual who resides in Franklin County, Texas, in the Eastern District of Texas, Texarkana Division. Dkt. No. 7, ¶ 1. He owns approximately 1,000 acres of land in Franklin County. *Id.*, ¶ 18. Plaintiffs Gary Boren and Kathy Boren are husband and wife who own five acres in Franklin County within 200 yards of the proposed BESS. *Id.*, ¶ 30. They have resided on this land for 23 years. *Id.*, ¶ 27.

Defendant Scott Andrews ("Andrews") owns the acreage surrounding Plaintiff Hicks on two sides. *Id.*, ¶ 19. Defendant Stockyard Solar Project LLC, ("Stockyard") is a Delaware limited liability company and a 310 MW/AC Solar Electric Generating Facility with an attendant 220 MW/AC storage facility (BESS). *Id.*, ¶ 4. Defendant Saddle House is a Delaware limited liability company. *Id.*, ¶ 5. Defendants Enel Energy North America Texas, LLC, Enel Green Power Azure Blue Jay Solar Holdings, LLC, Enel Green Power Estonian Solar Project, LLC, Enel Green Power Lily Solar Holdings, LLC, Enel Green Power N.A. Development, LLC, Enel Green Power North America, Inc., Enel Green Power Roadrunner Solar Project I, LLC, Enel Green Power Roadrunner Solar Project II, LLC, and Enel Green Power Roseland Solar, LLC ("Enel Defendants") are a group of entities organized under the laws of the state of Delaware. *Id.*, ¶ 15. According to Plaintiffs, one or more of the Enel Defendants is a holding company owning the stock in Stockyard and Saddle House. *Id.*

According to Plaintiffs, Andrews intends to sell his acreage to Enel Defendants or one of their subsidiaries. *Id.*, ¶ 20. Plaintiffs allege Defendants Stockyard and Saddle House plan to install 620,000 solar panels. *Id.*, ¶ 21. Plaintiffs maintain that this facility will interfere with their land. *Id.* at 9. Plaintiffs allege the following events will occur:

> The panels, in such great numbers, concentrated in one spot, will shed toxic waste residue from the manufacturing process with initial rainfall and continue to do so via deterioration over the life of the panels. This toxic waste, mixed with rain

groundwater, will run onto Plaintiff's land which is less than 100 feet down stream of the proposed installations.

Denuding the ground beneath the panels will require toxic herbicides and increase erosion on Plaintiff's land. Solar farms create islands of increased heat. The construction period will be prolonged and consists largely of the continual driving of piles which creates noise.

Upon completion, the panels and inverters will create a continuous humming sound which will have the same deleterious effect. All of this noise pollution is detrimental to surrounding wild life, especially birds.

Plaintiff's family land, which will be surrounded on three sides by the proposed solar farm, is unique in that it consists of approximately 1,000 acres of untouched, unplowed, and unspoiled Texas prairie land. It has enjoyed protected status for over 25 years and Plaintiff Hicks gifted a conservation easement on the land restricting development.

In addition, the "view pollution" will destroy the natural views across the horizon. All of the above will adversely impact the value of the land, both as a natural preservation of vintage Texas and as an asset.

*Id.*, ¶¶ 22-26 (internal numbering and footnote omitted). Plaintiffs assert four causes of action against Defendants arising in nuisance: 1) intentional nuisance, 2) negligent nuisance, 3) strict-liability nuisance, and 4) anticipatory nuisance. *Id.*, ¶ 35-46. Plaintiffs also allege a violation of the Texas Water Code because each and every intrusion of surface water will cause injury to their property. *Id.*, ¶ 50. Plaintiffs seek a temporary and permanent injunction against Defendants from further development on Andrews' land. *Id.*, ¶ 51. Plaintiffs further seek a declaratory judgment against Defendants, claiming that Plaintiffs and their real estate will have temporary and permanent damage for which there is no adequate remedy. *Id.*, ¶ 53.

On July 28, 2023, Defendant Saddle House timely removed the case to federal court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, asserting that, excluding the improperly joined defendant Andrews, this is a civil action between citizens of different states, and the matter in controversy exceeds $75,000, exclusive of interest and costs. Dkt. No. 1. According to the Notice

of Removal, Defendant Andrews was improperly joined because the sole purpose of naming him as a defendant was an improper attempt to defeat diversity jurisdiction and avoid the jurisdiction of the federal courts. *Id.* at 4.

## IV.  Legal Standards

### A.    Removal Legal Standard

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). The court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "The federal removal statute, 28 U.S.C. § 1441(a), allows for the removal of 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *Bell v. Texaco, Inc.*, 493 Fed. Appx. 587, 590 (5th Cir. 2012). Twenty-eight U.S.C. § 1447(c) provides two grounds for remand: (1) a defect in removal procedure, and (2) lack of subject matter jurisdiction. *Burks v. Amerada Hess Corp.*, 8 F.3d 301, 303 (5th Cir. 1993).  When considering a motion to remand, the removing party bears the burden of showing that removal was proper. *Carpenter v. Wichita Falls Independent School Dist.*, 44 F.3d 362, 365 (5th Cir. 1995).

### B.    Removal Procedure

The requirements for removal are set forth in 28 U.S.C. § 1446(b). A defendant must file a notice of removal within thirty days of service after the receipt by the defendant. 28 U.S.C. § 1446(b)(1). All defendants who "have been properly joined and served" are required to join in and consent to the removal of the civil action. *Id.* § 1446(b)(2)(A). The Fifth Circuit has deemed this as the "rule of unanimity," which requires each served defendant to join in the notice of removal

or that there be a "timely filed written indication from each served defendant, or from some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has actually consented to such action." *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1261 n. 11 (5th Cir. 1988).

The notice of removal must set forth a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). "[W]here an out-of-state defendant removes an action from state to federal court, the burden is upon the removing party to plead a basis for federal jurisdiction" *Williamson B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. 1981). Defendants must prove that federal jurisdiction existed at the time of removal. *Howery*, 243 F.3d at 916. For removal cases that are based on diversity jurisdiction, the removing party must prove that complete diversity exists. *Getty Oil Corp.*, 841 F.2d at 1258-1259 (stating "the court must be certain that all plaintiffs have a different citizenship from all defendants").

The removing defendant(s) must "distinctly and affirmatively" allege the citizenship of all parties in the notice of removal, or it will be "facially insufficient to establish the existence of diversity jurisdiction." *Mullins v. Testamerica Inc.*, 300 Fed. Appx. 259, 260 (5th Cir. 2008). To allege the citizenship of a corporation, a party needs to "set out the principal place of business of the corporation as well as the state of its incorporation." *Smith v. Toyota Motor Corp.*, 978 F.3d 280, 282 (5th Cir. 2020) (quoting *Neeley v. Bankers Tr. Co. of Tex.*, 757 F.2d 621, 634 n.18 (5th Cir. 1985)). For a limited liability company, a party must "specifically allege the citizenship of every member of every LLC or partnership involved in a litigation." *Id*. (quoting *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd*., 851 F.3d 530, 536 (5th Cir. 2017)).

C.    **Improper Joinder**

6

A party invoking diversity jurisdiction is "responsible for showing that the parties are completely diverse." *Sandoval v. TBA Transp., LLC*, No. 4:22-CV-00318, 2022 WL 2959707, at *4 (E.D. Tex. July 26, 2022). A case may be removed despite the presence of a resident defendant if the removing defendant shows that the resident defendant was fraudulently or improperly joined. *Salazar v. Allstate Texas Lloyd's, Inc.*, 455 F.3d 571, 574 (5th Cir. 2006).

"The doctrine of improper joinder rests on these statutory underpinnings, which entitle a defendant to remove to a federal forum unless an in-state defendant has been 'properly joined.'" *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). Ultimately, "the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Id.* There are two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* (citing *Travis v. Irby*, 326 F.3d 644, 646-647 (5th Cir. 2003)). When dealing with the second way, "the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.*

Federal pleading standards are used when testing for improper joinder. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp.*, Ltd., 818 F.3d 193, 203 (5th Cir. 2016)). "To pass muster under Rule 12(b)(6), [a] complaint must have contained enough facts to state a claim to relief that is plausible on its face." *Id.* at 200 (quoting *Reece v. U.S. Bank Nat'l Ass'n*, 762 F.3d 422, 424 (5th Cir. 2014)) (internal quotations omitted). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573. In a few cases in which a plaintiff has stated a claim but has misstated or omitted discrete facts, the court may, in

7

its discretion, "pierce the pleadings" and consider summary judgment-type evidence to determine improper joinder. *Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 376 (5th Cir. 2006).

The burden of persuasion on the party asserting the improper joinder is a "heavy one." *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007). "[T]he existence of even a single valid cause of action against the in-state defendant (despite the pleading of several unavailing claims) requires remand of the entire case to state court." *Gray v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 412 & n.11 (5th Cir. 2004). Finally, "because the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns," the removal statute is therefore, to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Carpenter*, 44 F.3d at 365–66; *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

## V.  Discussion

### A.     Motion for remand

Plaintiffs timely filed their motion to remand on August 28, 2023. Dkt. No. 12. Plaintiffs assert that removal was defective for four reasons: (1) Defendant Andrews did not approve the removal, (2) the citizenship of Defendant Enel Green Power Roadrunner Solar Project I, LLC was not alleged in the Notice of Removal, (3) the citizenship of the "diverse" Defendants in the Notice of Removal is conclusory and not properly alleged, and (4) Defendant Andrews is a properly joined defendant because he owns the land in question and is therefore a required party (if not indispensable). *Id.* at 1-5.

### 1.     Saddle House did not need Andrews' consent for removal

Plaintiffs first assert there is a procedural defect in the Notice of Removal because the sole individual (non-entity) Defendant, Scott Andrews, "did not approve" of the removal from state court to federal court. *Id.* at 4. In its response to Plaintiffs' motion, Defendant Saddle House argues

8

that Andrews' consent is not required because he is alleged to be an improperly joined defendant and that he had not been served at the time of removal. Dkt. No. 18 at 3. Saddle House is correct on both points.

The Fifth Circuit has acknowledged an exception to the rule of unanimity, where a non-removing defendant is improperly or fraudulently joined. *Jernigan v. Ashland Oil*, 989 F.2d 812, 815 (5th Cir. 1993). As such, a removing party need not obtain the consent of a co-defendant that the removing party contends is improperly joined. *Id.* (explaining that such a requirement would be "nonsensical, as removal in those cases is based on the contention that no other proper defendant exists"); *see also Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007) ("a removing party need not obtain the consent of a co-defendant that the removing party contends is improperly joined"). As explained below, Defendant Andrews was fraudulently joined.

Furthermore, a defendant who is served after a removal notice is filed need not consent to removal. *See Rico*, 481 F.3d at 239 (stating that the Fifth Circuit has interpreted the consent to removal requirement in 28 U.S.C. § 1446 "to require that all then-served properly joined defendants join in the removal petition"). Only "then-served" defendants who are "properly joined" must consent. Saddle House filed its Notice of Removal on July 28, 2023. Plaintiffs served Andrews a month and a half after filing the lawsuit in state court, on August 15, 2023.

For both reasons, Defendant Andrews' consent was not required at the time of removal.

**2.    Saddle House's failure to allege the citizenship of Enel Green Power Roadrunner Solar Project I, LLC in its Notice of Removal does not defeat removal**

Plaintiffs next argue that the named defendant Enel Green Power Roadrunner Solar Project I, LLC ("named defendant") was not alleged in the Notice of Removal, and that consequently, Defendants have not established complete diversity. Dkt. No. 12 at 4. Saddle House's Notice of Removal states "Enel Green Power Roadrunner Solar Project I, LLC does not exist. As it does not

9

exist, it does not have citizenship." Dkt. No. 1, ¶ 34. Plaintiffs disagree with this statement and maintain that the named defendant is "listed as an active corporation with a registered agent by the Comptroller of Public Accounts for the State of Texas." Dkt. No. 12 at 4; *see also* Dkt. No. 15. In support, Plaintiffs attached to their supplement a report dated August 28, 2023, from the Texas Secretary of State and Comptroller of Public Accounts for the State of Texas which shows a business entity by the name of "Enel Green Power Roadrunner Solar Project I, LLC" with a formation date of January 31, 2019 and an address in Andover, MA. Dkt. No. 15-1. Plaintiff's then asks the Court to "take judicial notice of this filing as conclusive evidence that said business entity does, in fact, exist and that Defendants have not established it to be a diverse party in their Notice of Removal." *Id.* at 2.

In its response, Saddle House claims Enel Green Power Roadrunner Solar Project I, LLC does not exist because this named defendant entity changed its name on August 29, 2019 to Enel Roadrunner Solar Project Holdings, LLC. Dkt. No. 18 at 4. In support, Saddle House attaches to its response a State of Delaware Certificate of Amendment. Dkt. No. 18-1. Saddle House contends that, due to this change, Enel Green Power Roadrunner Solar Project I, LLC was not identifiable at the time it filed its Notice of Removal; therefore, Saddle House could not identify its citizenship. Dkt. No. 18 at 4. According to Saddle House, after that named defendant was correctly identified as Enel Roadrunner Solar Project Holdings, LLC, its citizenship could be correctly identified for diversity purposes. *Id.* at 4-5.

Saddle House asserts the result is the same as stated in its Notice of Removal: "there is complete diversity of citizenship" among the properly joined parties. *Id.* at 5-6 (quoting Dkt. No. 1, ¶ 37). However, should the Court find that the Notice of Removal was insufficient, Saddle House requests leave to amend the Notice of Removal to address the issue of Enel Roadrunner Solar

Project Holdings, LLC's citizenship. *Id.* at 6 (noting 28 U.S.C. § 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts," and courts have relied on this statute to authorize amendments to jurisdictional allegations in removal and remand contexts). Saddle House further notes that amending the Notice of Removal may not be required because there is sufficient evidence in the response that establishes the citizenship of Enel Roadrunner Solar Project Holdings, LLC. *Id.* at 8 (citing *Sandoval*, 2022 WL 2959707, at *3 (holding that "'[s]tatements in a responsive pleading to a motion to remand may [ ] cure jurisdictional defects in the removal petition'")).

Similar to the situation in *Casas*, it may be the case here that the named defendant does not exist as Saddle House argues; but according to records filed with the Court, it did at one point. *Casas v. Anthony Mech. Servs., Inc.*, No. 5:21-CV-168-H, 2022 WL 541787, at *3 (N.D. Tex. Feb. 23, 2022) (stating the entity at issue could "still be served with process" and without more, the court was "left to conclude that the evidence of Temtrol's existence is a wash, and since all doubts are construed against the Court's exercise of jurisdiction, the tie goes to Casas."). Additionally, Plaintiffs dispute whether a misnomer has occurred by continuing to maintain that Enel Green Roadrunner Solar Project I, LLC existed when the Notice of Removal was filed and exists today. *See Louisiana v. Am. Nat'l Prop. Cas. C*o., 746 F.3d 633, 636 (5th Cir. 2014) (citizenship of the parties is based on the facts as they existed at the time of removal). In their amended complaint, Plaintiffs continue to name Enel Green Roadrunner Solar Project I, LLC rather than Enel Roadrunner Solar Project Holdings, LLC as the named defendant.

The party invoking jurisdiction under § 1332 is responsible for showing that the parties are completely diverse. *Sandoval*, 2022 WL 2959707, at *4 (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). Accordingly, the Fifth Circuit requires a removing party to

"affirmatively and distinctly allege" the citizenship of the parties in the notice of removal. *Id.* (citing *Getty Oil Corp.*, 841 F.2d at 1259). For a limited liability company, citizenship is determined by considering the citizenship of all of its members or managers. *Id.* (citing *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008); *Temple Drilling Co. v. La. Ins. Guar. Ass'n*, 946 F.2d 390, 393 (5th Cir. 1991)). Here, Enel Green Roadrunner Solar Project I, LLC's citizenship was not named by Saddle House in the Notice of Removal. Nor did Saddle House identify its members or managers in the Notice of Removal.[1] Thus, Plaintiffs are correct that there is a procedural defect regarding diversity of citizenship in the Notice of Removal.

However, the Fifth Circuit has "noted that § 1653 is to be broadly construed to avoid dismissals of actions on purely 'technical' or 'formal' grounds." *Whitmire v. Victus Ltd.*, 212 F.3d 885, 887 (5th Cir. 2000). Section 1653 is available when "the defect is merely one of the pleading and not one of an absence of proof of facts necessary to establish diversity of citizenship." *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 806 (5th Cir. 1991). "Section 1653 should be liberally construed to allow a party to cure technical defects, including the failure to specifically allege the citizenship of the parties." *Menendez v. Wal-Mart Stores, Inc.*, 364 Fed. Appx. 62, 66 (5th Cir. 2010). A defendant may freely amend its notice of removal within the thirty-day period prescribed by Section 1446(b); however, prior to judgment, a defendant may still amend its removal petition to allege omitted jurisdictional facts at the court's discretion. *Strauss v. Am. Home Prods. Corp.*, 208 F. Supp. 2d 711, 717 (S.D. Tex. 2002).

Here, Saddle House has provided a reasonable explanation for its failure to allege the citizenship of Enel Green Power Roadrunner Solar Project I, LLC. *See* Dkt. No. 18 at 4-6. Accordingly, the Court grants Saddle House leave to amend its Notice of Removal to address the

---

[1] Saddle House also failed to identify in its Notice of Removal the alleged correct defendant Enel Roadrunner Solar Project Holdings, LLC or its members or managers for purposes of determining citizenship.

citizenship issue. Saddle House's amended Notice of Removal shall be filed within **ten days** from the date of entry of this Report and Recommendation.

**3.        Saddle House's allegations of citizenship are sufficient**

Plaintiffs next argue that Saddle House's allegations regarding the citizenship of the corporate Defendants[2] are conclusory. Dkt. No. 12 at 5. Although Plaintiffs concede their "state of incorporation is diverse," they contend that Saddle House's conclusory allegations regarding Defendants' "principal place of business" is "not supported by any factual allegations [that] support the 'nerve center' standard requirement." *Id*

In response, Saddle House maintains that it has met its initial burden and was only required to "'distinctly and affirmatively' allege the citizenship of the relevant diverse parties." Dkt. No. 18 at 9 (quoting *Illinois Cent. Gulf R. Co. v. Pargas, Inc*., 706 F.2d 633, 636 (5th Cir. 1983)). According to Saddle House, Plaintiffs' complaints relate to the sufficiency of the allegations and are not factual challenges; thus, it is not required to submit additional evidence in support of its allegations of citizenship. *Id.* at 10.

A corporation is a citizen of both its state of incorporation and the state of its principal place of business for the purpose of determining diversity jurisdiction. *Bullard v. MECO Corp.*, No. 1:15-CV-322, 2015 WL 12938978, at *4 (E.D. Tex. Nov. 16, 2015) (citing 28 U.S.C. § 1332(c)(1)). Every corporation has one and only one principal place of business. *Id.* (citing *J.A. Olson Co. v. City of Winona*, 818 F.2d 401, 406 (5th Cir. 1987)). A corporation's principal place of business refers "to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id*. (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 78 (2010)). Indeed, "it

---

[2] Stockyard Solar Project, LLC, Saddle House Solar Project, LLC, Enel Energy North America Texas, LLC, Enel Green Power Azure Blue Jay Solar Holdings, LLC, Enel Green Power Estonian Solar Project, LLC, Enel Green Power Lily Solar Holdings, LLC, Enel Green Power N.A. Development, LLC, Enel Green Power North America, Inc., Enel Green Power Roadrunner Solar Project I, LLC, Enel Green Power Roadrunner Solar Project II, LLC, and Enel Green Power Roseland Solar, LLC ("corporate Defendants").

is the place that Courts of Appeals have called the corporation's 'nerve center,'" which normally will be the site of the corporate headquarters, "provided that the headquarters is the actual center of direction, control, and coordination." *Id*. (quoting *Hertz Corp*., 559 U.S. at 78). Factual assertions related to a corporation's state of incorporation and principal place of business "are entitled to a 'presumption of truth.'" *Id*. (citations omitted). While a corporation is deemed to be a citizen of the state in which it is incorporated and of the state in which it maintains its principal place of business, the citizenship of an unincorporated association, including a limited liability company, is determined by the citizenship of all of its members. *Id.* (citing *Tewari De-Ox Sys. Inc. v. Mountain States/Rosen, Ltd. Liab. Corp*., 757 F.3d 481, 483 (5th Cir. 2014)).

"Citizenship issues, like every factual issue necessary to support subject matter jurisdiction, must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required *at the successive stages of litigation*." *Weber v. Allstate Fire & Cas. Ins. Co*., No. 4:21CV00742-SDJ-CAN, 2021 WL 6881281, at *2 (E.D. Tex. Dec. 13, 2021), *report and recommendation adopted*, No. 4:21-CV-742-SDJ, 2022 WL 414339 (E.D. Tex. Feb. 10, 2022) (citation omitted) (emphasis in original). "The burden of the removing party is to distinctly and affirmatively allege the citizenship of each party in its notice of removal, not to supply any accompanying evidence verifying those allegations of citizenship." *Id*. (quoting *Employers Mut. Cas. Co. v. Gemini Ins. Co.*, No. 3:13-cv-00816-BAJ-RLB, 2014 WL 3541296, at *4 (M.D. La. July 17, 2014) (denying motion to remand where Notice of Removal distinctly and affirmatively alleged citizenship)). Only when the non-removing party makes a good faith challenge to the factual allegations in the removal notice *may* the removing party be required to submit some evidence in support of its allegations of citizenship. *Id*. (emphasis added).

In eleven paragraphs in their Notice of Removal, Saddle House specifically listed the "state of incorporation" and "principal place of business" for each of the corporate Defendants. Dkt. No. 1, ¶¶ 26-36. Therefore, Defendants do not merely offer a negative allegation of citizenship that courts have found insufficient. *See, e.g., Sourcing Mgmt., Inc. v. Simclar, Inc.*, No. 3:14-CV-2552-L, 2015 WL 2212344, at *5 (N.D. Tex. May 12, 2015), *on reconsideration*, No. 3:14-CV-2552-L, 2015 WL 12791469 (N.D. Tex. July 9, 2015) ("[A]n allegation that a particular defendant is not a citizen of a certain state is not a 'distinct and affirmative' allegation establishing the citizenship of that defendant."); *Hayfa v. C-K Sherwood Acres, LLC*, No. CV 21-315-SDD-EWD, 2021 WL 2815975, at *2 (M.D. La. July 6, 2021) ("Negative allegations of citizenship, i.e., 'none of the members are citizens of Louisiana,' are insufficient, as citizenship must be affirmatively alleged."). Accordingly, the Notice of Removal distinctly and affirmatively alleges the parties' citizenship.

And Plaintiffs have not presented any good faith challenge to Saddle House's assertions regarding the citizenship of Defendants. They have not, for example, shown a member of a Defendant LLC is a Texas resident or inconsistent statements from a Defendant concerning its residence. Similarly, Plaintiffs have not provided any reason to explain why Texas would serve as "nerve centers" for Defendants. Accordingly, Plaintiffs' third argument is without merit.

### 4.    Defendant Andrews is not properly joined and is not a required party

Plaintiffs' final argument is that the joinder of Defendant Andrews is not improper, and therefore, his citizenship cannot be disregarded. Dkt. No. 12 at 2. First, Plaintiffs claim that under Texas law, Andrews is a required, if not indispensable, party.[3] *Id.* Next, Plaintiffs argue that

---

[3] In their motion to remand, Plaintiffs claim the following are "adverse consequences which could befall Mr. Andrews in this litigation," (1) "injunction against conveying the subject property to Saddle House," (2) "Damages," (3) "Saddle House could be enjoined from exercising its option to purchase the land in question from Mr. Andrews" (4) "Mr. Andrews could be enjoined from participating in construction of the solar farm and BESS." Dkt. No. 12 at 6-7.

Andrews is not improperly joined because Texas has "long recognized the use of injunction as a remedy for nuisance and negligent land use that adversely affects neighboring land." *Id.* In their response, Saddle House argues that Plaintiffs joined Andrews solely to defeat diversity. Dkt. No. 18 at 11. Saddle House contends that Andrews' possession and sale of land adjacent to the Plaintiffs is not actionable conduct that supports their causes of action. *Id.* at 15. Thus, Saddle House argues that Plaintiffs' nuisance and Texas Water Code claims against Andrews fail a Rule 12(b)(6) analysis because the amended complaint is a shotgun pleading and fails to support those claims with "sufficient non-barebones, non-hypothetical, non-conclusory, and non-speculative facts and allegations." *Id.* at 16.

a.     ***Since Plaintiffs have failed to state a nuisance or Texas Water Code claim against Defendant Andrews, he is improperly joined***

The Court will first address Plaintiff's second argument of improper joinder. As an initial matter, Saddle House contends that Plaintiffs' amended complaint is flawed with respect to Andrews because it does not distinguish his actions from the other Defendants. Dkt. No. 18 at 13. Saddle House also argues that this amended complaint is a shotgun pleading due to the lack of specificity in alleging actionable conduct on behalf of Andrews. *Id.* at 14.

Here, the only factual allegations regarding Andrews asserted by Plaintiffs are below:

> Defendant Andrews owns the acreage surrounding Plaintiff Hicks on two sides.
> Defendant Andrews is acting as an agent somewhat akin to a 'Landman' for Defendants Stockyard, Saddle House and ENEL. . . .
> Defendant Andrews intends to sell said acreage to Defendants ENEL or one of its subsidiaries.

Dkt. No. 7, ¶¶ 19-20 (internal numbering omitted). Nowhere else in the state court petition (or in the substantially similar amended complaint) do Plaintiffs specifically mention Andrews. Based on these facts, and the allegations regarding Defendants Saddle House and Stockyard's intent to create a solar farm/BESS on that land, Plaintiffs then assert claims against Andrews (and others) for (1)

16

intentional nuisance; (2) negligent nuisance; (3) strict-liability nuisance; (4) anticipatory nuisance; (5) violation of the Texas Water Code; and (6) declaratory judgment.

Plaintiffs fail to distinguish Defendant Andrews' actions from those of the other Defendants. Plaintiffs merely lump all Defendants together for each claim: (1) intentional nuisance, "Defendants intend to cause and unless enjoined, will cause a temporary and permanent nuisance to Plaintiffs …" (2) negligent nuisance, "Defendants have and will negligently cause, unless enjoined, both a temporary and permanent nuisance to Plaintiffs …"; (3) strict-liability nuisance, "Defendants will cause a temporary and permanent nuisance for which they will be strictly liable because they are engaging in abnormally dangerous activity…"; (4) anticipatory nuisance, "Defendants are causing and will cause an anticipatory temporary and permanent nuisance unless enjoined …"; and (5) Texas Water Code, "[e]ach and every intrusion of water caused by the acts of Defendants constitutes a violation of the Texas Water Code…" Dkt. No. 7 at 9-11. Plaintiffs' allegations related to these claims simply refer to the conduct of "defendants," without specifying the individual conduct of Defendant Andrews. *See Studer v. State Farm Lloyds*, No. 4:13CV413, 2014 WL 234352, at *4 (E.D. Tex. Jan. 21, 2014) ("Merely lumping diverse and non-diverse defendants together in undifferentiated liability averments of a petition does not satisfy the requirement to state specific actionable conduct against the non-diverse defendant."); *Jimenez v. Travelers Indem. Co.*, No. CIV.A. H-09-1308, 2010 WL 1257802, at *6 (S.D. Tex. Mar. 25, 2010) ("Plaintiffs have failed to allege any specific facts demonstrating actionable conduct against [the adjuster], no less against her in her role as an alleged adjuster liable under Texas law, nor to differentiate between the conduct of the two Defendants."). Thus, Plaintiff's amended complaint fails to allege specific, actionable conduct by Andrews that states a claim for relief. However, out of an abundance of caution, the Court will still address the issue of improper joinder.

The issue is whether the non-diverse Defendant Scott Andrews was properly joined, that is, "whether there is any claim for which there is a reasonable basis to predict a favorable outcome" against Andrews. *Sargent v. Safeco Ins. Co. of Indiana*, No. CIV.A. H-10-4252, 2011 WL 819492, at *4 (S.D. Tex. Mar. 2, 2011). A "reasonable basis" means more than a mere a hypothetical basis. *Moreno Energy, Inc. v. Marathon Oil Co.*, 884 F. Supp. 2d 577, 580 (S.D. Tex. 2012) (quoting *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir.1999) ("whether the plaintiff has stated a valid state law cause of action depends upon and is tied to the factual fit between the plaintiffs' allegations and the pleaded theory of recovery")). "To determine whether jurisdiction is present for removal, [the court must] consider the claims in the state court petition as they existed at the time of removal." *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002).

Thus, the issue turns on whether Plaintiffs pled enough facts to state a claim against Andrews in their state court petition to succeed under a "Rule 12(b)(6)" analysis. *Broussard v. Port Arthur Pipeline, L.L.C.*, No. 1:21-CV-288-MAC, 2021 WL 5137925, at *4 (E.D. Tex. Oct. 11, 2021), *report and recommendation adopted*, No. 1:21-CV-288-MAC, 2021 WL 5115566 (E.D. Tex. Nov. 3, 2021).

The Supreme Court in A*shcroft v. Iqbal*, 556 U.S. 662 (2009) set forth a two-prong analysis to assess factual sufficiency. *Id.* First, the court must identify and disregard conclusory allegations because conclusions are not entitled to the assumption of truth. *Id.* (citing *Iqbal*, 556 U.S. at 664).

Second, the court must consider the factual allegations from the complaint to determine if they plausibly suggest an entitlement to relief. *Id.* The "plausible suggestion" requires enough facts to raise a reasonable expectation that discovery will reveal evidence of the elements of the claim. *Id.* Saddle House bears the heavy burden of demonstrating that there is no possibility of recovery

against Andrews. *L.L.D., LLC v. Enpro Indus., Inc.*, No. 3:19CV00046-GHD-JMV, 2019 WL 2720204, at *3 (N.D. Miss. June 28, 2019) (citing *Williamson. B., Inc.*, 663 F.2d at 549).

### *The amended complaint does not state a Crosstex-style nuisance claim against Andrews*

Plaintiffs did not specifically address intentional, negligent, or strict liability nuisance (collectively "private nuisance claims" or "*Crosstex*-style claims") in their motion to remand but instead cited their amended complaint for an explanation of the raised causes of action. Dkt. No. 12 at 3 ("The Amended Complaint contains a detailed recitation of…the causes of action… and the elements of the remedies requested[.]"). In their response, Saddle House noted that Plaintiffs do not allege any "specific actionable conduct" by Andrews to support a cause of action under nuisance. Dkt. No. 18 at 15 (quoting *King v. Provident Life & Acc. Ins. Co.,* No. 1:09-CV-983, 2010 WL 2730890, *4 (E.D. Tex. June 4, 2010), *report and recommendation adopted,* No. 1:09-CV-983, 2010 WL 2730888 (E.D. Tex. July 9, 2010)).

A private nuisance includes the following elements:

> (1) the plaintiff had an interest in the land; (2) the defendant interfered with or invaded the plaintiff's interest by conduct that was negligent, intentional, or abnormal and out of place in its surroundings; (3) the defendant's conduct resulted in a condition that substantially interfered with the plaintiff's use and enjoyment of his land; and (4) the nuisance caused injury to the plaintiff.

*K & K Inez Properties, L.L.C. v. Kolle*, No. 13-21-00460-CV, 2023 WL 8941487, at *3 (Tex. App. – Corpus Christi-Edinburg Dec. 28, 2023) (quoting *Cerny v. Marathon Oil Corp*., 480 S.W.3d 612, 622 (Tex. App.—San Antonio 2015, pet. denied)).

In Texas, the law of "nuisance" seeks to balance a property owner's right to use his property "as he chooses in any lawful way" against his duty not to use it in a way that "injure[s] another." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 590-91 (Tex. 2016) (quoting *Gulf, Colo. & Santa Fe Ry. Co. v. Oakes*, 94 Tex. 155, 58 S.W. 999, 1000 (1900)). The Texas Supreme

Court recognized early on that a nuisance could result from an array of actions by a wide variety of defendants and could involve interference with numerous different interests through both physical substances and intangible conditions, such as "water, stones, rubbish, filth, smoke, dust, odors, gases, noises, vibrations, and the like." *Id*. at 592 (quoting *Oakes*, 58 S.W. at 1001).

However, more recently, the Texas Supreme Court has consistently used a more comprehensive definition of a nuisance: "A 'nuisance' is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Id*. at 593 (quoting *Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003)). The court utilizes the term "nuisance" to refer not to a cause of action or to the defendant's conduct or operations, but instead to the particular type of legal injury that can support a claim or cause of action seeking legal relief. *Id.* at 594 (citing *City of Tyler v. Likes*, 962 S.W.2d 489, 504 (Tex. 1997) (noting that nuisance is "a kind of damage done, rather than any particular type of conduct")). Thus, the term "nuisance" does not refer to the "wrongful act" or to the "resulting damages," but only to the legal injury—the interference with the use and enjoyment of property—that may result from the wrongful act and result in the compensable damages. *Id.* at 595. Such an interference qualifies as a nuisance—and thus as a legal injury—only if the interference is "substantial" and causes "discomfort or annoyance" that is "unreasonable." *Id.* Finally, *Crosstex* set forth three classifications for nuisance: intentional nuisance, negligent nuisance, and strict-liability nuisance. *Id.* at 602, 604-609.

For an intentional nuisance claim, a plaintiff may establish intent with proof that the defendant acted with a specific intent to inflict injury or a malicious desire to do harm by causing the actionable interference. *Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 912 (N.D. Tex. 2020) (citing *Crosstex*, 505 S.W.3d at 605). A plaintiff's negligent nuisance claim is governed by ordinary

negligence principles, *Id.* at 912-13. In the absence of evidence of intentional or negligent nuisance, a defendant's conduct may fall under strict liability if the use of defendant's land is "abnormal and out of place in its surroundings." *Crosstex*, 505 S.W.3d at 609 ("the abnormal and out-of-place conduct must be abnormally 'dangerous' conduct that creates a high degree of risk of serious injury.").

Under intentional nuisance, intent is defined as "the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Crosstex*, 505 S.W.3d at 605 (quoting *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985)). To prove an intentional nuisance, "the evidence must establish that the defendant intentionally caused the interference that constitutes the nuisance, not just that the defendant intentionally engaged in the conduct that caused the interference." *Id.* Meaning, the "actor must intend the specific result, not merely the actions or circumstances leading up to the result." *Mo-Vac Serv. Co., Inc. v. Escobedo*, 603 S.W.3d 119, 127 (Tex. 2020).

Under these circumstances, Plaintiffs have not provided the Court with a set of facts to support a claim of intentional nuisance against Andrews. The only facts set forth by Plaintiffs to support their intentional nuisance claim is that Andrews "intends to sell said acreage to Defendants ENEL or one of its subsidiaries." Dkt. No. 7 at ¶ 20. There are no facts that prove that he intends to cause or maintain a "condition that substantially interferes with the use and enjoyment" of their land. *Crosstex*, 505 S.W.3d at 593. Andrews's intentional act of selling his land is disconnected from the potential interference and is merely the action or circumstance leading up to the result. No facts alleged show that Andrews intends to shed toxic waste residue onto the Plaintiff's land, create a continuous humming noise, or obstruct the natural views around the Plaintiff's properties. As

such, Plaintiffs fail to provide factual allegations of intentional conduct by Plaintiff beyond conclusory statements that do not identify actional conduct on the part of Andrews.

In a negligent nuisance claim, the plaintiff must prove "the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *Reed,* 436 F. Supp. 3d at 912-13 (citing *Crosstex*, 505 S.W.3d at 607 (internal quotation marks omitted in *Reed*)). "Whether a duty exists is a threshold inquiry and a question of law; liability cannot be imposed if no duty exists." *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). A property owner has a duty not to use his land in a way that would injure others. *Crosstex*, 505 S.W.3d at 590-591. When a breach of that duty substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities, it has caused a nuisance. *Reed,* 436 F. Supp. 3d at 913 (citing *Crosstex*, 505 S.W.3d at 600). The only unique element, which derives from the nature of the legal injury on which the plaintiff bases the claim, is the burden to prove that the defendant's negligent conduct *caused a nuisance, which in turn resulted in the plaintiff's damages*. *Crosstex*, 505 S.W.3d at 607 (emphasis added).

Here, Plaintiffs have not alleged the primary element of duty and also failed to allege a breach of that duty by Andrews and damage proximately caused by the breach. The leading law for negligent nuisance in Texas is *Crosstex*, and within this opinion, the court made clear that this claim is for past harm, not future. *See Id.* ("the plaintiff must prove the ***existence*** of a legal duty, a breach of that duty, and damages proximately caused by the breach") (internal quotations omitted) (emphasis added). Importantly, there is no cause of action for damages caused by a prospective nuisance, which is a question of law. *1717 Bissonnet, L.L.C. v. Loughhead*, 500 S.W.3d 488, 496-97 (Tex. App. – Houston [14th Dist.] 2016) (citing *Cook v. Neely*, No. 04–14–00518, 2015 WL

4554286, at *2 (Tex. App.–San Antonio July 29, 2015, pet. denied) (mem. op.)). The allegation that Andrews plans to sell his land in the future is insufficient to sustain a negligent nuisance claim.

A nuisance claim under strict liability arises when a Defendants "abnormal and out-of-place conduct" that is abnormally dangerous "creates a high degree of risk of serious injury." *Crosstex*, 505 S.W.3d at 609. Based on factual allegations in the complaint, Andrews is not involved in the actual development of the solar farm and BESS, only the potential sale of his land to the other Defendants. Based on the facts alleged, the Plaintiffs failed to make a showing of a possible strict liability nuisance claim as to Andrews.

Accordingly, Plaintiffs have not sufficiently pleaded that Andrews is the "but for" cause of their *Crosstex* nuisance claims. Thus, based on these facts, there is no reasonable basis for the Court to predict that Plaintiffs might be able to recover against Andrews under intentional, negligent, or strict liability nuisance.

### *The amended complaint does not state an anticipatory nuisance claim against Defendant Andrews*

Plaintiffs to assert a claim under "anticipatory nuisance," which, according to Plaintiffs, is a cause of action long recognized in the State of Texas "as a remedy for nuisance and negligent land use that adversely affects neighboring land." Dkt. No. 12 at 2. They allege that the potential solar farm and BESS "will destroy their land and cause environmental, safety and health problems." *Id.* at 3. Thus, the Plaintiffs ask for an injunction as a remedy for this anticipatory nuisance. *Id.* at 7. However, Defendants make a broad argument that Andrews's possession and sale of his land does not support a nuisance claim. Dkt. No. 18 at 15.

A court has the power to enjoin the continuance of an "existing nuisance." *Bruington v. Chesmar Homes, LLC*, No. 08-23-00015-CV, 2023 WL 6972987, *10 (Tex. App. Oct. 20, 2023). A court may exercise its equitable power to enjoin a prospective nuisance under certain circumstances.

*1717 Bissonnet, L.L.C.*, 500 S.W.3d at 497 (citing *Freedman v. Briarcroft Prop. Owners, Inc.*, 776 S.W.2d 212, 216 (Tex.App.–Houston [14th Dist.] 1989, writ denied)). "[A] court of equity is empowered to interfere by injunction to prevent a threatened injury where an act or structure will be a nuisance per se, or will be a nuisance for which there is no adequate remedy at law, or where a nuisance is imminent." *Freedman*, 776 S.W.2d at 216 (citing 66 C.J.S. Nuisances § 113 p. 881 (1950)). An injunction will not be granted to "restrain an intended act on the ground that it *may* become a nuisance." *Holubec v. Brandenberger*, 214 S.W.3d 650, 657(Tex. App. 2006) (emphasis added).

Here, Plaintiffs claim that Andrews intends to sell his land to the Enel defendants and Saddle House. In turn, the Enel Defendants and Saddle House will build a "dangerous, ugly and toxic solar farm (620,000 toxic solar panels) and BESS on Defendant Andrews property." Dkt. No. 12 at 2. As a result of this construction, Plaintiffs argue that this will "destroy their land and cause environmental, safety and health problems." *Id.* at 3.

In their amended petition, Plaintiffs predict certain results they allege "will" or "may" happen from developing the solar farm and BESS:

> The panels, in such great numbers, concentrated in one spot, will shed toxic waste residue from the manufacturing process with initial rainfall and continue to do so via deterioration over the life of the panels. This toxic waste, mixed with rain groundwater, will run onto Plaintiff's land which is less than 100 feet down stream of the proposed installations.

> Denuding the ground beneath the panels will require toxic herbicides and increase erosion on Plaintiff's land. Solar farms create islands of increased heat. The construction period will be prolonged and consists largely of the continual driving of piles which creates noise

> Upon completion, the panels and inverters will create a continuous humming sound which will have the same deleterious effect. All of this noise pollution is detrimental to surrounding wild life, especially birds.

24

Plaintiff's family land, which will be surrounded on three sides by the proposed solar farm, is unique in that it consists of approximately 1,000 acres of untouched, unplowed, and unspoiled Texas prairie land. It has enjoyed protected status for over 25 years and Plaintiff Hicks gifted a conservation easement on the land restricting development.

Dkt. No. 7 at ¶22-25. (internal numbering omitted). Additionally, they state,

If (or, probably when) there is an incident at the BESS causing emission of toxic gasses, fire, or explosion, the Borens and everyone within the evacuation zone, will be required to leave their property until the danger has been eliminated. (Images of East Palestine, Ohio are brought to mind.) The BESS threatens not only the property value of the Boren's but their health and that of everyone in the Evacuation Zone.

There is more than a possibility of a leak of hydrogen chloride and hydrogen fluoride (deadly gases) that, being heavier than air, flow across the ground creating a deadly fog to every living entity. This would be catastrophic and fatal to the Borens and anyone else in the Evacuation Zone and even beyond if it is undiscovered for any period of time.

*Id.* at ¶31-32. (internal numbering omitted). However, the introduction of their amended petition stated,

No significant study has been conducted to measure the dilatory short and long term effects on the natural environment surrounding a large solar farm containing hundreds of thousands of solar panels. It will surely have an adverse effect on wild life and their natural habitat; a negative impact on agricultural economy through livestock and poultry operations, including, most specifically in East Texas, the dairy and beef cattle industry.

Dkt. No. 7 at ¶17.

As shown above, Plaintiffs have made a passionate argument regarding the ramifications that may occur as a result of the sale. However, Andrews' intended act of selling his property is not certain to cause an imminent nuisance. Plaintiffs mention in their petition that solar energy is a "gift that keeps taking" and lacks regulation because of the Biden administration. *Id.* Plaintiffs admit that this area of environmental science is unknown, and the repercussions that flow from these types of constructions are still uncertain. This concern further implicates the conclusion that this potential construction may or may not cause annoyance or injury. Plaintiffs have not substantiated their request for an injunction that restricts Andrews from selling his property.

Plaintiffs' cited authority does not change this result. *See Marlin v. Holloway*, 192 S.W. 623 (Tex. Civ. App. 1917) and *Cardwell v. Austin*, 168 S.W. 385 (Tex. Civ. App. 1914). Plaintiffs argue this "anticipatory nuisance" theory of recovery is "recognized by the Texas Court of Appeals." Dkt. No. 12 at 7-9. In *City of Marlin,* the appellate court affirmed the judgment of the district court granting a temporary injunction against the city of Marlin, whereby it restrained the city from erecting a sewage plant, "which [was] alleged would create a nuisance and inflict irreparable injury upon the plaintiffs." *Marlin*, 192 S.W. at 624 (noting it was well settled that injunction was a proper remedy to prevent the creation of a nuisance by a municipal corporation). The court granted an injunction against the construction of the sewage plant after finding that the particular plant proposed would necessarily result in a nuisance to particular individuals. *Id.* (stating the section of the city of Marlin was "strictly a residence section" and that the sewage plant "would emit foul and obnoxious odors, and attract and facilitate the breeding of flies."). The court in *Cardwell* dealt with this similar issue, where the suit was against the city of Bay City and the owner of the franchise to construct and maintain a septic tank in connection with the sewer system in the city. 168 S.W. at 385. The court affirmed the lower court's decision to grant an injunction against the Defendant, which prevented the construction and operation of the proposed septic tank. *Id.* at 387.

The above cases are unlike the current case. In *Marlin* and *Cardwell*, the court dealt with an injunction against a municipal corporation building construction that was certainly a nuisance. *See City of Wylie v. Stone*, 16 S.W.2d 862, 863 (Tex. Civ. App.—Dallas 1929), *writ granted* (Oct. 30, 1929), *aff'd*, 34 S.W.2d 842 (Tex. Comm'n App. 1931) (citing *Marlin* 192 S. W. 623, and authorities cited therein).[4]  Compared to this case, we have an attempt to impose an injunction against a private

---

[4] The court in *Wylie* distinguished *Marlin*, stating "the nuisance here complained of does not belong to the category of those legalized, but, in a proper case, may be enjoined." *City of Wylie v. Stone*, 16 S.W.2d 862, 863 (Tex. Civ. App. – Dallas 1929), writ granted (Oct. 30, 1929), *aff'd*, 34 S.W.2d 842 (Tex. Comm'n App. 1931). According to the court in

individual from simply selling his land to a third party, which might result in developing a solar farm and BESS, which in turn may interfere with Plaintiff's right to enjoy their land. Plaintiffs' reliance on these cases for support in their "anticipatory nuisance" theory, as to Andrews, is baseless.

### Texas Water Code

Plaintiffs also attempt to assert a claim against Andrews pursuant to Texas Water Code Section 11.086. Plaintiff's claim that acts by Andrews constitute "a violation of the Texas Water Code" because "the solar farm and BESS will adversely change the flow of water." Dkt. No. 12 at 7-8. Due to these alleged actions, Plaintiffs are seeking injunctive relief and damages. *Id.* at 3 n. 3.

Texas Water Code Section 11.086 generally prohibits a person from diverting or impounding the natural flow of surface water in a manner causing damage to another's property. *Trevino v. Patel*, No. 14-22-00497-CV, 2023 WL 5124662, at *1 (Tex. App. – Houston [14th Dist.] Aug. 10, 2023). Damages are allowed under § 11.086 when "(1) a diversion or impoundment of surface water, (2) causes, (3) damage to the property of the plaintiff landowner." *Good River Farm, LP v. Martin Marietta Materials, Inc.*, No. 1:17-CV-1117-RP, 2023 WL 2904577, at *3 (W.D. Tex. Apr. 11, 2023) (quoting *Dietrich v. Goodman*, 123 S.W.3d 413, 417 (Tex. App.—Houston 2003, no pet.)).

Plaintiffs' allegations regarding an anticipated intrusion of surface water unless Defendants are enjoined are insufficient to show that an overflow caused damage to Plaintiffs' land. *See Trevino*, 2023 WL 5124662, *5 (citing Tex. Water Code § 11.086 (water diversion must damage claimant's land)). Plaintiffs fail to allege any act by Andrews that would constitute a violation of Section 11.086, nonetheless allege any sort of damages that resulted to their land. Saddle House has shown

---

*Wylie*, "the governing authorities of the city of Wylie, in establishing the disposal plant in question, acted for the peculiar benefit of the inhabitants of the city and not for the public at large. Therefore, if a nuisance resulted from its operation, the negligence, whether or not of defendants, was wholly immaterial." *Id.*

that Plaintiffs have no reasonable possibility of recovery against Andrews pursuant to Section 11.086.

After consideration of Plaintiffs' claims against Andrews, the Court is unconvinced that the claims set forth in the complaint survive Rule 12(b)(6) scrutiny. Thus, Saddle House has shown that Andrews was improperly joined.

### a.    *Because he has not claimed an interest in this case and relief will not be hindered by his absence, Defendant Andrews is not a required party under Texas law*

Plaintiffs also argue that Andrews is necessary and/or indispensable because he owns the land in question. Dkt. No. 12 at 2. However, in their response, Saddle House countered that Andrews was added to defeat diversity jurisdiction. Dkt. No. 18 at 2[5]. Plaintiffs maintain that without Andrews, "complete relief cannot be granted among the parties." Dkt. No. 18. at 2.

"Under *Erie,* federal courts apply state substantive law to any issue or claim which has its source in state law." *Camacho v. Texas Workforce Comm'n*, 445 F.3d 407, 409 (5th Cir. 2006) (internal quotations omitted) (quoting 19 Charles Alan Wright, et al., Federal Practice and Procedure § 4520 (2d ed. 2002)). "The determination of who is a real party in interest is a substantive issue controlled by Texas law." *Zenith Ins. Co. v. Texas Inst. for Surgery, LLP*, No. 3:18-CV-0182-D, 2018 WL 5297754, at *2 (N.D. Tex. Oct. 25, 2018) (citing *Lubbock Feed Lots, Inc. v. Iowa Beef Processors*, *Inc.*, 630 F.2d 250, 256-57 (5th Cir. 1980)).

The Texas Declaratory Judgment Act (the "Act") was established to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations…"

---

[5] Rule 19 under the Federal Rules of Civil Procedure allows for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue. *Akoloutheo, LLC v. Sys. Soft Techs., Inc*., No. 4:20-CV-985, 2021 WL 1947343, at *1 (E.D. Tex. May 14, 2021) (citing Fed. R. Civ. P. 19(a)). A person must be joined as a party to a suit if  (1) "in that person's absence, the court cannot accord complete relief among existing parties," or (2) that person claims an interest "relating to the subject of the action" and excluding them from the action would "impair or impede" their interest or "leave an existing party subject to … inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1); *NorthStar Sys. LLC v. Volkswagen AG*, No. 2:22-CV-00486-JRG, 2023 WL 5723648, *2 (E.D. Tex. Sept. 5, 2023).

TEX. CIV. PRAC. & REM. CODE § 37.002(b). It states that "when declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties." § 37.006(a). Joinder of persons under the Act are governed by Texas Rules of Civil Procedure 39 ("Rule 39"). *See Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162 (Tex. 2004) ("Rule 39, like the Declaratory Judgment Act, mandates joinder of persons whose interests would be affected by the judgment."); *see also In re Kappmeyer*, 668 S.W.3d 651, 655 (Tex. 2023) (stating Rule 39 will govern when "a party seeks to compel joinder of persons as parties to a proceeding") (citing *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 911 (Tex. 2017)).

Rule 39(a)(1) states that "[a] person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties[.]" Or, as Rule 39(a)(2) states "(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

The Texas Supreme Court in *Crawford v. XTO Energy, Inc*. made clear that a necessary party under Rule 39(a)(2) must claim an interest relating to the subject of the action. 509 S.W.3d at 912. In that case, the adjacent landowners did not claim an interest regarding an oil-and-gas lessor's action against a lessee for breach of contract and declaratory judgment, arising out of the lessee's failure to pay royalties. *Id.* The *Crawford* court explained that "claim" meant "to demand recognition of (as a title, distinction, possession, or power) esp. as a right; to demand delivery or possession of by or as if by right; to assert or establish a right or privilege." *Id.* (internal quotations omitted). Therefore, the court ruled that under Rule 19(a)(2), the adjacent landowners were not

necessary parties, despite the contention that the landowners had an ownership interest in the minerals. *Id.* The court further noted that the adjacent landowners' deeds and leases by themselves reflected no interest in the minerals. *Id.* at 913.

Although Plaintiffs may proclaim that Andrews has a "possible pecuniary interest in the entire case" (Dkt. No. 12 at 7 n.6), this interest can only be claimed by Andrews, which has not occurred. There is nothing in the record to suggest that Andrews has claimed an interest in the subject matter of the case. Under Rule 39(a)(2), Andrews is not a person who "claims an interest relating to the subject of the action" and any effort to claim an interest on his behalf is misplaced.

As to Rule 39(a)(1), Plaintiffs, in their reply, argue that "[w]ithout the joinder of Andrews, complete relief cannot be granted among the parties as required[.]" Dkt. No. 24 at 3. According to Plaintiffs Andrews is the "critical participant in the chain of events giving rise to the harmful use alleged" Dkt. No. *Id.* at 3.

"Rule 39(a)(1) requires the presence of all persons who have an interest in the litigation so that any relief awarded will effectively and completely adjudicate the dispute." *In re Boyaki*, 587 S.W.3d 479, 484 (Tex. App. 2019) (citing *Brooks*, 141 S.W.3d at 162). Under this section, the court is "required to find that in the [persons'] absence, complete relief could not be accorded among those already a party to the dispute." *Id.*

Andrews' absence will not hinder relief for Plaintiffs against the remaining parties, regardless of how the Plaintiffs' claims against the other Defendants are resolved. None of the circumstances alleged by Plaintiffs demonstrate how or why Andrews would be involved in the potential construction and operation of this solar farm and BESS. The Plaintiffs seek an injunction against "further development of any kind…for the purpose of constructing a solar farm or BESS." Dkt. No. 7 at 11; *see also* Dkt. No. 12 at 3. The relief sought and the injury alleged by Plaintiffs

are unrelated to Andrews. Whatever future use for the land any buyer may pursue, and whether that use should be enjoined, is a step beyond Andrews' conveyance of the option to purchase land. Indeed, Defendant Saddle House, as the option holder, may choose not to exercise its option to purchase for a number of reasons. *See N. Shore Energy, L.L.C. v. Harkins*, 501 S.W.3d 598, 606 (Tex. 2016) (an option agreement "does not pass title or convey an interest in property" it "merely gives the optionee the option to purchase property or execute a lease within a certain time period").

Moreover, Saddle House and the Enel Defendants could potentially decide to build on a different property other than Andrews, but near the Plaintiffs, thus reviving the life into this dispute. As such, the record does not demonstrate that this case could not be adjudicated despite the absence of Andrews. *See Conrad Constr. Co., Ltd v. Freedmen's Town Pres. Coal*., 491 S.W.3d 12, 17 n.5 (Tex. App. 2016) (citing *Vondy v. Comm'rs Court of Uvalde Cnty.,* 620 S.W.2d 104, 106 (Tex.1981)) (recognizing that failure to join a party in a declaratory judgment action rarely deprives a court of jurisdiction); *compare Woolslayer v. Lee C. Moore, Inc.,* No. 3:19-CV-2360-L, 2019 WL 7283791 (N.D. Tex. Dec. 27, 2019); *see also Fowler v. Chase*, No. 2:14-CV-160, 2014 WL 3588517, \*2 (S.D. Tex. July 21, 2014). For these reasons, Andrews is not a necessary party.

**B.    Leave to Amend**

Plaintiffs have filed a Provisional Motion to Amend, seeking "to amend in the event of an adverse ruling on its Motion to Remand based upon a pleading defect." Dkt. No. 13 at 2. They sought "to amend in the event of an adverse ruling on its Motion to Remand based upon a pleading defect." *Id.* at 2. Plaintiffs further sought to amend without attaching a proposed amendment. *Id.* Saddle House points out in response that Plaintiffs have already had an opportunity to amend to provide a proper pleading. Dkt. No. 19.

For a party seeking leave to amend a complaint, "it is within the district court's discretion to deny the amendment as futile if there is no reasonable basis to predict that the plaintiff will be able to recover against the non-diverse, non-indispensable party sought to be added as a defendant." *Wilson v. Bruks-Klockner, Inc.,* 602 F.3d 363, 368 (5th Cir. 2010). The Fifth Circuit has defined futile to mean that "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.,* LLC, 234 F.3d 863, 873 (5th Cir. 2000). "[T]o determine futility, [the district court] will apply 'the same standard of legal sufficiency as applies under Rule 12(b)(6).'" *Id.* (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3rd Cir. 2000)). "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

Here, Plaintiffs do not identify any factual allegations they would add that would save their claims against Defendant Andrews from dismissal. Whether to grant leave to amend is ultimately within the Court's sound discretion. *Valadez v. City of San Antonio*, No. SA-21-CV-0002-JKP-RBF, 2022 WL 1608016, at *13 (W.D. Tex. May 20, 2022) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *EEOC v. Serv. Temps Inc*., 679 F.3d 323, 333 (5th Cir. 2012)). But leave to amend is not required when parties have pled their best case. *Id.* (citing *O'Malley v. Brown Bros. Harriman & Co*., No. SA-19-CV-0010-JKP, 2020 WL 1033658, at *9 (W.D. Tex. Mar. 3, 2020) (citing *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009))). It appears that Plaintiffs have pled their best case against Andrews. The Court thus denies the provisional request to amend.

## VI.  Recommendation

Once a court determines that a nondiverse defendant is improperly joined, that defendant's citizenship may not be considered for purposes of diversity jurisdiction, and that defendant must

be dismissed without prejudice. *In re N&W Marine Towing, L.L.C.*, No. 23-30112, 2024 WL 77475, at *5 (5th Cir. Jan. 8, 2024) (citing *Int'l Energy Ventures Mgmt. L.L.C. v. United Energy Group Ltd.*, 818 F.3d 193, 209 (5th Cir. 2016)). Having determined that Scott Andrews was improperly joined, the Court considers only the citizenship of the properly joined state court petition defendants. Because those defendants are diverse from Plaintiffs, removal based on diversity jurisdiction is permitted. Therefore, the undersigned recommends Plaintiffs' motion to remand be denied; that Defendant Scott Andrews be dismissed without prejudice; and that Defendant Scott Andrews' Motion to Dismiss (Dkt. No. 21) be denied as moot.

Accordingly, it is

**RECOMMENDED** that Plaintiffs' Motion to Remand and For Attorney's Fees (Dkt. No. 12) and supplement thereto (Dkt. No. 15) be **DENIED**. It is further

**RECOMMENDED** that Plaintiffs' claims against Scott Andrews be **DISMISSED** without prejudice and that Defendant Scott Andrews' Motion to Dismiss (Dkt. No. 21) be **DENIED as moot.**

Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). Any response to the objections shall be filed within **seven days** from the date of receipt of the objections.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**ORDERED** that Plaintiffs' Provisional Motion to Amend (Dkt. No. 13) is **DENIED**.

SIGNED this the 28th day of February, 2024.

J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE