## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TEXARKANA DIVISION

| | | |
|---|---|---|
| **B.F. HICKS, GARY BOREN** | § | |
| **and KATHY BOREN** | § | |
| | § | |
| **v.** | § | **Civil Action No. 5:23cv81-RWS-JBB** |
| | § | |
| **SCOTT ANDREWS, ET AL.** | § | |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

The above-referenced case was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. §636. Before the Court is the following pending motion:

**Enel Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. No. 14).**

The undersigned, having reviewed the relevant briefing, recommends the motion be **DENIED WITHOUT PREJUDICE TO REFILING**.[1] Specifically, the undersigned recommends the Court (1) order Plaintiffs to file, within twenty days from the date of any Order Adopting this Report and Recommendation, a second amended complaint with sufficient allegations to state plausible Texas Water Code and/or nuisance claim(s) to satisfy Federal Rule of Civil Procedure 12(b)(6), if possible; and (2) advise Plaintiffs that failure to comply will result in Plaintiffs' lawsuit being dismissed.

---

[1] Contemporaneously with this Report and Recommendation, the undersigned is entering a Report and Recommendation recommending Plaintiffs' motion to remand (Dkt. No. 12) be denied and denying Plaintiffs' provisional motion for leave to amend. Having determined that Defendant Scott Andrews was improperly joined, the undersigned further recommends Plaintiffs' claims against Scott Andrews be dismissed without prejudice and that Defendant Andrews' Motion to Dismiss (Dkt. No. 21) be denied as moot.

1

## I. <u>Background</u>

Plaintiffs B.F. Hicks, Gary Boren, and Kathy Boren ("Plaintiffs") originally filed this lawsuit in the 62nd Judicial District Court of Franklin County, Texas, on June 29, 2023, alleging causes of action against Scott Andrews, Stockyard Solar Project, LLC, Saddle House Solar Project, LLC, Enel Energy North America Texas, LLC, Enel Green Power Azure Blue Jay Solar Holdings, LLC, Enel Green Power Estonian Solar Project, LLC, Enel Green Power Lily Solar Holdings, LLC, Enel Green Power N.A. Development, LLC, Enel Green Power North America, Inc., Enel Green Power Roadrunner Solar Project I, LLC, Enel Green Power Roadrunner Solar Project II, LLC, and Enel Green Power Roseland Solar, LLC (collectively "Defendants") for (1) intentional nuisance; (2) negligent nuisance; (3) strict-liability nuisance; (4) anticipatory nuisance; (5) violation of the Texas Water Code; and (6) declaratory judgment. *See* Cause No. 13077, *B.F. Hicks, Gary Boren, and Kathy Boren v. Scott Andrews, et al.* (the "State Court Action"); *see also* Dkt. No. 3 (original state court petition). Defendant Saddle House Solar Project, LLC ("Saddle House") filed its Notice of Removal on July 28, 2023. Dkt. No. 1.

After Saddle House filed its Notice of Removal, Plaintiffs filed their amended complaint pursuant to this Court's Order and Advisory dated August 1, 2023. Dkt. No. 5. Plaintiffs allege as follows in the amended complaint.

This case involves the corporate Defendants' intentions to install 620,000 solar panels, DC electric lines that run to a 220 MW/AC storage facility (BESS) on the land surrounding Plaintiffs' acreage. Dkt. No. 7, ¶¶ 4, 21, 30. Simply stated, a BESS is "a collection of large lithium batteries for the purpose of storing electricity." *Id.*, ¶ 28; *see also id.*, ¶ 29 (alleging "[t]he well-known danger of the lithium batteries comprising a BESS are fire, emission of toxic chemicals and gasses,

and even explosion. A BESS is so hazardous that it should be surrounded by an Evacuation Zone in the event of a mishap as described above."); s*ee also id.*, ¶ 32.

Plaintiff B.F. Hicks is an individual who resides in Franklin County, Texas, in the Eastern District of Texas, Texarkana Division. *Id.*, ¶ 1. He owns approximately 1,000 acres of land in Franklin County. *Id.*, ¶ 18. Plaintiffs Gary Boren and Kathy Boren are husband and wife who own five acres in Franklin County within 200 yards of the proposed BESS. *Id.*, ¶ 30. They have resided on this land for 23 years. *Id.*, ¶ 27.

Defendant Scott Andrews ("Andrews") owns the acreage surrounding Plaintiff Hicks on two sides. *Id.*, ¶ 19. Defendant Stockyard Solar Project LLC, ("Stockyard") is a Delaware limited liability company and a 310 MW/AC Solar Electric Generating Facility with an attendant 220 MW/AC storage facility (BESS). *Id.*, ¶ 4. Defendant Saddle House is a Delaware limited liability company. *Id.*, ¶ 5. Defendants Enel Energy North America Texas, LLC, Enel Green Power Azure Blue Jay Solar Holdings, LLC, Enel Green Power Estonian Solar Project, LLC, Enel Green Power Lily Solar Holdings, LLC, Enel Green Power N.A. Development, LLC, Enel Green Power North America, Inc., Enel Green Power Roadrunner Solar Project I, LLC, Enel Green Power Roadrunner Solar Project II, LLC, and Enel Green Power Roseland Solar, LLC are a group of entities organized under the laws of the state of Delaware. *Id.*, ¶ 15. According to Plaintiffs, one or more of the Enel Defendants is a holding company owning the stock in Stockyard and Saddle House. *Id.*

According to Plaintiffs, Andrews intends to sell his acreage to Enel Defendants or one of their subsidiaries. *Id.*, ¶ 20. Plaintiffs allege Defendants Stockyard and Saddle House plan to install 620,000 solar panels. *Id.*, ¶ 21. Plaintiffs maintain that this facility will interfere with their land. *Id.* at 9. Plaintiffs assert four claims against Defendants arising in nuisance: 1) intentional nuisance, 2) negligent nuisance, 3) strict liability nuisance, and 4) anticipatory nuisance. *Id.*, ¶¶ 35-46.

Plaintiffs also allege a violation of the Texas Water Code because each and every intrusion of surface water will cause injury to their property. *Id*., ¶ 50. Plaintiffs seek a temporary and permanent injunction against Defendants from further development on Andrews' land for the purpose of constructing a solar farm or BESS unless and until Defendants demonstrate to the Court that they will not commit a nuisance or violation of the Texas Water Code. *Id.*, ¶ 51. Plaintiffs state Defendants' actions "have and will cause proximately damages to Plaintiffs in an amount in excess of the jurisdictional limits of this Court, but not exceeding $10,000,000.00" and seek a declaratory judgment against Defendants, claiming that Defendants' actions will cause Plaintiffs and their real estate temporary and permanent damage for which there is no adequate remedy. *Id.*, ¶ 53. Plaintiffs further seek attorney's fees in accordance with the Declaratory Judgement Act, the Texas Water Code, and the Texas Civil Practice and Remedies Code in the amount of $1,000,000.00. *Id.*, ¶ 54.

All of the defendants other than individual Scott Andrews ("Enel Defendants") move to dismiss the amended complaint for failure to state a claim. Dkt. No. 14. Enel Defendants claim the allegations and facts fall short of those necessary to state a plausible claim for relief. *Id.* at 11. First, Enel Defendants assert Plaintiff's amended complaint is a "shotgun" pleading subject to dismissal under Rule 12(b)(6). *Id.* at 7-9. Second, Enel Defendants argue the Court should dismiss all of Plaintiffs' claims as unsupported by non-barebones, non-hypothetical, non-conclusory, and non-speculative facts. *Id.* at 9-13. Finally, Enel Defendants assert Plaintiffs fail to allege all the essential elements in support of a negligent nuisance claim. Enel Defendants assert Plaintiffs have already been given an opportunity to replead, and therefore the amended complaint should be dismissed with prejudice without further leave to amend. *Id.* at 14-15.

In response, Plaintiffs argue Enel Defendants waived their right to file a Rule 12(b)(6) motion to dismiss. Dkt. No. 17 at 2-3. Plaintiffs further assert the amended complaint states a claim based on "the Texas remedy of injunction for anticipatory nuisance and violation of the Texas Water Code on the grounds that Defendants are all participants in the construction of a solar farm and BESS (lithium battery installation) which will destroy Plaintiffs' land and cause environmental, safety and health problems." *Id*. at 3. Finally, Plaintiffs seek attorneys' fees of $10,000.00 in connection with Enel Defendants' "frivolous" motion. *Id.* at 5-6.

## II.  Legal Standards

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Pfang v. Lamar Inst. of Tech*., No. 1:23-CV-93, 2023 WL 5017204, at *8 (E.D. Tex. Aug. 5, 2023) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002); also citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face")). Such a motion is "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Id*. (quoting *Sewell v. Monroe City Sch. Bd*., 974 F.3d 577, 581 (5th Cir. 2020)).

"[T]he plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Id*. (quoting *Oscar Renda*

*Contracting, Inc. v. Lubbock*, 463 F.3d 378, 381 (5th Cir. 2006)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Walker v. Beaumont Indep. Sch. Dist*., 938 F.3d 724, 734 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). Accordingly, "a complaint's allegations 'must make relief plausible, not merely conceivable, when taken as true.'" *Id*. (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009)).

In evaluating motions to dismiss filed under Rule 12(b)(6), the court "must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff." *Id*. at 735 (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th. Cir. 1986)). Further, "[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Id*. (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). On the other hand, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Iqbal*, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557)).

### III.  Applicable law

#### A.  Relevant law regarding public nuisance, private nuisance, and nuisance per se

There are two types of nuisance claims, public and private, which are based on "two distinct conditions with different requirements and limitations." *Bruington v. Chesmar Homes, L.L.C.*, No. 08-23-00015-CV, 2023 WL 6972987, at *8 n. 10 (Tex. App. – El Paso Oct. 20, 2023) (citing *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 591, n. 3 (Tex. 2016)). A public

nuisance "affects the public at large," while a private nuisance "is a non-trespassory invasion of another's interest in the private use and enjoyment of land." *Riley v. Angelle*, No. 01-20-00590-CV, 2022 WL 3092892, at *4 (Tex. App. – Houston [1st Dist.] Aug. 4, 2022) (quoting *Goad v. KHBM Partners III, Ltd*., No. 09-20-00020-CV, 2021 WL 4597083, at *5 (Tex. App.—Beaumont Oct. 7, 2021, no pet.) (mem. op.)). A public nuisance may also be a private nuisance. *Id.* (citing *Crosstex*, 505 S.W.3d at 591 n. 3). A private nuisance claim includes the following elements:

> (1) the plaintiff had an interest in the land; (2) the defendant interfered with or invaded the plaintiff's interest by conduct that was negligent, intentional, or abnormal and out of place in its surroundings; (3) the defendant's conduct resulted in a condition that substantially interfered with the plaintiff's use and enjoyment of his land; and (4) the nuisance caused injury to the plaintiff.

*K & K Inez Properties, L.L.C. v. Kolle*, No. 13-21-00460-CV, 2023 WL 8941487, at *3 (Tex. App. – Corpus Christi-Edinburg Dec. 28, 2023) (quoting *Cerny v. Marathon Oil Corp*., 480 S.W.3d 612, 622 (Tex. App.—San Antonio 2015, pet. denied)).

In *Crosstex*, the Texas Supreme Court discussed the requirements for establishing a private nuisance claim. The court noted the law of "nuisance" seeks to balance a property owner's right to use his property "as he chooses in any lawful way" against his duty not to use it in a way that "injure[s] another." *Crosstex*, 505 S.W.3d at 590-91 (quoting *Gulf, Colo. & Santa Fe Ry. Co. v. Oakes*, 94 Tex. 155, 58 S.W. 999, 1000 (1900)). The Texas Supreme Court recognized early on that a nuisance could result from an array of actions by a wide variety of defendants, and could involve interference with numerous different interests through both physical substances and intangible conditions, such as "water, stones, rubbish, filth, smoke, dust, odors, gases, noises, vibrations, and the like." *Id*. at 592 (quoting *Oakes*, 58 S.W. at 1001). However, more recently, the Texas Supreme Court has consistently used a more comprehensive definition of a private nuisance: "A 'nuisance' is a condition that substantially interferes with the use and enjoyment of land by

causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Id.* at 593 (quoting *Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003)).

The Texas Supreme Court clarified that "nuisance" does not refer to a cause of action or to the defendant's conduct or operations, but instead refers to the particular type of legal injury that can support a claim or cause of action seeking legal relief. *Id.* at 594 (citing *City of Tyler v. Likes*, 962 S.W.2d 489, 504 (Tex. 1997) (noting that private nuisance is "a kind of damage done, rather than any particular type of conduct")). Thus, the term "nuisance" does not refer to the "wrongful act" or to the "resulting damages," but only to the legal injury—the interference with the use and enjoyment of property—that may result from the wrongful act and result in the compensable damages. *Id.* at 595. Such an interference qualifies as a nuisance—and thus as a legal injury—only if the interference is "substantial" and causes "discomfort or annoyance" that is "unreasonable." *Id.*

A defendant's liability for creating a nuisance does not depend on showing that the defendant acted or used its property illegally or unlawfully. *Id.* at 601. However, there must be some level of culpability on behalf of the defendant; nuisance cannot be premised on a mere accidental interference. *Id.* at 604. Whether a defendant may be held liable for causing a nuisance depends on the culpability of the defendant's conduct, in addition to proof that the interference is a nuisance. *Id.* Finally, *Crosstex* set forth three classifications for private nuisance: intentional nuisance, negligent nuisance, and strict liability nuisance.[2] *Id.* at 604-609.

---

[2] For an intentional nuisance claim, a plaintiff may establish intent with proof that the defendant acted with a specific intent to inflict injury or a malicious desire to so harm by causing the actionable interference. *Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 912 (N.D. Tex. 2020) (citing *Crosstex*, 505 S.W.3d at 605). "But an intent to inflict injury or desire to harm is not required to show intent; the plaintiff can establish intent with evidence that the defendant acted with the belief that the interference was 'substantially certain to result from' the defendant's conduct." *Id.* (quoting *Crosstex*, 505 S.W.3d at 605 (quoting *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985))). An intentional invasion may be "an invasion that the actor knowingly causes in the pursuit of a laudable enterprise without any desire to cause harm." *Id.* (quoting *Crosstex*, 505 S.W.3d at 605 (quoting Restatement (Second) of Torts § 8A cmt. B)). Further, the

Texas law also recognizes a cause of action for nuisance per se. *Riley*, 2022 WL 3092892, at *5. Under one theory, a nuisance per se is an act, occupation, or structure that is a nuisance at all times, under any circumstances, and in any location. *Id.* (citing *Aguilar v. Trujillo*, 162 S.W.3d 839, 851 (Tex. App.—El Paso 2005, pet. denied); *Luensmann v. Zimmer-Zampese & Assocs., Inc.*, 103 S.W.3d 594, 598 (Tex. App.—San Antonio 2003, no pet.); also citing *Maranatha Temple, Inc. v. Enter. Prods. Co.*, 893 S.W.2d 92, 100 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (contrasting nuisance per se with nuisance in fact, which is "an act, occupation, or structure that becomes a nuisance by reason of its circumstances or surroundings")). Under another theory, usually involving municipalities, a plaintiff may prove nuisance per se by proving that the defendant violated a statute or ordinance declaring the activity to be a nuisance per se. *Id.* (citing *Luensmann*, 103 S.W.3d at 598). However, violation of a statute or ordinance without additional evidence of nuisance is insufficient to prove the claim. *Id.*

Two basic remedies are available in nuisance actions—damages and injunctions. *Cox v. City of Dallas, Tex.*, 256 F.3d 281, 291 (5th Cir. 2001) (citing RESTATEMENT (SECOND) OF TORT, § 821B cmt. i; *id.* § 821C (stating that to maintain a damage action for a public nuisance, the plaintiff must have suffered damage different in kind from that suffered by the general public and that to maintain an injunctive action for a public nuisance, the plaintiff must have a right to recover damages or the authority to represent a political subdivision in the matter or standing to sue in a citizen's action);

---

requirement for an intentional nuisance is that the effects of the substantial interference be unreasonable (thus, that there be a nuisance), not that the defendant's conduct be unreasonable. *Crosstex*, 505 S.W.3d at 606.

A plaintiff's negligent nuisance claim is governed by ordinary negligence principles, and a plaintiff must prove "the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *Reed*, 436 F. Supp. 3d at 912–13 (citing *Crosstex*, 505 S.W.3d at 607 (internal quotation marks omitted in *Reed*)).

The third category of nuisance-based claims (strict liability) includes those based on "other conduct, culpable because abnormal and out of place in its surroundings, that invades another's interests." *Crosstex*, 505 S.W.3d at 607 (quoting *City of Tyler v. Likes*, 962 S.W.2d 489, 503 (Tex. 1997)).

*id*. § 821F (revealing that a private or public nuisance action for damages may be maintained only by those who have suffered "significant harm"); *id*. § 822 cmt. d (distinguishing between an action at law for damages and a suit for injunction in equity and providing that an injunction in equity may be obtained in a proper case against a threatened private nuisance, but an action cannot be maintained <u>at law</u> unless harm has already been suffered).

## B. Texas Water Code

Texas Water Code Section 11.086 generally prohibits a person from diverting or impounding the natural flow of surface water in a manner causing damage to another's property. *Trevino v. Patel*, No. 14-22-00497-CV, 2023 WL 5124662, at *1 (Tex. App. – Houston [14th Dist.] Aug. 10, 2023). Section 11.086 provides in relevant part:

> (a) No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded.

> (b) A person whose property is injured by an overflow of water caused by an unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow.

*City of Magnolia v. Smedley*, No. 09-15-00334-CV, 2018 WL 2246533, at *8 (Tex. App. May 17, 2018) (quoting TEX. WATER CODE ANN. § 11.086(a), (b) (West 2008)). Damages are allowed under § 11.086 when "(1) a diversion or impoundment of surface water, (2) causes, (3) damage to the property of the plaintiff landowner." *Good River Farm, LP v. Martin Marietta Materials, Inc.*, No. 1:17-CV-1117-RP, 2023 WL 2904577, at *3 (W.D. Tex. Apr. 11, 2023) (quoting *Dietrich v. Goodman*, 123 S.W.3d 413, 417 (Tex. App.—Houston 2003, no pet.)).

# IV. <u>Discussion</u>

**A.  Enel Defendants have not waived their right to file a Rule 12(b)(6) motion to dismiss**

Plaintiffs first assert Enel Defendants waived their right to file a Rule 12(b)(6) motion to dismiss by filing an answer in state court prior to removal of this action, in contravention of Rule 12(b). Dkt. No. 17 at 2. Rule 12(b) does require a party to assert any of the enumerated Rule 12(b) defenses by motion "before pleading if a responsive pleading is required." *Matthews v. Tidewater Crewing, Ltd.*, 658 F. Supp. 3d 332, 344 (E.D. La. 2023) (quoting FED. R. CIV. P. 12(b)). However, Rule 81(c)(1) explains that the Federal Rules only "apply to a civil action after it is removed from a state court."[3] Dkt. No. 20 at 2 (quoting FED. R. CIV. P. 81(c)(1)); *see also Matthews*, 658 F. Supp. 2d at 344.

Here, like the *Matthews* defendants, Enel Defendants only answered in state court prior to removal. *See Matthews*, 658 F. Supp. 2d at 344. Additionally, the Court notes Enel Defendants raised the failure to state a claim defense in their state-court answer. *See* Dkt. No. 1-4 at 137 ("Plaintiffs' claims against the Enel Defendants are barred, in whole or in part, because Plaintiffs fail to state a claim against the Enel Defendants (individually and/or collectively) upon which relief can be granted."); *see also Matthews*, 658 F. Supp. 2d at 344 ("Moreover, in their state court answer, Defendants raised the same defenses which they currently raise in the instant Motion: that the case should be dismissed on *forum non conveniens* grounds pursuant to the forum-selection clause in Plaintiff's employment contract, that Plaintiff is statutorily barred from pursuing his claims under 46 U.S.C. § 30105, and that Plaintiff is not a Jones Act seaman."). Thus, there is no

---

[3] Enel Defendants further assert Plaintiffs overlook Rule 12(h), which allows a motion to dismiss for failure to state a claim upon which relief can be granted up to the time of trial. Dkt. No. 20 at 2 (citing FED. R. CIV. P. 12(h)(2)); *see also Hunt v. BAC Home Loans Servicing, LP*, No. CIV.A. C-11-261, 2012 WL 219330, at *11 (S.D. Tex. Jan. 24, 2012).

waiver, and Plaintiffs cannot claim any surprise or prejudice by Enel Defendants' claims. *See Matthews*, 658 F. Supp. 2d at 344.

Plaintiffs also argue the Court's August 1, 2023 Order and Advisory "recognized" that Enel Defendants had waived their right to file a Rule 12(b) motion. Based on Plaintiffs' reading of the Order and Advisory and Federal Rule of Civil Procedure 81(c)(2) (stating that repleading is unnecessary after removal unless the court orders it), Plaintiffs assert Defendants' state court answer constitutes Enel Defendants' answer after removal. Dkt. No. 17 at 3. This argument is a misapplication of the Court's Order and Advisory, which advises the parties of the federal pleading requirements and orders repleading as necessary to comply with such rules.  The order speaks only to deadlines for repleading state court pleadings as necessary to comply with the Federal Rules and does not address a defendant's right to bring a post-removal Rule 12(b) motion.

**B. Plaintiffs' amended complaint should not be dismissed as an improper "shotgun" pleading**

In their motion to dismiss, Enel Defendants first argue Plaintiffs' amended complaint is a "shotgun" or group pleading warranting dismissal. Dkt. No. 14 at 7-8; *see Cunningham v. Lifestyles Development, L.L.C.*, No. 4:19-CV-00006, 2019 WL 4282039, *5 n. 4 (E.D. Tex. Aug. 8, 2019) (stating shotgun complaints are subject to dismissal under Rule 12(b)(6)). Coined by the Eleventh Circuit, a "shotgun pleading" fails "to give the defendants adequate notice of the claims against them and the grounds upon which [each] claim rests." *Alexander v. Dresser, L.L.C.*, No. 1:21-CV-00161, 2022 WL 509366, at *5 (W.D. La. Feb. 18, 2022) (citations omitted). As opposed to the "short and plain statement" requirement contemplated by Rule 8, shotgun pleadings contain several counts within a complaint with each count "'incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.'" *Copeland v. Axion Mortg. Grp. L.L.C.*, No.

1:16CV159-HSO-JCG, 2016 WL 4250431, at *4 (S.D. Miss. Aug. 11, 2016) (citations omitted). Another characteristic of shotgun pleadings is that they fail to distinguish between the actions of named defendants. *Id.*; *Marc Ellman, MD., P.A. v. MDOffice L.L.C.*, No. EP-21-CV-290-DB, 2022 WL 980640, at *3 (W.D. Tex. Mar. 31, 2022).

The amended complaint names twelve defendants (Enel Defendants plus Scott Andrews). Each of the five claims allege "Defendants" have or will engage in nuisance or violation of the Texas Water Code.[4] Although Plaintiffs fail to distinguish between Enel Defendants within each claim, the amended complaint specifically alleges "Defendant Andrews intends to sell said acreage to Defendants ENEL or one of its subsidiaries" and that "Defendants Stockyard and Saddle House have announced their intent to install 620,000 solar panels, DC electric lines that run to a 220 MW BESS on the land surrounding Plaintiff Hicks' pristine prairie acreage." Dkt. No. 7, ¶¶ 20-21. Plaintiffs further allege one or more of the specifically named "Enel" entities is a holding company owning the stock in Defendant Stockyard Solar Project LLC, ("Stockyard") and Defendant Saddle House. *Id.*, ¶ 15. Saddle House's Notice of Removal provides more detailed allegations regarding the interrelatedness of the various Enel Defendants. *See* Dkt. No. 1, ¶¶ 26-36.

Considering this, Plaintiffs' pleading describes the facts underlying Plaintiffs' claims in a manner sufficient to notify Enel Defendants of the claims against them – thereby allowing them to prepare responsive pleadings – and thus it does not constitute an improper "shotgun" pleading warranting dismissal. *Alexander v. Dresser, L.L.C.*, No. 1:21-CV-00161, 2022 WL 509366, at *5

---

[4] Specifically, Plaintiffs assert that with respect to (1) intentional nuisance, "Defendants intend to cause and unless enjoined, will cause a temporary and permanent nuisance to Plaintiffs. . .;" (2) negligent nuisance, "Defendants have and will negligently cause, unless enjoined, both a temporary and permanent nuisance to Plaintiffs. . .;" (3) strict liability nuisance, "Defendants will cause a temporary and permanent nuisance for which they will be strictly liable because they are engaging in abnormally dangerous activity. . .;" (4) anticipatory nuisance, "Defendants are causing and will cause an anticipatory temporary and permanent nuisance unless enjoined. . .;" and (5) Texas Water Code, "[e]ach and every intrusion of water caused by the acts of Defendants constitutes a violation of the Texas Water Code which will cause injury to Plaintiffs' property unless enjoined for which there is no adequate remedy at law. . ." Dkt. No. 7, ¶¶ 39-50.

(W.D. La. Feb. 18, 2022) (further stating that any additional information regarding the specific nature of the plaintiffs' claims is appropriately reserved for discovery); *see also Martin v. Tesoro Corp.*, No. 2:11 CV 1413, 2012 WL 1866841, at *2 (W.D. La. May 21, 2012) ( Because the Amended Complaint describes the alleged misconduct in a sufficiently simple manner to notify the defendants of Mr. Martin's claims against them, the Amended Complaint is not an improper 'shotgun pleading.'").

### C.  Plaintiffs' nuisance claims

Enel Defendants next argue the Court should dismiss all of Plaintiffs' claims as unsupported by non-barebones, non-hypothetical, non-conclusory, and non-speculative facts. Dkt. No. 14 at 9-13. According to Enel Defendants, the amended complaint "is nothing more than a generalized critique of renewable / solar energy projects," and Plaintiffs' nuisance and Texas Water Code claims lack specific allegations rising above speculation, hypotheticals, and mere conclusions. *Id.* at 2-3.

As an initial matter, the amended complaint is more than just a generalized critique of renewable/solar energy projects as urged by Enel Defendants. Plaintiffs' amended complaint contains a "FACTS" section spanning sixteen paragraphs, three of which contain allegations specific to certain defendants:

- "Defendant Andrews owns the acreage surrounding Plaintiff Hicks on two sides. Defendant Andrews is acting as an agent somewhat akin to a 'Landman' for Defendants Stockyard, Saddle House and ENEL."

- "Defendant Andrews intends to sell said acreage to Defendants ENEL or one of its subsidiaries."

- "Defendants Stockyard and Saddle House have announced their intent to install 620,000 solar panels, DC electric lines that run to a 220 MW BESS on the land surrounding Plaintiff Hicks' pristine prairie acreage."

Dkt. No. 7, ¶¶ 19-21. Paragraph 17 does contain a critique of the federal government's solar energy policy and solar energy in general. *Id.*, ¶ 17 (stating solar energy is "a wholly unregulated industry (at least in the State of Texas) that is only made economically viable by the tax breaks and subsidiary of the globalist agenda of the Biden Administration 'Climate Change' legislation" and further stating that a large solar farm containing hundreds of thousands of solar panels "will surely have an adverse effect on wild life and their natural habitat; a negative impact on agricultural economy through livestock and poultry operations, including, most specifically in East Texas, the dairy and beef cattle industry"). However, the amended complaint further alleges the potential negative impacts of the proposed construction and maintenance of the solar panels (although without specific reference to specific defendants or to the instant proposal):

> The panels, in such great numbers, concentrated in one spot, will shed toxic waste residue from the manufacturing process with initial rainfall and continue to do so via deterioration over the life of the panels. This toxic waste, mixed with rain groundwater, will run onto Plaintiff's land which is less than 100 feet down stream of the proposed installations.

> Denuding the ground beneath the panels will require toxic herbicides and increase erosion on Plaintiff's land. Solar farms create islands of increased heat. The construction period will be prolonged and consists largely of the continual driving of piles which creates noise.

> Upon completion, the panels and inverters will create a continuous humming sound which will have the same deleterious effect. All of this noise pollution is detrimental to surrounding wild life, especially birds.

> Plaintiff's family land, which will be surrounded on three sides by the proposed solar farm, is unique in that it consists of approximately 1,000 acres of untouched, unplowed, and unspoiled Texas prairie land. It has enjoyed protected status for over 25 years and Plaintiff Hicks gifted a conservation easement on the land restricting development.

> In addition, the "view pollution" will destroy the natural views across the horizon. All of the above will adversely impact the value of the land, both as a natural preservation of vintage Texas and as an asset.

*Id.*, ¶¶ 22-26 (internal numbering and footnote omitted).

Paragraphs 28–29 and 31–32 further allege potential negative impacts of solar projects and the proposed BESS (battery energy storage system). *See id.*, ¶ 29 ("The well-known danger of the lithium batteries comprising a BESS are fire, emission of toxic chemicals and gasses, and even explosion. A BESS is so hazardous that it should be surrounded by an Evacuation Zone in the event of a mishap. . . ."); ¶ 31 ("If (or, probably when) there is an incident at the BESS causing emission of toxic gasses, fire, or explosion, the Borens and everyone within the evacuation zone, will be required to leave their property until the danger has been eliminated. (Images of East Palestine, Ohio are brought to mind.) The BESS threatens not only the property value of the Boren's but their health and that of everyone in the Evacuation Zone."); ¶ 32 ("There is more than a possibility of a leak of hydrogen chloride and hydrogen fluoride (deadly gases) that, being heavier than air, flow across the ground creating a deadly fog to every living entity. This would be catastrophic and fatal to the Borens and anyone else in the Evacuation Zone and even beyond if it is undiscovered for any period of time.").

The above allegations, which are accepted as true on a motion to dismiss, are not so barebone or conclusory that the complaint should be dismissed. However, Enel Defendants' arguments that the complaint is too speculative or hypothetical to state a cause of action has merit as to Plaintiffs' claims that must be based on injury already suffered.

Specifically, Enel Defendants argue each of Plaintiffs' four separate nuisance claims (and the Texas Water Code claim) should be dismissed because Plaintiffs' allegations are "impermissibly hypothetical," resting on an "entirely speculative" set of assumptions. Dkt. No. 14 at 12-13. Enel Defendants further state the "essence of Plaintiffs' Amended Complaint is that the Plaintiffs *might* be damaged in the *future* by the Defendants' planned solar energy activities, on the sole basis of complaints Plaintiffs plead regarding *other* (not specifically defined or identified)

solar energy projects." *Id.* at 3 (emphasis original). Enel Defendants assert nothing ties the allegations in the amended complaint to any inference that *these* batteries *once installed in the future* will cause any harm. *Id*. at 11  (emphasis original); *see also id.* at 12 ("Panels have not 'shed toxic waste residue.' BESS have not 'leak[ed] hydrogen chloride and hydrogen fluoride.' Defendants have not 'divert[ed] or impound[ed] the natural flow of surface waters' in violation of the Texas Water Code.").

In their response, Plaintiffs do not specifically address the private nuisance claims of intentional nuisance, negligent nuisance, or strict liability nuisance. Dkt. No. 17 at 3 (Plaintiffs' affirmatively stating that their claims are only based on "the Texas remedy of injunction for anticipatory nuisance and violation of the Texas Water Code. . . ."). Presumably, this is because private nuisance claims typically arise *after* the injury has occurred. *See Olivarez v. Pena*, No. 13-22-00547-CV, 2023 WL 5611428, at *2 (Tex. App. – Corpus Christi-Edinburg Aug. 30, 2023) ("Generally, a claim accrues when the defendant's wrongful conduct causes the claimant to suffer a legal injury, which gives the claimant the right to seek a judicial remedy."). Indeed, the elements of a private nuisance claim are written in the past tense: that defendants "**interfered with or invaded** the plaintiff's interest by conduct that was negligent, intentional, or abnormal and out of place in its surroundings;" the defendants' conduct "**resulted in a condition that substantially interfered with** the plaintiff's use and enjoyment of his land;" and "the nuisance **caused** injury to the plaintiff." *Olivarez v. Pena*, No. 13-22-00547-CV, 2023 WL 5611428, at *2 (Tex. App. – Corpus Christi-Edinburg Aug. 30, 2023) (emphasis added).[5] Instead, Plaintiffs focus on future

---

[5] "As nuisance claims arise only upon a *substantial interference* with property use, they normally do not accrue when a potential source is under construction; instead, a landowner 'has the right to wait and see what the result will be when the improvements are subjected to an actual test.'" *Schneider Nat. Carriers, Inc. v. Bates*, 147 S.W.3d 264, 279 (Tex. 2004), holding modified by *Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Texas), L.P.*, 449 S.W.3d 474 (Tex. 2014) (citations omitted) (emphasis in original).

harm related to their "anticipatory nuisance" cause of action, in conjunction with possible future violations of the Texas Water Code. Dkt. No. 17 at 3 (Plaintiffs' stating they are "employing the Texas remedy of injunction for anticipatory nuisance and violation of the Texas Water Code on the grounds that Defendants are all participants in the construction of a solar farm and BESS (a lithium battery installation) which **will** destroy Plaintiffs' land and cause environmental, safety and health problems" and further stating "Defendants **intend to build** a dangerous, ugly and toxic solar farm (620,000 toxic solar panels) and BESS on Defendant Andrews property" and it "**will** adversely effect [sic] Plaintiffs in the extreme") (emphasis added); *see also* Dkt. No. 12 at 8 (stating the solar farm and BESS "**will** change the flow of water and as such "make it toxic to Plaintiffs' property") (emphasis added).

Plaintiffs' amended complaint, like their briefing, focuses on future harm that might come from the operation of the solar farm and BESS. *See*, *e.g.* Dkt. No. 7, ¶ 40 (with respect to intentional nuisance, "Defendants intend to cause and unless enjoined, will cause a temporary and permanent nuisance to Plaintiffs. . . ."); ¶ 44 (with respect to strict liability nuisance, "Defendants will cause a temporary and permanent nuisance for which they will be strictly liable because they are engaging in abnormally dangerous activity. . . ."); ¶ 50 (with respect to Texas Water Code, "[e]ach and every intrusion of water caused by the acts of Defendants constitutes a violation of the Texas Water Code which will cause injury to Plaintiffs' property unless enjoined for which there is no adequate remedy at law. . . ."). For this reason, which was not disputed by Plaintiffs in their briefing, the amended complaint fails to state a claim for intentional nuisance, negligent nuisance, and strict liability nuisance.

Plaintiffs' negligent nuisance claim also fails because Plaintiffs fail to allege the essential elements to plausibly state such a claim. A plaintiff's negligent nuisance claim is governed by

ordinary negligence principles, and a plaintiff must prove "the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 912-13 (N.D. Tex. 2020) (citing *Crosstex*, 505 S.W.3d at 607 (internal quotation marks omitted in *Reed*)). "Whether a duty exists is a threshold inquiry and a question of law; liability cannot be imposed if no duty exists." *Id*. at 913 (quoting *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006)). However, the Amended Complaint fails to allege the existence of any duty owed, which of Defendants owed that duty, and to whom the duty was owed. Plaintiffs also fail to allege a breach of that duty by Enel Defendants and damage proximately caused by the breach.

Concerning their request for injunctive relief through their so-called "anticipatory nuisance" theory, Plaintiffs rely on cases that have classified proposed sewage treatment disposal plants as a type of "legalized" nuisance which might be enjoined. Dkt. No. 12 at 7-9 (citing *City of Marlin v. Holloway*, 192 S.W. 623 (Tex. Civ. App.—Austin  1917); also citing *Cardwell v. Austin*, 168 S.W. 385 (Tex. Civ. App. – Galveston 1914));[6] *see also City of Wylie v. Stone*, 16 S.W.2d 862, 863 (Tex. Civ. App.—Dallas 1929), *writ granted* (Oct. 30, 1929), *aff'd*, 34 S.W.2d 842 (Tex. Comm'n App. 1931) (stating "the nuisance here complained of does not belong to the category of those legalized, but, in a proper case, may be enjoined").

---

[6] The appellate court in *Cardwell* reformed and affirmed the judgment of the district court enjoining the city of Bay City (and the owner of a franchise to construct, maintain, and operate a sanitary sewer system in the city) from constructing and operating a proposed septic tank. *Cardwell v. Austin*, 168 S.W. 385, 387-88 (Tex. Civ. App. – Galveston 1914). Although the district court was correct in enjoining the construction and operation of the tank in question, the appellate court held the district court "was not warranted in perpetually enjoining the defendants from constructing and operating a septic tank of proper dimensions and construction, upon the 1.6 acres of land." *Id.* at 387. The appellate court indicated a city may construct a septic tank if the sewage could be purified and discharged practically free from odor and could discharge effluent if it does not contaminate the creek so as to render the waters "unfit for drinking water for stock," stating the "mere fact that the proximity of the tank to plaintiff's residence would produce a degree of mental annoyance, or would tend to lessen the value of his property, ought not to prevent the establishment and operation of the tank on the 1.6-acre tract." *Id.* at 387-88. According to the appellate court, "[i]f the market value is lessened thereby, and there is no annoyance other than mental disturbance due to the fact that the tank is in the vicinity, then plaintiff could be compensated in money for his damages thus sustained." *Id.* at 388.

In *Marlin,* the appellate court affirmed the judgment of the district court granting a temporary injunction against the city of Marlin, whereby it restrained the city from erecting a sewage plant, "which [was] alleged would create a nuisance and inflict irreparable injury upon the plaintiffs." *Marlin*, 192 S.W. at 624 (noting it was well settled that injunction was a proper remedy to prevent the creation of a nuisance by a municipal corporation). The court granted an injunction against the construction of the sewage plant after finding that the particular plant proposed would necessarily result in a nuisance to particular individuals. *Id.* (stating the section of the city of Marlin was "strictly a residence section;" that the sewage disposal plant "would emit foul and obnoxious odors, and attract and facilitate the breeding of flies;" that the odors emanating from said plant would reach the homes of plaintiffs and that said odors and flies would be disagreeable and annoying and render the continued occupancy of their homesteads intolerable). "In a sparse opinion, the Texas Court of Civil Appeals found that the plant would emit foul and obnoxious odors that would especially annoy the plaintiffs." Andrew H. Sharp, *An Ounce of Prevention: Rehabilitating the Anticipatory Nuisance Doctrin*e, 15 B.C. Envtl. Aff. L. Rev. 627, 641 (1988).

Thus, although not a nuisance per se, the court in *Marlin* permitted injunctive relief upon a showing that the particular plant proposed would necessarily result in a nuisance to a particular individual. 57 Am. Jur. 2d Municipal, etc., Tort Liability § 330, *Remedies in actions alleging liability of governmental entity for nuisance in operation of sewage disposal plants – Injunctive relief for an anticipatory nuisance*. Although Plaintiffs do not specifically argue the proposed solar farm should be classified similarly to the proposed sewage plant in *Marlin*, there is a possibility

that Plaintiffs could amend in such a way to fit within the equivalent of the "legalized" category of cases which can be anticipatorily enjoined.[7] *See Wylie*, 16 S.W.2d at 863.

Relatedly, there are other circumstances in which a court may exercise its equitable power to enjoin a prospective nuisance.[8] *1717 Bissonnet, L.L.C. v. Loughhead*, 500 S.W.3d 488, 497 (Tex. App. – Houston [14th Dist.] 2016) (citing *Freedman v. Briarcroft Prop. Owners, Inc.*, 776 S.W.2d 212, 216 (Tex.App.–Houston [14th Dist.] 1989, writ denied)). According to the *Freedman* court, a court of equity is empowered to interfere by injunction to prevent a threatened injury where an act or structure will be a nuisance per se, or will be a nuisance for which there is no adequate remedy at law, or where a nuisance is imminent. *Freedman*, 776 S.W.2d at 216 (citing *O'Daniel v. Libal*, 196 S.W.2d 211, 213 (Tex.Civ.App.—Waco 1946, no writ)). When an attempt is made to enjoin an anticipated nuisance, the threatened injury must not be merely probable but reasonably certain before a court will exercise its equitable power to restrain it. *Id.* (citing *O'Daniel*, 196 S.W.2d at 213). In *Freedman*, the court held that although a parking lot was not a nuisance per se, "the parking lot did not have to be in existence to bring this claim." *Freedman*, 776 S.W.2d at 216 (noting the appellants' intent to create the parking lot was imminent).

Here, Plaintiffs do not argue the development of a solar farm/BESS is nuisance per se. The Court notes that neither the lawful use of property nor the lawful conduct of a business is a nuisance

---

[7] Not only do Plaintiffs allege the particular proposed solar farm would necessarily result in a nuisance to Plaintiffs, but Plaintiffs also suggest the development of the proposed solar farm and BESS would necessarily result in a nuisance more broadly to individuals in the "Evacuation Zone and beyond." *See* Dkt. No. 7, ¶¶ 31-32. Federal courts at least have indicated that potential health-related environmental harm is an appropriate occasion for a prospective nuisance action. *See* Andrew H. Sharp, *An Ounce of Prevention: Rehabilitating the Anticipatory Nuisance Doctrine*, 15 B.C. Envtl. Aff. L. Rev. 627, 636 (1988).

[8] However, there is no cause of action for damages caused by a prospective nuisance, which is a question of law. *1717 Bissonnet, L.L.C. v. Loughhead*, 500 S.W.3d 488, 496-97 (Tex. App. – Houston [14th Dist.] 2016) (citing *Cook v. Neely*, No. 04–14–00518, 2015 WL 4554286, at *2 (Tex.App.–San Antonio July 29, 2015, pet. denied) (mem. op.)).

per se.[9] *Maranatha Temple*, 893 S.W.2d at 100 (citing *Storey v. Central Hide & Rendering Co.*, 226 S.W.2d 615, 617 (Tex.1950); *O'Connor v. Ryan*, 159 S.W.2d 531, 533 (Tex.Civ.App.—San Antonio 1942, *writ ref'd*); also citing *Inwood Forest Community Improvement Ass'n v. R.J.S. Dev. Co.*, 630 S.W.2d 751, 754 (Tex.App.—Houston [1st Dist.] 1982, no writ)). In *Maranatha*, the court declined to allow a nuisance in fact cause of action based on fear, apprehension, or other emotional reaction that resulted from the nearby lawful operation of petrochemical or hydrocarbon facilities or pipelines. *Id.* ("If we were to allow a cause of action to persons who have not been harmed, in their land or body, by the lawful operation of an industry, but who are afraid that one day they will be, we would be opening our courts to a potential torrent of litigation."); *see also Inwood*, 630 S.W.2d at 753 (holding that construction of an apartment complex and sewage plant could not be enjoined before they were built because they were not nuisances per se).

Nor do Plaintiffs allege the anticipated threatened injury is imminent. *See Bruington v. Chesmar Homes, L.L.C.*, No. 08-23-00015-CV, 2023 WL 6972987, at *11 (Tex. App. – El Paso Oct. 20, 2023) (stating that "probable, imminent, and irreparable injury requires proof of an actual threatened injury, as opposed to a speculative or purely conjectural one"). Therefore, as currently pleaded, the allegations in the amended complaint are insufficient to state a plausible claim for injunctive relief to prevent a threatened injury.

### D.  Plaintiffs' Texas Water Code claim

Although both parties' briefing gloss over the elements of the Texas Water Code claim, Plaintiffs state in their response to Enel Defendants' motion that they are seeking injunctive relief

---

[9] Courts have disallowed nuisance per se claims against lawfully-run industries regarding operation of oil pipelines and refineries. *Maranatha Temple*, 893 S.W.2d at 100 (citing, among other cases, *Humble Pipe Line Co. v. Anderson*, 339 S.W.2d 259 (Tex.Civ.App.—Waco 1960, *writ ref'd n.r.e.*) (operation of oil pipeline); *Warren v. Premier Oil Ref. Co.*, 173 S.W.2d 287 (Tex.Civ.App.—Eastland 1943, *writ ref'd w.o.m.*) (operation of oil pipeline); *Hall v. Amoco Oil Co.*, 617 F. Supp. 111 (S.D.Tex.1984) (operation of oil refineries)).

for violation of the Texas Water Code, presumably a *future* violation following the construction of the solar farm and BESS. In their reply, Enel Defendants do not specifically address whether that would be permissible under Texas law. Because Plaintiffs treated this claim as rising and falling with the anticipatory nuisance claim, so will the Court for purposes of this Report and Recommendation.

**E.  Plaintiffs should be allowed leave to amend**

Enel Defendants argue the Court should not grant Plaintiffs leave to amend again because Plaintiffs have already had the opportunity to replead following the Court's Order and Advisory. Enel Defendants also misapply the Court's Order and Advisory.

As is the Court's standard practice following removal, the Order and Advisory merely advised the parties that repleading was not necessary under Federal Rule 81(c)(2) and ordered the parties to "replead as necessary to comply with the Federal Rules of Civil Procedure and the Court's Local Rules." Dkt. No. 5. Thus, the Court finds no reason to deny Plaintiffs the opportunity to replead to plausibly state their claims. *See Jack v. Evonik Corp.*, 79 F.4th 547, 565 (5th Cir. 2023) ("Normally, a plaintiff should be afforded at least one chance to remedy all identified flaws in his pleadings."); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002) ("District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). Accordingly, the undersigned recommends the Court direct Plaintiffs to amend their amended complaint to address the deficiencies identified above, if possible. Enel Defendants may refile a motion to dismiss in response to Plaintiffs' second amended complaint.

### IV.  <u>Recommendation</u>

For the above reasons, it is

**RECOMMENDED** that Enel Defendants' Motion to Dismiss for Failure to State a Claim (Dkt. No. 14) be **DENIED WITHOUT PREJUDICE TO REFILING**. It is further

**RECOMMENDED** that the Court (1) order Plaintiffs to file, within twenty days from the date of any Order Adopting this Report and Recommendation, a second amended complaint with sufficient allegations to state plausible Texas Water Code and/or nuisance claim(s) to satisfy Federal Rule of Civil Procedure 12(b)(6), if possible; and (2) advise Plaintiffs that failure to comply will result in Plaintiffs' lawsuit being dismissed.

### Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C). Any response to the objections shall be filed within **seven days** from the date of receipt of the objections.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*,

79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C.

§ 636(b)(1) (extending the time to file objections from ten to fourteen days).

SIGNED this the 28th day of February, 2024.


_____

J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE