**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| **B.F. HICKS, GARY BOREN** | § | |
| **and KATHY BOREN** | § | |
| | § | |
| **v.** | § | **Civil Action No. 5:23cv81-RWS-JBB** |
| | § | |
| **SCOTT ANDREWS, ET AL.** | § | |

---

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

---

The above-referenced case was referred to the undersigned United States Magistrate Judge

for pretrial purposes in accordance with 28 U.S.C. § 636. Before the Court is the following pending

motion:

> **Stockyard Solar Project, LLC and Saddle House Solar Project, LLC's Motion to Dismiss Second Amended Complaint for Failure to State a Claim (Dkt. No. 54).**

The undersigned, having reviewed the relevant briefing, recommends the motion be **GRANTED**

**IN PART AND DENIED IN PART**. Specifically, the Court recommends the motion be granted

as to Plaintiffs' strict liability nuisance claim but denied as to Plaintiffs' claims for negligent

nuisance, intentional nuisance, injunctive relief to prevent a prospective nuisance, Texas Water

Code violations, and trespass.

Table of Contents

I. BACKGROUND ........................................................................................................3
  A. Procedural background ........................................................................................3
  B. Allegations in the SAC, generally ......................................................................3

**II. MOTION TO DISMISS** ......................................................................................6

**III. LEGAL STANDARD** ..........................................................................................7

**IV. APPLICABLE LAW** ............................................................................................8
  A.  Nuisance claims, generally ..............................................................................8
  B.  Texas Water Code .........................................................................................12
  C.  Trespass .........................................................................................................13

**V. DISCUSSION** .......................................................................................................14

A. Plaintiffs' allegations of injury .............................................................................14

B. Plaintiffs' negligent, intentional, and strict liability nuisance claims ..................15
1. Whether the SAC sufficiently alleges that a nuisance currently exists ..................16
    a. Allegations of flooding, erosion, washed-up trees and limbs, and migration of hogs....17
    b. Aesthetic-based allegations (view pollution) .................................................21
    c. Mental anguish allegations...............................................................................23
    d. Summary…….....................................................................................................24
2. Whether the SAC alleges the essential elements of each private nuisance claim .................25
    a. Plaintiffs' negligent nuisance claim ...............................................................25
    b. Plaintiffs' intentional nuisance claim .............................................................31
    c. Plaintiffs' strict liability nuisance claim ........................................................32
C. Plaintiffs' claim for injunctive relief to prevent a prospective nuisance ...............34
1. Relevant background ...............................................................................................34
2. Defendants' assertions…….................................................................................. 36
3. Analysis...................................................................................................................37
    a. Necessarily create a nuisance…….................................................................37
    b. Imminent harm…...........................................................................................39
D. Plaintiffs' Texas Water Code § 11.086 claim .....................................................43
1. Defendants' assertions ...........................................................................................43
2. Applicable law .......................................................................................................43
3. Analysis...................................................................................................................44
E. Plaintiffs' trespass claim .......................................................................................48
1. Defendants' assertions ...........................................................................................48
2. Applicable law .......................................................................................................49
3. Analysis...................................................................................................................50

**VI. RECOMMENDATION** ........................................................................................53

# I. BACKGROUND

## A. Procedural background

Plaintiffs B.F. Hicks, Gary Boren, and Kathy Boren ("Plaintiffs") originally filed this lawsuit in the 62nd Judicial District Court of Franklin County, Texas, on June 29, 2023, alleging causes of action against Scott Andrews, Stockyard Solar Project, LLC ("Stockyard"), Saddle House Solar Project, LLC ("Saddle House"), and various "Enel" Defendants based on the early stages of a solar energy project next to Plaintiffs' land. Defendant Saddle House filed its Notice of Removal on July 28, 2023. Dkt. No. 1.

Following an initial motion to dismiss, Plaintiffs were ordered to amend. *Hicks v. Andrews*, No. 5:23CV81-RWS-JBB, 2024 WL 1202922, at *13 (E.D. Tex. Feb. 28, 2024), *report and recommendation adopted*, 2024 WL 1198859 (E.D. Tex. Mar. 20, 2024). Plaintiffs' Second Amended Complaint ("SAC") alleges causes of action against Stockyard and Saddle House (collectively, "Defendants") for (1) negligent nuisance; (2) intentional nuisance; (3) strict-liability nuisance; (4) anticipatory nuisance; (5) violation of the Texas Water Code; and (6) trespass. Dkt. No. 53. On May 14, 2024, Defendants filed the current motion to dismiss Plaintiffs' SAC for failure to state a claim. Dkt. No. 54.

## B. Allegations in the SAC, generally

This case involves the Stockyard and Saddle House Defendants' intentions to install "two 620,000 panels solar farms" and DC electric lines that run to two "220 MW/AC storage" Battery Energy Storage Systems (BESS) on land owned by former defendant Andrews which is adjacent to Plaintiffs' properties in Franklin County, Texas. SAC (Dkt. No. 53), ¶¶ 1, 3-4, 9-10, 12, 21-22, 26, 28, 35.

Plaintiffs Gary and Kathy Boren ("Borens") are husband and wife who own five acres in Franklin County. *Id.*, ¶ 2. They have lived there for twenty-three years. *Id.*, ¶ 25. Plaintiffs allege the Borens live and own property within 200 yards of the proposed Stockyard BESS. *Id.*, ¶ 28.

Plaintiff B.F. Hicks ("Hicks") owns approximately 1,000 acres of "pristine Texas prairie," which is operated under a "conservation easement" and known as the "Daphne Prairie Preserve." *Id.*, ¶ 8 and n. 3; *see also id.*, ¶ 16 (alleging "it has enjoyed protected status for over 25 years and Plaintiff Hicks gifted a conservation easement on the land restricting development").[1] Plaintiffs allege the Daphne Prairie Preserve's north boundary is about 500 yards from the proposed Saddle House BESS. *Id.*, ¶ 28; *see also id.* at 7, n. 5 (alleging Saddle House and Stockyard "but each other and form one big continuous area" and further alleging that Stockyard's solar farm on 2,500 acres comes ""up to the Daphne Prairie Preserve from the south"). Plaintiffs further allege bulldozing and clearing to accommodate placement of the Saddle House solar panels and right-of-way has already commenced, and the prolonged construction period creates "noise pollution" and "will destroy Plaintiff Hicks' ability to enjoy the Daphne Prairie Preserve." *Id.*, ¶¶ 11, 14.

The SAC contains an introductory critique of the federal government's solar energy policy and solar energy in general. *Id.*, ¶ 7 (stating solar energy is "a wholly unregulated industry (at least in the State of Texas) that is only made economically viable by the tax breaks and subsidiary of the globalist agenda of the Biden Administration 'Climate Change' legislation" and further stating that a large solar farm containing hundreds of thousands of solar panels "will surely have an

---

[1] The Daphne Prairie Preserve is a "unique tallgrass prairie remnant; the second largest tract of untouched prairie land left in Texas, offering vistas across a landscape free of transmission lines, solar panels, industrial clutter and the hand of man." SAC (Dkt. No. 53), ¶ 17. According to Plaintiffs, the Daphne Prairie Preserve has always been surrounded by undeveloped agricultural land, "which is part of its charm." *Id.*, ¶ 18. Plaintiffs allege the prairie landscape hosts an "extraordinary range of over 380 plant species" and provides "sheltering habitat for threatened grassland birds and native wildlife." *Id.*, ¶ 20; *see also id.*, ¶ 21 (alleging the Daphne Prairie Preserve has been the recipient of "many conservation awards from state and national organizations"); *see also id.*, ¶ 22 (alleging applications have been submitted to the National Park Service to list the Daphne Prairie Preserve as a national nature landmark).

adverse effect on wild life and their natural habitat; a negative impact on agricultural economy through livestock and poultry operations, including, most specifically in East Texas, the dairy and beef cattle industry"). The SAC further alleges potential negative impacts of the proposed BESS, which is "a collection of large lithium batteries for the purpose of storing electricity." *Id.*, ¶ 26. Plaintiffs allege the following "has already and will continue to adversely impact the value of [their] land, both as a retirement homestead and as an asset" (*id.*, ¶ 31):

> The well-known danger of the lithium batteries comprising a BESS are fire, emission of toxic chemicals and gasses, and even explosion. A BESS is so hazardous that the County Solar Commission Report recommended that it be surrounded by an Evacuation Zone in the event of a mishap as described above. e.g. **Appendix 9**. These large BESS (100,000 large truck sized DC batteries linked by cable are relatively new technology. After several fires in the year 2023 in New York state the state government has imposed a moratorium on further construction. In New York City alone, just lithium batteries were attributed as the cause of about fifty fires and thirteen deaths in 2023.

* * *

> If (or, probably when) there is an incident at the BESS causing emission of toxic gasses, fire, or explosion, the Borens and everyone within the evacuation zone, will be required to leave their property until the danger has been eliminated. (Images of East Palestine, Ohio are brought to mind.) The BESS not only diminishes the property value of the Boren's but their health and that of everyone in the Evacuation Zone. Within the last year, a BESS exploded in Lyme, New York causing such evacuations.

> There is more than a possibility of a leak of hydrogen chloride and hydrogen fluoride (deadly gases) that, being heavier than air, flow across the ground creating a deadly fog to every living entity. This would be catastrophic and fatal to the Borens, anyone else in the Evacuation Zone and all wildlife even beyond if it is undiscovered for any period of time.

*Id.*, ¶¶ 27, 29-30 (emphasis original) (internal numbering omitted).

Plaintiffs seek a temporary and permanent injunction against Defendants from further development on Andrews' land for the purpose of constructing a solar farm or BESS unless and until Defendants demonstrate to the Court that they will not commit a nuisance, trespass, or

violation of the Texas Water Code. *Id.*, ¶¶ 100-01. Plaintiffs state Defendants' actions "have and will proximately cause, if not enjoined, damages to Plaintiffs in an amount in excess of the jurisdictional limits of this Court, but not exceeding $10,000,000.00" and seek a declaratory judgment against Defendants, claiming that Defendants' actions will cause Plaintiffs and their real estate temporary and permanent damage for which there is no adequate remedy. *Id.*, ¶¶ 102-03. Plaintiffs further seek attorney's fees in accordance with the Declaratory Judgement Act, the Texas Water Code, and the Texas Civil Practice and Remedies Code in the amount of $1,000,000.00. *Id.*, ¶ 104.

## II.  MOTION TO DISMISS

Defendants move to dismiss Plaintiffs' SAC in its entirety under Federal Rule of Civil Procedure 12(b)(6). Specifically, Defendants argue as follows:

> The essence of Plaintiffs' Second Amended Complaint is that the Plaintiffs *might* be damaged in the *future* by the Defendants' planned solar energy activities, largely on the basis of complaints Plaintiffs plead regarding *other* (not specifically defined or identified) solar energy projects. The allegations made by Plaintiffs are largely hypothetical and rest on entirely speculative assumptions not grounded in anything that has *actually* occurred. While there are some allegations of already occurred actions and injuries, those are insufficient to state a claim for relief. . . .
>
> * * *
>
> Plaintiffs' allegations against Defendants in [the "FACTS"] section (and for that matter, most of the rest of the pleading) can be distilled into the following: (1) Defendants have announced an intent to construct a solar power project and have begun initial site work, and (2) injuries may possibly result in the future. Also important for purposes of this Motion are the allegations Plaintiffs plead in the "ALL READY OCCURRED" section of the Second Amended Complaint. There, Plaintiffs allege that "Defendants have cut great swathes of mature oak trees directly adjacent to Plaintiff Hicks Daphne Prairie Preserve," which has led to various alleged injuries. Plaintiffs also make allegations of wrongful conduct in paragraph 57 – 60 regarding potential trespass, future placement of utility lines, and easements.

Dkt. No. 54 at 3-5 (emphasis original) (internal footnotes omitted). Defendants further assert Plaintiffs have failed to allege all of the essential elements of their negligence, intentional, and

strict liability nuisance claims. *Id.* at 14-20. Finally, Defendants move to dismiss Plaintiffs' anticipatory nuisance, Texas Water Code, and trespass claims. *Id.* at 21-28. Defendants argue the Court should not grant Plaintiffs leave to amend again because Plaintiffs have already had two opportunities to replead.

### III. LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Pfang v. Lamar Inst. of Tech.*, No. 1:23-CV-93, 2023 WL 5017204, at *8 (E.D. Tex. Aug. 5, 2023) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002); also citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face")). Such a motion is "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Id.* (quoting *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020)).

When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). Further, "[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)).

To avoid dismissal, a plaintiff must state a claim for relief that is facially plausible by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Flagg v. Stryker Corp.*, 647 F. App'x 314, 315 (5th Cir. 2016) (quoting *Iqbal,* 556 U.S. at 678). A complaint is insufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). On a motion to dismiss, when the cause of action requires specific elements to be proven, the plausibility "standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *Id.* at 315-16 (quoting *In re S. Scrap Material Co.,* 541 F.3d 584, 587 (5th Cir.2008) (quoting *Twombly,* 550 U.S. at 556)).

## IV.  APPLICABLE LAW

### A.    Nuisance claims, generally

"The law of 'nuisance' seeks to balance a property owner's right to use his property as he chooses in any lawful way against his duty not to use it in a way that injures another." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 590-91 (Tex. 2016). "A 'nuisance' is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Huynh v. Blanchard*, 694 S.W.3d 648, 672 (Tex. 2024) (quoting *Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003) ("*Holubec I*")). There are two types of nuisance claims, public and private, which are based on "two distinct conditions with different requirements and limitations." *Bruington v. Chesmar Homes, L.L.C.*, No. 08-23-00015-CV, 2023 WL 6972987, at *8 n. 10 (Tex. App. – El Paso Oct. 20, 2023) (citing *Crosstex*, 505 S.W.3d at 591 n. 3). A public nuisance "affects the public at large," while a private nuisance "is a non-trespassory invasion of another's interest in the private

use and enjoyment of land." *Riley v. Angelle*, No. 01-20-00590-CV, 2022 WL 3092892, at *4 (Tex. App. – Houston [1st Dist.] Aug. 4, 2022) (quoting *Goad v. KHBM Partners III, Ltd*., No. 09-20-00020-CV, 2021 WL 4597083, at *5 (Tex. App.—Beaumont Oct. 7, 2021, no pet.) (mem. op.)). A public nuisance may also be a private nuisance. *Id.* (citing *Crosstex*, 505 S.W.3d at 591, n. 3).

The Texas Supreme Court addressed private nuisance in *Crosstex*. According to the Texas Supreme Court, "nuisance" is not a cause of action. *Dealer Computer Servs., Inc. v. DCT Hollister Rd, L.L.C*., 574 S.W.3d 610, 621-22 (Tex. App. – Houston [14th Dist.] 2019, no pet.) (citing *Crosstex*, 505 S.W.3d at 580, 594, 601, 604). A nuisance does not itself constitute wrongful conduct or cause of injury; rather, nuisance is a type of injury. *Id.* at 622 (citing *Crosstex*, 505 S.W.3d at 588 ("Taking this opportunity to clarify the law, we hold that the term 'nuisance' refers not to a defendant's conduct or to a legal claim or cause of action but to a type of legal injury involving interference with the use and enjoyment of real property.")); *see also City of Tyler v. Likes*, 962 S.W.2d 489, 504 (Tex. 1997) (noting that private nuisance is "a kind of damage done, rather than any particular type of conduct")). The court in *Crosstex* explained that three different causes of action may lead to liability for a nuisance injury: (1) intentional conduct causing a nuisance, referred to by the court as "intentional nuisance;" (2) negligence; and (3) abnormally dangerous or ultra-hazardous activities causing a nuisance, referred to by the court as "strict-liability nuisance." *Id*. (citing *Crosstex*, 505 S.W.3d at 604–09).

The Texas Supreme Court recognized early on that a nuisance could result from an array of actions by a wide variety of defendants,[2] and could involve interference with numerous different

---

[2] As an example, the *Crosstex* court cited *Austin & N.W. RY Co. v Anderson*, 15 S.W. 484 (Tex. 1891), wherein the defendant constructed an embankment and culverts, which was not of itself a nuisance. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 592 n. 5 (Tex. 2016). A nuisance was created, however, when the defendant diverted destructive waters onto the plaintiff's land, destroying Anderson's crops in 1886, 1887, and 1888. *Anderson*, 15 S.W. at 485 ("The building of the embankment and the culverts, as alleged, was not of itself a nuisance. It was no invasion of plaintiff's rights. They were not put on his land. They became a nuisance only at intervals,-by diverting water from rain-falls from its usual flow upon plaintiff's land.").

interests through both physical substances and intangible conditions, such as "water, stones, rubbish, filth, smoke, dust, odors, gases, noises, vibrations, and the like." *Crosstex*, 505 S.W.3d at 592 (quoting *Gulf, Colo. & Santa Fe Ry. Co. v. Oakes*, 94 Tex. 155, 58 S.W. 999, 1001 (1900)). However, more recently, the Texas Supreme Court has consistently used a more comprehensive definition of a private nuisance: "A 'nuisance' is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Id*. at 593 (quoting *Holubec I*, 111 S.W.3d at 37).

The distinction between temporary and permanent nuisances determines matters such as when a claim accrues,[3] what damages are available, and whether future suits may be required. *Huynh*, 694 S.W.3d at 677 (citing *Schneider Nat. Carriers, Inc. v. Bates*, 147 S.W.3d 264, 275 (Tex. 2004), *holding modified by Gilbert Wheeler, Inc. v. Enbridge Pipelines* (*E. Texas*), *L.P.*, 449 S.W.3d 474 (Tex. 2014)). "It is well-settled that three different remedies are potentially available to a claimant who prevails on a private-nuisance claim: damages, injunctive relief, and self-help abatement. . . . However, not all remedies are available in every case." *Id.* at 672 (quoting *Crosstex*, 505 S.W.3d at 610 (citations omitted in *Huynh*)). The purpose of the law "in every case, is to compensate the owner for the injury received, and the measure of damages which will accomplish

---

[3] "A permanent nuisance claim accrues when injury ***first*** occurs or is discovered; a temporary nuisance claim accrues ***anew*** upon each injury." *JLMH Invs., L.L.C. v. Fam. Dollar Stores of Texas, L.L.C.*, No. 02-23-00233-CV, 2024 WL 2971684, at *4 (Tex. App. – Ft. Worth June 13, 2024) (citing *Schneider Nat. Carriers, Inc. v. Bates*, 147 S.W.3d 264, 270 (Tex. 2004), *holding modified by Gilbert Wheeler, Inc. v. Enbridge Pipelines* (*E. Texas*), *L.P.*, 449 S.W.3d 474 (Tex. 2014)) (emphasis original). In the context of a nuisance that arises from the construction of an improvement to real property, a claim does not generally accrue while the potential source is under construction. *Id*. (citing *Schneider*, 147 S.W.3d at 279). "But once operations begin and interference occurs, the limitations runs against a nuisance claim just as against any other." *Id.* However, "accrual occurs upon notice of injury, even if the claimant does not yet know the full extent of damages." *Yalamanchili v. Mousa*, 316 S.W.3d 33, 38 (Tex. App. – Houston [14th Dist.] 2010, pet. denied) (citations omitted).

this in a given case ought to be adopted." *Gilbert Wheeler*, 449 S.W.3d at 481 (quoting *Pac. Express Co. v. Lasker Real–Estate Ass'n*, 81 Tex. 81, 16 S.W. 792, 793 (1891)).

According to the Texas Supreme Court, "a nuisance ***may*** be considered temporary" (1) if "it is uncertain if any future injury will occur," (2) "if future injury is liable to occur only at long intervals," (3) if the nuisance is "occasional, intermittent or recurrent, ***or***" (4) if it is "sporadic and contingent upon some irregular force such as rain." *Huynh*, 694 S.W.3d at 677-78 (quoting *Schneider*, 147 S.W.3d at 272) (emphasis added and internal quotation marks omitted in *Huynh*)). Thus, a nuisance that is occasional, recurrent, or affected by irregular weather forces in a manner that makes future damages difficult to quantify with reasonable certainty can be classified as temporary even though it is also imminent or likely to recur. *Id.* at 678 (citation omitted).

"Generally, when a nuisance is temporary, the landowner may recover only lost use and enjoyment. . . that has already accrued." *Id.* at 673 (quoting *Crosstex*, 505 S.W.3d at 610 (internal quotation marks omitted in *Huynh*)). Such backward-looking damages "are calculated as loss of rental value, ... or use value, ... or possibly the cost of restoring the land." *Id.* (quoting *Crosstex*, 505 S.W.3d at 610 (citations omitted in *Huynh*)); also citing *Houston Unltd., Inc. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 820, 826 (Tex. 2014) ("[A] landowner can recover lost fair market *or* the cost to repair or restore and loss of use, but not both."); DAN B. DOBBS & CAPRICE L. ROBERTS, LAW OF REMEDIES: DAMAGES, EQUITY, RESTITUTION § 5.1(1), at 508 (3d ed. 2018) ("[T]he damages may be measured either by reduced market value of the land or reduced rental value .... Plaintiff[s] in such cases may also recover for personal illness or inconvenience caused by the nuisance.")).

On the other hand, "a permanent nuisance may be established by showing that ***either*** the plaintiff's injuries ***or*** the defendant's operations are permanent." *Id.* at 678 (quoting *Schneider*,

147 S.W.3d at 283 (emphasis added in *Huynh*)). For example, "construction of a source of foul odors is likely to lower the market value of neighboring property permanently, even if operations are occasionally discontinued for months at a time." *Id.* (quoting *Schneider*, 147 S.W.3d at 276 (internal quotation marks omitted in *Huynh*)). If a nuisance is permanent, the owner may recover lost market value—a figure that reflects all losses from the injury, including lost rents expected in the future." *Id.* (quoting *Crosstex*, 505 S.W.3d at 610-11).

In addition, when the necessary foundational findings have been made, "[a] court may decide to abate a nuisance whether it is temporary or permanent." *Id.* at 673 (quoting *Crosstex*, 505 S.W.3d at 610). In other words, the harm from either a temporary or a permanent nuisance can satisfy the imminent harm prerequisite for injunctive relief. *Id.* at 679. "To be entitled to a permanent injunction, a party must prove (1) a wrongful act, (2) imminent harm, (3) an irreparable injury, and (4) the absence of an adequate remedy at law." *Id.* at 674 (quoting *Pike v. Tex. EMC Mgmt., L.L.C.*, 610 S.W.3d 763, 792 (Tex. 2020)). Relatedly, there are other circumstances in which a court may exercise its equitable power to enjoin a prospective nuisance. *1717 Bissonnet, L.L.C. v. Loughhead*, 500 S.W.3d 488, 497 (Tex. App. – Houston [14th Dist.] 2016, no pet.) (citing *Freedman v. Briarcroft Prop. Owners, Inc.*, 776 S.W.2d 212, 216 (Tex. App.–Houston [14th Dist.] 1989, writ denied)).

## B.     Texas Water Code

Texas Water Code § 11.086 generally prohibits a person from diverting or impounding the natural flow of surface water in a manner causing damage to another's property. *Trevino v. Patel*, No. 14-22-00497-CV, 2023 WL 5124662, at *1 (Tex. App. – Houston [14th Dist.] Aug. 10, 2023). Section 11.086 provides in relevant part:

> (a) No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded.
>
> (b) A person whose property is injured by an overflow of water caused by an unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow.

*City of Magnolia v. Smedley*, No. 09-15-00334-CV, 2018 WL 2246533, at *8 (Tex. App. – Beaumont 2018, no pet.) (quoting TEX. WATER CODE ANN. § 11.086(a), (b) (West 2008)). Damages are allowed under § 11.086 when "(1) a diversion or impoundment of surface water, (2) causes, (3) damage to the property of the plaintiff landowner." *Good River Farm, LP v. Martin Marietta Materials, Inc.*, No. 1:17-CV-1117-RP, 2023 WL 2904577, at *3 (W.D. Tex. Apr. 11, 2023), *aff'd sub nom.*, 100 F.4th 545 (5th Cir. 2024) (quoting *Dietrich v. Goodman*, 123 S.W.3d 413, 417 (Tex. App.—Houston 2003, no pet.)).

## C.    Trespass

Whereas nuisance is a type of legal injury, trespass is a cause of action–generally, an intentional tort.[4] *Town of Dish v. Atmos Energy Corp.*, 519 S.W.3d 605, 607 n. 2 (Tex. 2017) (citing *Stinson v. Fontenot*, 435 S.W.3d 793, 793 (Tex. 2014) (per curiam)). The owner of realty generally "has the right to exclude all others from use of the property." *Env't Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 424 (Tex. 2015) (quoting *Severance v. Patterson*, 370 S.W.3d 705, 709 (Tex. 2012)). Of course, this right to exclude may be relinquished. *Id.* (citing *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) (granting an easement is a

---

[4] Nuisance claims are frequently described as a "non-trespassory invasion of another's interest in the use and enjoyment of land." *Rankin v. FPL Energy, L.L.C.*, 266 S.W.3d 506, 509 (Tex. App. – Eastland 2008, pet. denied) (quoting *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 615 (Tex. App.–Houston [14th Dist.] 2001, pet. denied)).

relinquishment of the right to exclude)). Therefore, mere entry onto the property of another may not always be actionable as a trespass. *Id.*

## V. DISCUSSION

### A. Plaintiffs' allegations of injury

In addition to the allegations listed above, Plaintiffs have alleged in paragraphs 50 through 62 of the SAC "specific facts" which they claim support all of their causes of action. Dkt. No. 58 at 5. Concerning alleged damages and injuries which have already occurred, Plaintiffs allege the "mere announcement of the solar farms and two BESS by Defendants, recording of the Andrews option, filing and commencement of construction of transmission line easements and destruction of great swathes of oak trees thereby causing a diversion of water onto Plaintiff Hicks' land have caused and continue to cause a measurable diminution in the reasonable cash market value of Plaintiffs' real estate and constitutes a present and continuing trespass." SAC (Dkt. No. 53), ¶ 50. Plaintiffs further allege Defendants have cut "great swathes of mature oak trees" directly adjacent to Plaintiff Hicks Daphne Prairie Preserve which has caused the following damages and injuries:

- Flooding and erosion directly onto Plaintiff Hicks' land.

- Flooding and erosion directly into the local water sources – Campbell Creek, White Oak Creek (which is a major tributary to the Sulphur River), and Lake Wright Pattman (which is the Texarkana water supply).

- Dead trees and limbs choking these creeks and washing up on Plaintiff Hicks' land.

- Migration of a great number of feral hogs from the bottoms of these creeks onto Plaintiff Hicks' land thereby causing extreme hog damage where there was none or very little before.

- View pollution in the form of barren land and dead and dying oak trees, stumps and limbs where there . . . were mature oak trees.

*Id.*, ¶¶ 51-56. As additional damages and injuries which have already occurred, Plaintiffs allege as follows:

- Defendants engaged Spectrum to enter upon Plaintiff Hicks' land and used an existing waterline easement to run internet cable, not for the service of the residents of Franklin County as Plaintiff's were first lead to believe, but rather to service the solar farm offices and BESS. This, in addition to being a continuing trespass, also causes water intrusion and erosion directly on Plaintiff Hicks' land.

- Transmission line easements, 200 to 300 feet wide, to Oncor, have been recorded for the purpose of transmitting electricity to and/or from the solar farms and BESS. One of these transmission easements runs directly along and parallel to the west property line between Plaintiff Hicks' Daphne Prairie Preserve and former Defendant Andrews property. The destruction of the oak trees described above, is either in conjunction with construction of said transmission line and/or the solar farm itself. In other words, the heretofore unobstructed view from Plaintiff Hicks' Daphne Prairie Preserve will either contain a 600 plus thousand solar panel glare pollution or a huge transmission line, or both. This construction is currently in process and has already caused some of the injuries and damages alleged herein. The transmission lines will be uninsulated and will pose a health risk both to human life and certainly to the life of migrating animals who happen to run afoul of them. This will disturb the entire ecosystem (wild and plant life), the protection and preservation of which is the whole purpose of the Daphne Prairie Preserve.

- Defendants have allowed Spectrum access to a large parking lot leased by Defendants which had previously been used in a cattle operation in order to access Plaintiff Hicks' land.

- Plaintiff Hicks, seeing the Daphne Prairie Preserve threatened with irreparable damage, which he has dedicated a great deal of his time, energy and resources to prevent is understandably under extreme mental anguish at the injuries and damages that the solar farms and BESS are and will continue to cause. Likewise, the Borens are suffering from the certainty that their retirement homestead will be included in an Evacuation Zone because of the well-known ultra-hazardous nature of lithium batteries. This causes Plaintiffs immediate and severe mental anguish.

*Id.*, ¶¶ 57-60.

Plaintiffs also include specific allegations regarding the elements of the negligent nuisance, intentional nuisance, strict liability nuisance, and anticipatory nuisance claims (*id.*, ¶¶ 63-86), as well as the Texas Water Code and trespass claims (*id.*, ¶¶ 87-99).

**B.    Plaintiffs' negligent, intentional, and strict liability nuisance claims**

Defendants <u>first</u> assert the SAC "remains too speculative and based on future events to state a cause of action for Plaintiffs' claims that must be based on an injury already suffered

(negligent, intentional, and strict liability nuisance)." Dkt. No. 54 at 7. Urging the Court to disregard all allegations of potential future harm, Defendants contend Plaintiffs' remaining allegations of harm that has already occurred (flooding, erosions, washed-up trees and limbs, migration of feral hogs, view pollution, continuing trespass of allowing Spectrum to enter Hicks' land and use an existing waterline easement to run internet cable, and mental anguish) "do not meet the threshold necessary to state a claim for relief." *Id*. at 8; *see also id*. at 9-14. Defendants next assert Plaintiffs have failed to allege essential elements of their claims of intentional nuisance, negligent nuisance, and strict liability nuisance.

1.    **Whether the SAC sufficiently alleges that a nuisance currently exists**

Whether a defendant may be held liable for causing a nuisance depends on (1) the culpability of the defendant's conduct, (2) whether the interference is a nuisance, and (3) whether the interference caused loss or damage. *Enter. Crude GP L.L.C. v. Sealy Partners, L.L.C.*, 614 S.W.3d 283, 300 (Tex. App. – Houston [14th Dist.] 2020, no pet.) (citing *Crosstex*, 505 S.W.3d at 601, 604-07). Defendants dispute whether the allegations in the SAC are sufficient to qualify as a nuisance—and thus a legal injury. More specifically, Defendants argue the SAC fails to sufficiently allege injuries already suffered. Dkt. No. 54 at 6-8.

Putting aside the SAC's allegations of future harm, which are discussed as part of Plaintiffs' claim for injunctive relief through anticipatory nuisance below, Plaintiffs allege the following damages and injuries which have already occurred and are substantially interfering with the use and enjoyment of their land: (1) diversion of water, flooding, and erosion caused by commencement of construction of transmission line easements and the destruction of "great swathes of oak trees" directly adjacent to the Daphne Prairie Preserve (SAC, ¶¶ 50-53, 57); (2) incursion of feral hogs and dead trees and limbs onto the Daphne Prairie Preserve (*id.*, ¶¶ 54-55);

(3) view pollution for the Daphne Prairie Preserve "in the form of barren land and dead and dying oak trees, stumps and limbs where there was. . . mature oak trees" (*id.*, ¶ 57); (4) "noise pollution" from the prolonged construction period which "consists largely of the continual driving of piles," destroying Hicks' ability to enjoy the Daphne Prairie Preserve (*id.*, ¶ 14); (5) "extreme mental anguish at the injuries and damages that the solar farms and BESS are and will continue to cause" (*id.*, ¶ 60); and (6) "a measurable diminution in the reasonable cash market value of Plaintiffs' real estate" as a result of the "mere announcement of the solar farms and two BESS by Defendants, recording of the Andrews option, [and] filing and commencement of construction. . . ." of the proposed projects (*id.*, ¶ 50). Defendants contend these new allegations "cannot save the negligent, intentional, and strict liability nuisance claims" from dismissal under Rule 12(b)(6). Dkt. No. 54 at 9.

a.    **Allegations of flooding, erosion, washed-up trees and limbs, and migration of hogs**

A survey of nuisance cases reflects situations in which a defendant is found to have caused a nuisance by causing flooding on the plaintiff's property, *see*, *e.g.*, *Barnes v. Mathis*, 353 S.W.3d 760, 763-64 (Tex. 2011); emitting noxious odors, *see*, *e.g.*, *Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 154 (Tex. 2012); discharging water onto the plaintiff's land, *see*, *e.g.*, *Tennessee Gas Transmission Co. v. Fromme*, 153 Tex. 352, 269 S.W.2d 336, 338 (Tex. 1954); or invading the plaintiff's land with dust, noise, or bright lights, *see*, *e.g.*, *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269-70 (Tex. 2004). *Amini v. Spicewood Springs Animal Hosp., L.L.C.*, No. 03-18-00272-CV, 2019 WL 5793115, at *11 (Tex. App. – Austin Nov. 7, 2019, no pet.). Essentially, the common thread through Texas nuisance jurisprudence is that the defendant has invaded the plaintiff's property by some physical means, creating a "condition" that substantially interferes with the plaintiff's use and enjoyment of its land. *Id.*

In the SAC, Plaintiffs allege Defendants have invaded the Daphne Prairie Preserve by some physical means, creating a condition that substantially interferes with Hicks' use and enjoyment of his land. Among other things addressed below, Plaintiffs allege there has been trespass onto the Daphne Prairie Preserve through flooding, erosion, washed-up trees and limbs, and migration of feral hogs. Defendants argue the Court should disregard Plaintiffs' "general and broadly stated" allegations of flooding, erosion, presence of washed-up trees and limbs, and migration of feral hogs. Dkt. No. 54 at 9-10. Defendants argue these allegations are "naked assertions devoid of further factual enhancement" which fail to "nudge" the claims "across the line from conceivable to plausible." *Id.* (citations omitted).

Unlike in the first amended complaint, however, the legal conclusions in the SAC are supported by factual allegations. Because there are well-pleaded factual allegations of injury in the SAC, the Court assumes their veracity and determines whether they plausibly give rise to an entitlement of relief.[5] *See Iqbal*, 556 U.S. at 678. In the event the Court accepts Plaintiffs' allegations as true, Defendants argue the alleged injuries – mere erosion, flooding, and washing up of trees and limbs on land without any allegations as to the extent, degree, volume, frequency, etc. – "are neither substantial nor do they amount to unreasonable annoyances." Dkt. No. 54 at 10.

Defendants are correct that to rise to the level of nuisance, the interference must be "substantial" in light of all the circumstances. *Crosstex*, 505 S.W.3d at 596. Of course, "what is substantial will vary, within limits, according to circumstances." *Id*. at 595 (citation omitted). Whether an interference is substantial or merely a "trifle" or "petty annoyance" necessarily

---

[5] As urged by Defendants, however, Plaintiffs' allegations regarding the migration of "feral hogs" will not support a claim for nuisance because there is no duty of landowners in Texas "to guard against injury to someone in another location from every species of indigenous wild animals which may roam from the landowner's property." Dkt. No. 54 at 11 (quoting *Nichols v. McKinney*, 553 S.W.3d 523, 529 (Tex. App. – Waco 2018, pet. denied) (emphasis removed by Defendants)).

depends on the particular facts at issue, including, for example, the nature and extent of the interference, and how long the interference lasts or how often it recurs. *Id*. at 595-96 (quoting WILLIAM L. PROSSER, LAW OF TORTS 3d ed. § 88, at 601 ("[T]he duration or recurrence of the interference is merely one—and not necessarily a conclusive—factor in determining whether the damage is so substantial as to amount to a nuisance.")). Even a substantial interference does not constitute a nuisance unless the effect of the interference on those who would otherwise use and enjoy their land is "unreasonable." *Id.* at 596 (citation omitted). "To establish such a legal injury, the plaintiff must prove that the interference is substantial and the resulting discomfort or annoyance is unreasonable, but need not establish that the defendant's conduct or land use was unreasonable."[6] *Id.* at 601.

Although Defendants make a cursory argument that Plaintiffs' alleged injuries "as bare and plainly alleged by Plaintiffs" (Dkt. No. 54 at 10) are not substantial or unreasonable, Texas courts generally leave for the factfinder to determine questions of fact, such as:

> whether an interference with the use and enjoyment of property is substantial, whether the effects of such an interference on the plaintiffs are unreasonable, whether the defendant intentionally or negligently created the interference, and whether the interference results from abnormally dangerous activities.

*Olivarez v. Pena*, No. 13-22-00547-CV, 2023 WL 5611428, at *2 (Tex. App. – Corpus Christi-Edinburg Aug. 30, 2023) (quoting *Crosstex*, 505 S.W.3d at 609); *see also Enterprise Crude GP L.L.C.*, 614 S.W.3d at 301 (stating "whether the effects of interference are unreasonable is governed by an objective standard, accounting for numerous circumstance-based factors," and further stating the "determination is generally one of fact"); *see also Reed v. LKQ Corp.*, No. 3:14-CV-4412-L, 2018 WL 3328424, at *5 (N.D. Tex. July 6, 2018) (noting these issues are generally

---

[6] However, there must be some level of culpability on behalf of the defendant; nuisance cannot be premised on a mere accidental interference. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 604 (Tex. 2016).

questions of fact for the jury to decide and finding the defendant was not entitled to summary judgment as to Reed's intentional and negligent nuisance theories).Additionally, in determining whether an interference is substantial, courts may review whether the use impairs the adjoining property's market value. *Crosstex*, 505 S.W.3d at 595 (stating, as examples, that noises or odors from a horse stable can create a nuisance if the stable is "so kept, or so used, as to destroy the comfort of persons owning and occupying adjoining premises, and impair their value" and that gunpowder storage can create a nuisance when it is a "constant source of apprehension and alarm" which prevents the plaintiffs from renting their land "at any price" and substantially reduces the land's market value); *see also id.* at 609–12 & n.21 (discussing the types of damages available for nuisance as loss of rental or use value, cost of restoring land, or lost market value).

In the SAC, Plaintiffs specifically allege they have already suffered a measurable diminution in the reasonable cash market value of Plaintiffs' real estate, diminution which has occurred, in part, due to cutting down the oak trees and diversation of water. recovery for which has been allowed under a nuisance theory.[7] SAC (Dkt. No. 53), ¶ 50; *see also id.*, ¶ 24, 29, 37, 61-62, 80, 85-86. This issue is relevant to the question of whether an interference is substantial. Considering this, and further considering that questions of whether an interference is substantial and unreasonable in its effects are generally questions of fact for the jury, the Court declines to

---

[7] Defendants' motion does not address, nor does the Court consider at this time, whether Plaintiffs could, under the facts alleged here, recover lost-market-value property damages that they allege already incurred as a result of the announcement of the planned project. *See 1717 Bissonnet, L.L.C. v. Loughhead*, 500 S.W.3d 488, 498, 500 (Tex. App. – Houston [14th Dist.] 2016, no pet.) (stating that the "nuisance is merely anticipated and thus will not support an award of lost-market-value damages even if those damages have already occurred because of the plan to build the project" and further finding the trial court erred by denying the Developer's motion to disregard the jury's damages finding "because Texas law does not recognize a cause of action for damages resulting from a prospective nuisance **and that was the only liability theory submitted to the jury**") (emphasis added); *see also id.* at 507 (stating the Homeowners could assert such a future claim for damages once a nuisance existed).

recommend dismissal of Plaintiffs' intentional nuisance, negligent nuisance, and strict liability nuisance claims for failure to sufficiently allege injuries already suffered.[8]

Even though Plaintiffs do not need additional allegations of injury to survive dismissal, the Court addresses Defendants' arguments that Plaintiffs' allegations of "view pollution" (SAC, ¶ 57) and extreme mental anguish (*id.*, ¶ 60) will not support a claim for nuisance as a matter of law.

**b.     Aesthetic-based allegations (view pollution)**

Defendants assert the Court should disregard all of Plaintiffs' allegations regarding "view pollution" and other aesthetical complaints. Dkt. No. 54 at 11. In response, Plaintiffs argue the aesthetics complained of in the authorities cited by Defendants "were not the cause of financial damages." Dkt. No. 58 at 9. According to Plaintiffs, the "Daphne Prairie Preserve is financially dependent upon its surroundings and will suffer economic damages from 'view pollution.'" *Id.* In their reply, Defendants argue Texas case law does not support claims for nuisance based on aesthetic complaints, "even if the aesthetic complained of causes financial damages." Dkt. No. 61 at 3.

Texas courts have held that aesthetical complaints alone cannot support a nuisance finding. *See, e.g.*, *Jeansonne v. T–Mobile W. Corp.*, No. 01-13-00069-CV, 2014 WL 4374118, at *8 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (holding "Texas courts have not found a nuisance merely because of aesthetic-based complaints"); *Rankin v. FPL Energy, L.L.C.*, 266 S.W.3d 506, 509 (Tex. App.–Eastland 2008, pet. denied) (same). In a case where the plaintiffs failed to allege the defendants caused them to suffer any personal injury or property damage, a federal court held the

---

[8] Defendants do not address in their motion Plaintiffs' allegation of "noise pollution." SAC (Dkt. No. 53), ¶ 14 (alleging Defendants' construction "consists largely of the continual driving or pile which creates noise pollution"). "Noise, if sufficiently extreme, may constitute a nuisance." *Canales v. Vandenberg*, No. 14-22-00404-CV, 2024 WL 4351267, at *3 (Tex. App. – Houston [14th Dist.] Oct. 1, 2024) (citing *Pool v. River Bend Ranch, L.L.C.*, 346 S.W.3d 853, 857 (Tex. App.—Tyler 2011, pet. denied); also citing *Schneider Nat. Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269 (Tex. 2004) ("There is no question that foul odors, dust, noise, and bright lights—if sufficiently extreme—may constitute a nuisance.")).

plaintiffs' allegations that a nearby property "created an eyesore" and negatively impacted neighboring property values and sales were insufficient to state a claim for nuisance. *Ballard v. Bank of Am.*, No. CV H-14-3653, 2015 WL 12743631, at *3-*4 (S.D. Tex. Mar. 7, 2015) (citing *Shamburger v. Scheurrer*, 198 S.W. 1069, 1072 (Tex. Civ. App.–Fort Worth 1917, no writ) ("[T]he law will not declare a thing a nuisance because it is unpleasant to the eye, because all the rules of propriety and good taste have been violated in its construction, nor because the property of another is rendered less valuable, *nor because its existence is a constant source of irritation and annoyance to others*.") (emphasis added); *Dallas Land & Loan Co. v. Garrett*, 276 S.W. 471, 474 (Tex. Civ. App.–Dallas 1925, no writ) ("Matters that annoy by being disagreeable, unsightly, and undesirable are not nuisances simply because they may to some extent affect the value of property."); *City of Temple v. Mitchell*, 180 S.W.2d 959, 962 (Tex. Civ. App.–Austin 1944, no writ) ("The law does not concern itself with trifles, and therefore there must be a real and appreciable interference with the present usability of a person's land before he can have a cause of action under the rule here stated.")).

Like Plaintiffs' "feral hogs" allegations, Plaintiffs' "view pollution" allegations are not actionable "because as a matter of law aesthetic impact will not support a claim for nuisance." *Ladd v. Silver Star I Power Partners, L.L.C.*, No. 11-11-00188-CV, 2013 WL 3377290, at *3 (Tex. App. May 16, 2013, pet. denied) ("Texas law does not allow a plaintiff to recover on a visual nuisance claim based on aesthetic impact"). While aesthetic impact will not support a claim for nuisance as a matter of law, *id.*, that does not necessarily make Plaintiffs' aesthetic-based allegations irrelevant or inadmissible. *See Rankin,* 266 S.W.3d at 512 n. 13 (noting "in individual cases, aesthetical information may be relevant for a variety of purposes"). Thus, the Court is not

saying that evidence of aesthetics will be inadmissible. *Ladd*, 2013 WL 3377290, at *4 ("In *Rankin*, we did not say that evidence of aesthetics was never admissible.").

### c.    Mental anguish allegations

Finally, the Court considers whether, as urged by Defendants, Plaintiffs' alleged mental anguish "by viewing the initial stages of construction" of the solar farm are insufficient to maintain a nuisance claim. Dkt. No. 54 at 14. Defendants rely on *Maranatha Temple, Inc. v. Enterprise Products Co.*, 893 S.W.2d 92 (Tex. App.—Houston [1st Dist.] 1994, writ denied), where the only alleged injury was "fear, apprehension, or other emotional reaction that results from the lawful operation of industries in Texas." *Id.* at 100. Defendants' reliance on *Maranatha Temple* is misplaced.

Unlike the claimant in *Maranatha Temple*, Plaintiffs' alleged injury is not limited to fear, apprehension, or other emotional reaction alone. *See Enterprise Crude GP L.L.C. v. Sealy Partners, L.L.C.*, 614 S.W.3d 283, 301 (Tex. App. – Houston [14th Dist.] 2020, no pet.) ("Not only does Sealy Partners disavow any desire to recover for emotional harm, it seeks economic damages for lost market value of its property and lost profit. Sealy Partners contends that the blast zone resulting from the construction. . . encompasses its land and has depreciated the land's property value to the point where the property can no longer be developed commercially. Recovery for similar harm has long been allowed in Texas under a nuisance theory."). Throughout the SAC, Plaintiffs allege Defendants' actions have proximately caused Plaintiffs' immediate damages "by causing a measurable and demonstrative diminution in the value of Plaintiffs' land and mental anguish," as well as substantially interfering with the use and enjoyment of Plaintiffs' land and

causing them "unreasonable discomfort or annoyance."[9] SAC (Dkt. No. 53), ¶¶ 65-67, 71-73, 79-80.  As noted in *Enterprise Crude*, 614 S.W.3d at 301, recovery for economic damages for lost market value has been allowed in Texas under a nuisance theory.

Additionally, three years after *Maranatha Temple* was decided, the Texas Supreme Court stated that although mere nuisance has never been a basis for recovery of mental anguish in Texas, there is considerable authority for the proposition that a nuisance which impairs the comfortable enjoyment of real property may give rise to damages for "annoyance and discomfiture." *Likes*, 962 S.W.2d at 504 (citing cases). Earlier this year, the Texas Supreme Court noted that courts have considered "harm to the plaintiffs' health, or psychological harm to the plaintiffs' 'peace of mind' in the use and enjoyment of their property" as properly recoverable.  *Huynh*, 694 S.W.3d at 686, n. 54 (citing *Bruington v. Chesmar Homes, L.L.C.*, No. 08-23-00015-CV, 2023 WL 6972987, at *8 (Tex. App.—El Paso Oct. 20, 2023, no pet.) (quoting *Crosstex*, 505 S.W.3d at 596)).

**d.    Summary**

viewing the allegations in the SAC as a whole in the light most favorable to Plaintiffs and drawing all inferences in Plaintiffs' favor, Plaintiffs have sufficiently alleged Defendants' actions caused conditions that substantially interfere with Plaintiffs' use and enjoyment of their property, and that the effects of the substantial interference are unreasonable (i.e., noise, flooding, erosion, presence of washed-up limbs and trees, measurable diminution in the value of Plaintiffs' land, and annoyance and discomfiture / psychological harm to Plaintiffs' peace of mind during and as a result of Defendants' construction). Given the early stage of litigation, Plaintiffs' factual allegations,

---

[9] In their surreply, Plaintiffs clarify that certain damages allegations are included in the SAC to "put the damages that have already occurred from actions already taken in perspective" and to support Plaintiffs' pleading for prospective injunction which has specific requirements ("Imminent" and "no adequate remedy at law"). Dkt. No. 62 at 6; *see also* SAC (Dkt. No. 53), ¶ 61 (alleging Plaintiffs' damage is not merely "probable" or "more than reasonably certain" but is imminent because "the injury has already occurred in the form of mental anguish. . . .").

taken as a whole, are sufficient to qualify as a nuisance—and thus a legal injury. The Court recommends this part of Defendants' motion be denied.

**2.    Whether the SAC alleges the essential elements of each private nuisance claim**

Defendants next assert Plaintiffs have failed to allege essential elements of their private nuisance claims of intentional nuisance, negligent nuisance, and strict liability nuisance. A private nuisance claim includes the following elements:

> (1) the plaintiff had an interest in the land; (2) the defendant interfered with or invaded the plaintiff's interest by conduct that was negligent, intentional, or abnormal and out of place in its surroundings; (3) the defendant's conduct resulted in a condition that substantially interfered with the plaintiff's use and enjoyment of his land; and (4) the nuisance caused injury to the plaintiff.

*K & K Inez Properties, L.L.C. v. Kolle*, No. 13-21-00460-CV, 2023 WL 8941487, at *3 (Tex. App. – Corpus Christi-Edinburg Dec. 28, 2023) (quoting *Cerny v. Marathon Oil Corp.*, 480 S.W.3d 612, 622 (Tex. App.—San Antonio 2015, pet. denied)).

Specifically, Defendants argue (1) Plaintiffs fail to state a negligent nuisance claim because they fail to properly allege proximate cause; (2) Plaintiffs fail to state an intentional nuisance claim because they have failed to properly allege the necessary level of intent and culpability; and (3) Plaintiffs fail to state a strict liability nuisance claim because they have failed to properly allege the existence of an abnormally dangerous activity that is occurring. Dkt. No. 54 at 14-21.

**a.    Plaintiffs' negligent nuisance claim**

A plaintiff's negligent nuisance claim is governed by ordinary negligence principles, and a plaintiff must prove "the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach."[10] *Reed*, 436 F. Supp. 3d at 912-13 (citing *Crosstex*, 505 S.W.3d at 607

---

[10] Unlike a negligent nuisance claim, intentional nuisance and strict liability nuisance claims do not require proof of the legal duty owed. *In re Oncor Elec. Delivery Co. L.L.C.*, 694 S.W.3d 789, 802 (Tex. App. – Houston [14th Dist.] 2024, no pet.) (citation omitted).

(internal quotation marks omitted in *Reed*)). Here, Defendants challenge the proximate cause element.

Proximate cause has two components: (1) "cause in fact" and (2) foreseeability. *Starkey v. Enri*, No. 14-17-00224-CV, 2018 WL 4136876, at *5 (Tex. App. – Houston [14th Dist.] 2018, no pet.) (citing *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995); *Browning–Ferris, Inc. v. Hobson*, 967 S.W.2d 543, 546 (Tex. App.—Houston [14th Dist.] 1998, pet. denied)). "Cause in fact" means that the act or omission was a substantial factor in bringing about the injury, ***without which the harm would not have occurred***." *Id.* (quoting *Doe*, 907 S.W.2d at 477 (emphasis added in *Starkey*)). "Foreseeability exists if the actor, as a person of ordinary intelligence, should have anticipated the dangers his negligent act creates for others." *Id.* (quoting *Aleman v. Ben E. Keith Co.*, 227 S.W.3d 304, 310 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). The elements of proximate cause—cause in fact and foreseeability—cannot be established by mere conjecture, guess, or speculation. *Id.* (citing *W. Invs., Inc.*, 162 S.W.3d at 551).

Defendants assert Plaintiffs have not alleged sufficient facts for cause-in-fact *or* foreseeability. Dkt. No. 54 at 15-17. However, in the SAC, Plaintiffs allege the announcement of the solar farm and BESS by Defendants, recording of the Andrews option, filing and commencement of construction of transmission line easements, and destruction of great swathes of oak trees thereby causing a diversion of water onto Plaintiff Hicks' land is the proximate cause of Plaintiffs' immediate damages by causing a measurable and demonstrative diminution in the value of Plaintiffs' land and mental anguish. SAC (Dkt. No. 53), ¶¶ 66, 67. Plaintiffs also allege Defendants should have anticipated the dangers their actions would cause. *Id.*, ¶¶ 14 & n. 4, 29, 31, 36-37, 50, 51-54 (announcing a solar farm decreases land value and constructing requires

removing trees, changing water path, driving piles, etc.). Taking these facts as true, Plaintiffs have sufficiently alleged proximate cause.

Defendants' reliance on *Bonin v. Sabine River Auth. of Texas*, No. 1:17-CV-00134-TH, 2019 WL 1246259 (E.D. Tex. Mar. 1, 2019) ("*Bonin I*"), *report and recommendation adopted*, 2019 WL 1244705 (E.D. Tex. Mar. 18, 2019), *aff'd sub nom.*, 961 F.3d 381 (5th Cir. 2020) ("*Bonin II*") is misplaced. A careful reading of *Bonin* does not warrant dismissal of Plaintiffs' negligent nuisance claim at this early stage of the case.[11]

In that case, a group of around 300 property owners in Texas and Louisiana, who lived near the Sabine River and had suffered flood damage, filed suit in Texas state court against Sabine River Authority, Louisiana ("SRA-L") and Sabine River Authority of Texas ("SRA-T"). *Bonin II*, 961 F.3d at 383. The plaintiffs also brought negligence, trespass, and private nuisance claims against power companies (Entergy defendants), asserting they allowed one of two hydroelectric generators at the dam to remain inoperable for six months, which "contributed to raising the reservoir water levels and made the flood damage worse." *Id.* at 384. Following removal to federal court, the Entergy defendants filed a Rule 12(b)(6) motion to dismiss the claims against them. *Id.* at 384-85.

The magistrate judge's report and recommendation found that the plaintiffs failed to state a claim for negligence against the Entergy defendants for three "independently sufficient reasons." *Bonin II*, 961 F.3d at 387. First, the magistrate judge found that the plaintiffs "did not adequately allege any violations of the FERC license" by Entergy, because the FERC license does not impose minimum energy generation requirements upon Entergy for either of the generators. *Id.* at 387-88.

---

[11] There are cases suggesting the summary judgment procedure is not well adapted to the disposition of negligence cases because Texas courts usually consider proximate cause an issue for the jury. *See Davenport v. Bonini*, No. 1:22-CV-469, 2024 WL 69062, at *7 (E.D. Tex. Jan. 4, 2024) (citing cases); *see also Cuevas v. Westerman*, No. 1:14-CV-133, 2018 WL 6579041, at *7 (S.D. Tex. June 15, 2018) ("Proximate cause is usually an issue of fact, unless the evidence is undisputed and only one reasonable inference can be drawn."). Here, Defendants ask the Court to recommend dismissal pursuant to Rule 12(b)(6) at an even earlier stage than summary judgment.

Second, the magistrate judge found that under Texas state law, only state authorities may be found liable for damage caused by floodwaters, not private entities like Entergy, reasoning, "in short, a state rule granting immunity to private entities would bar liability even if Entergy violated the FERC license." *Id*. Third and finally, the magistrate judge found that the plaintiffs failed to sufficiently allege Entergy's operation of the generators was a proximate cause of plaintiffs' losses. *Id.*; *see also Bonin I*, 2019 WL 1246259, *10 (finding the plaintiffs had not alleged sufficient facts for both the cause-in-fact and foreseeability components of the proximate cause element).

The district court adopted the magistrate judge's report and recommendation over the plaintiffs' objections, dismissed all of the claims against the Entergy defendants, and remanded to Texas state court the remaining state constitutional takings claims SRA-L and SRA-T. *Bonin II*, 961 F.3d at 385. The Fifth Circuit affirmed the district court's dismissal on appeal. In doing so, the Fifth Circuit noted the plaintiffs only challenged the "third of three independent grounds for dismissal of their negligence claim" on appeal – that the plaintiffs failed to show that Entergy's operation of the generators was a proximate cause of the plaintiffs' losses. *Id.* at 388. Because the plaintiffs thus waived any argument with respect to the Entergy defendants' liability, the Fifth Circuit affirmed the dismissal of the plaintiffs' negligence claim against the Entergy defendants without substantive discussion. *Id.* (further affirming the dismissals of the plaintiffs' trespass and nuisance claims against Entergy defendants because the plaintiffs had not challenged these dismissals on appeal).

In their motion to dismiss, Defendants focus on the magistrate judge's alternative findings in *Bonin I* as to cause-in-fact and foreseeability. Although the magistrate judge focused his

proximate cause analysis on the "floodwaters" issue,[12] the magistrate judge alternatively held (assuming the analysis concerning floodwaters and surface waters was incorrect) that the plaintiffs' negligence claim (and by extension, negligent nuisance claim) also failed to allege sufficient facts for the proximate cause element. *Bonin I*, 2019 WL 1246259, at *7-8. Specifically regarding cause-in-fact, the magistrate judge reasoned as follows:

> The Plaintiffs have essentially alleged that the Entergy Defendants' failure to fix Unit #2 furnished a ***condition*** (i.e. the condition of too much water in the upstream body) that made the Plaintiffs' injuries possible, but "furnish[ing] a condition" is insufficient to establish cause-in-fact. *See IHS Cedars* [*Treatment Ctr. of DeSoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004)]. The operative complaint does not allege any facts that the water remaining in the upstream body actually resulted in any flooding of the Plaintiffs' properties that would not have occurred otherwise. The Plaintiffs have not alleged how an operational Unit #2 would have changed the amount of water released from the spillway gates prior to the flooding of the Plaintiffs' properties. The bare-bones factual allegations made by the Plaintiffs are not enough to state a plausible cause-in-fact for the Plaintiffs' negligence claim. Because of the Plaintiffs' failure to allege facts showing the cause-in-fact of their injuries by the Entergy Defendants' actions, the negligence claim should be dismissed for failure to state a claim for which relief can be granted.

*Id.* at *8 (emphasis original). Specifically regarding foreseeability, the magistrate judge reasoned as follows:

> The Plaintiffs have not alleged any facts that directly address the Entergy Defendants' ability to foresee the danger created by leaving Unit #2 in disrepair. . . . The operative complaint does not allege that the Entergy Defendants knew (or should have known) that a non-operational Unit #2 might cause excess water to remain in the upstream body of water, nor how excess water might create any kind

---

[12]In finding the plaintiffs' negligence claim against the Entergy defendants should be dismissed because the defendants did not proximately cause any damage by waters that they had a legal duty to control, the magistrate judge focused on the important difference between "floodwaters" and "surface waters" under Texas law before concluding that the Entergy defendants owed no duty to control the alleged floodwaters, they could not breach a duty they did not owe, and they could not proximately cause damages if they had no duty to control the waters in the first place. *Bonin I*, 2019 WL 1246259, at *6; *see also id.*, ¶ 7 ("Stated another way, the operative complaint fails to allege sufficient facts to state a negligence claim for which relief can be granted because it includes only allegations that the plaintiffs were harmed by floodwaters, not surface waters.").

Defendants do not argue this case involves alleged floodwaters. The SAC does not use the term "floodwaters." In connection with their Texas Water Code claim, Plaintiffs allege Defendants have caused and will continue to cause the diversion or impoundment of the natural flow of surface water onto Plaintiffs' land. SAC (Dkt. No. 53), ¶ 90; *see also* ¶ 91.

of danger. The operative complaint does not address how a person of ordinary intelligence would anticipate that Unit #2 being non-operational would create or exacerbate property damage downstream in the event of an extreme rainfall event that causes flooding of the Sabine River.

*Id.* at *9.

As *Bonin* concerned only flooding, Defendants characterize Plaintiffs' alleged injury as related to the alleged flooding, erosion, and intrusions onto Hicks' Daphne Prairie Preserve. According to Defendants, like the Entergy defendants in *Bonin*, "all that can be taken from Plaintiffs' allegations . . . of flooding, erosion, washed-up trees and tree limbs, and feral hogs are that Defendants furnished a condition which made the injury possible." Dkt. No. 54 at 16. However, Defendants do not address the other allegations of alleged injury, namely that Defendants' leasing of nearby acreage for "solar placement," announcement of the solar farms and BESS, the recording of the Andrews option, and the filing and commencement of construction of transmission and internet communication line easements to serve the BESS for both projects have caused a "measurable diminution in the reasonable cash value of Plaintiffs' real estate" and caused psychological harm to Plaintiffs' peace of mind in the use and enjoyment of their property. SAC (Dkt. No. 53), ¶¶ 11, 80; *see also id.*, ¶¶ 37, 50. Thus, unlike *Bonin*, the SAC alleges sufficient facts to conclude Defendants' actions actually caused surface water to be diverted onto Plaintiffs' property. *Id.*, ¶¶ 14 & n.4 (alleging the ongoing construction consists of "continual driving of piles" and further alleging that leveling ground to install panels destroys topsoil), 21 (alleging Saddle House's installation disturbs the water flow from "a 495 foot elevation rushing to the 400 foot levels in the preserve"), 50-52, 57-58.

This case differs from *Bonin* regarding foreseeability as well. Where the *Bonin* court found the operative complaint did not allege that it was foreseeable that not operating one of two generators would create or exacerbate property damage during an extreme rain event, here the

SAC contains sufficient foreseeability allegations. According to Plaintiffs, the residents of Franklin County "are largely opposed to the placement of solar farms," and there is a general "uprising" of local citizens against solar farms and BESS. *Id.*, ¶ 36. Plaintiffs further allege Defendants have experienced "identical consequences in Hicks County; have engaged in a public relations campaign attempting to minimize the potential problems and have offered weak mediation efforts." *Id.*, ¶ 69.

The Court recommends this part of Defendants' motion be denied.

**b.    Plaintiffs' intentional nuisance claim**

A defendant may be held liable for intentionally causing a nuisance based on proof that he intentionally created or maintained a condition that substantially interferes with the claimant's use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. *Crosstex*, 505 S.W.3d at 604-05. A plaintiff may establish intent with proof that the defendant acted with a specific intent to inflict injury or a malicious desire to so harm by causing the actionable interference. *Reed*, 436 F. Supp. 3d at 912 (citing *Crosstex*, 505 S.W.3d at 605). "But an intent to inflict injury or desire to harm is not required to show intent; the plaintiff can establish intent with evidence that the defendant acted with the belief that the interference was 'substantially certain to result from' the defendant's conduct." *Id.* (quoting *Crosstex*, 505 S.W.3d at 605 (quoting *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985))). That is, an intentional invasion may be "an invasion that the actor knowingly causes in the pursuit of a laudable enterprise without any desire to cause harm." *Id.* (quoting *Crosstex*, 505 S.W.3d at 605 (quoting Restatement (Second) of Torts § 8A cmt. B)).

Plaintiffs have sufficiently alleged that Defendants act for the purpose of causing the interference that constitutes the nuisance or know that the interference is resulting or is

substantially certain to result from Defendants' conduct. Plaintiffs allege "Defendants intend to cause and have caused and unless enjoined, will continue to cause an immediate, temporary and permanent unreasonable nuisance to Plaintiffs and Plaintiffs' real estate for which there is no adequate remedy at law." SAC (Dkt. No. 53), ¶ 69. According to Plaintiffs, there is "substantial certainty that this substantial and unreasonable nuisance is intended by Defendants," as demonstrated by the fact that "Defendants have experienced identical consequences in Hicks County; have engaged in a public relations campaign attempting to minimize the potential problems and have offered weak mediation efforts. . . ." *Id.*

Defendants argue the allegations regarding Defendants' community involvement and engagement indicate an intent *not* to cause negative consequences. Dkt. No. 54 at 18. However, that is a factual dispute not suitable for resolution on a motion to dismiss. Further, Plaintiffs allege the residents of Franklin County "are largely opposed to the placement of solar farms," and there is a general "uprising" of local citizens against solar farms and BESS. SAC  (Dkt. No. 53), ¶ 36. All of the allegations, when viewed in the light most favorable to Plaintiffs, suggest Defendants know that the interference (economic harm to Plaintiffs' properties' market value and/or psychological harm to Plaintiffs' peace of mind) is resulting or is substantially certain to result from Defendants' conduct.  The Court recommends this part of Defendants' motion be denied.

**c.    Plaintiffs' strict liability claim**

The third category of nuisance-based claims (strict liability) includes those based on "other conduct, culpable because abnormal and out of place in its surroundings, that invades another's interests." *Crosstex*, 505 S.W.3d at 607 (quoting *Likes*, 962 S.W.2d at 503). The strict liability basis for a claim alleging a nuisance must be based on conduct that constitutes an "abnormally dangerous

activity," and not just an activity that is "abnormal and out of place in its surroundings." *Id*. at 617 (citations omitted). The allegations in the SAC do not support such a cause of action.

Plaintiffs allege the proposed "solar farm and BESS are abnormal and out of place; are an abnormally dangerous activity; and involve abnormally dangerous substances creating a high degree of risk of serious injury." SAC (Dkt. No. 53), ¶ 75. However, for this claim, the Court considers only the allegations of conduct that has already occurred or is occurring. *Id*., ¶ 79 (allegations regarding the announcement of the solar farm and BESS, recording of the Andrews option, filing and commencement of construction of transmission line easements and associated destruction of oak trees causing a diversion of water and other intrusions).[13] Plaintiffs have not sufficiently alleged that the activities Defendants have done constitute "abnormally dangerous activity." *See Lara v. Encana Oil & Gas* (*USA*), *Inc.*, No. CV H-18-4585, 2021 WL 3878884, at *1 (S.D. Tex. Apr. 26, 2021) (stating the plaintiffs alleged "nothing more than legal conclusions to say that Encana's conduct was abnormally dangerous" and "[n]o facts were pleaded for how Encana's operation of the plant is abnormally dangerous"); *see also Dealer Computer Servs., Inc. v. DCT Hollister Rd, L.L.C.*, 574 S.W.3d 610, 623 (Tex. App. – Houston [14th Dist.] 2019, no pet.) (stating none of the arguments regarding the operation of Staples's warehouse or that additional paving "resulted in substantial flooding and drainage issues that burden" DCT's facility and the surrounding properties and community asserted that Staples engaged in abnormally dangerous conduct that created a high risk of serious injury).

---

[13] The Court will consider in its discussion below on Plaintiffs' claim for injunctive relief through anticipatory nuisance Plaintiffs' allegations that the proposed solar farms and BESS will emit noxious chemicals which will leach into the soil and drain into Plaintiffs' land; the alleged danger of the BESS (consisting of lithium batters and subject to explosion, fire, and evacuation zone); and the alleged harm which will be caused by the solar panels. *See* SAC (Dkt. No. 53), ¶¶ 76, 80.

The closest allegation of conduct which could constitute an "abnormally dangerous" activity would be Defendants' alleged construction of transmission lines for the purpose of transmitting electricity to and/or from the solar farms and BESS. SAC (Dkt. No. 53), ¶ 58. However, Plaintiffs' pleadings, accepted as true, are insufficient to raise a question of fact as to whether the alleged interference resulted from abnormally dangerous or ultra-hazardous conduct by the construction of transmission lines. As acknowledged by the Restatement, "the transmission of electricity. . . [is not] deemed to be an abnormally dangerous activity." *In re Oncor Elec. Delivery Co. L.L.C.*, 694 S.W.3d 789, 802 (Tex. App. – Houston [14th Dist.] 2024, not pet.) (quoting RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL & EMOTIONAL HARM § 20 cmt. h (Am. L. Inst. 2010)). Plaintiffs cite no Texas court case that has held that the transmission or distribution of electricity is an abnormally dangerous activity giving rise to a nuisance injury for which a defendant is strictly liable. *Id.* As such, the Court recommends Defendants' motion to dismiss Plaintiffs' strict liability nuisance claims be granted.

**C.    Plaintiffs' claim for injunctive relief to prevent a prospective nuisance[14]**

**1.    Relevant background**

In the February 28, 2024 R&R on the Enel Defendants' first motion to dismiss, the Court noted Plaintiffs had not alleged that the development of a solar farm/BESS was nuisance per se. *Hicks*, 2024 WL 1202922, at *12 (citing *Maranatha Temple*, 893 S.W.2d at 100 (stating the lawful use of property or the lawful conduct of a business cannot constitute a nuisance per se)). The Court explained that although not a nuisance per se, there was the possibility that Plaintiffs could amend

---

[14] Plaintiffs' request for injunctive relief is not a separate cause of action from their nuisance claims. *Riley v. Angelle*, No. 01-20-00590-CV, 2022 WL 3092892, at *8 n.4 (Tex. App. – Houston [1st Dist.] 2022, no pet.) (citing *Battista v. City of Alpine*, 345 S.W.3d 769, 776 (Tex. App.—El Paso 2011, no pet.)). Instead, injunctive relief is an equitable remedy, and a party's right to such relief is dependent on his ability to establish a probable right of recovery through another claim or cause of action. *Id.*

in such a way to fit into the cases relied upon by Plaintiffs that classified proposed sewage treatment disposal plants as a type of "legalized" nuisance which might be enjoined. *Id.* at *10-11 (citing *City of Marlin v. Holloway*, 192 S.W. 623 (Tex. Civ. App.—Austin 1917); *Cardwell v. Austin*, 168 S.W. 385 (Tex. Civ. App. – Galveston 1914)); also citing *City of Wylie v. Stone*, 16 S.W.2d 862, 863 (Tex. Civ. App.—Dallas 1929), *writ granted* (Oct. 30, 1929), *aff'd*, 34 S.W.2d 842 (Tex. Comm'n App. 1931) (stating "the nuisance here complained of does not belong to the category of those legalized, but, in a proper case, may be enjoined")). The Court further explained that "there are other circumstances in which a court may exercise its equitable power to enjoin a prospective nuisance." *Id.* at *11 (citing *1717 Bissonnet, L.L.C. v. Loughhead*, 500 S.W.3d 488, 497 (Tex. App. – Houston [14th Dist.] 2016, no pet.) (citing *Freedman v. Briarcroft Prop. Owners, Inc.*, 776 S.W.2d 212, 216 (Tex.App.–Houston [14th Dist.] 1989, writ denied))). However, the allegations in the first amended complaint were insufficient to show that the anticipated threatened injury is imminent and thus failed to state a plausible claim for injunctive relief to prevent a threatened injury. *Id.* at *12. Accordingly, the Court granted Plaintiffs leave to amend to address the deficiencies identified in the R&R, noting Defendants could refile a motion to dismiss in response to Plaintiffs' second amended complaint. *Id.*

Following the District Court's adoption of the R&R, Plaintiffs filed their SAC, alleging the proposed solar farms and BESS should be classified similarly to the "legalized category of cases which can be anticipatorily enjoined." SAC (Dkt. No. 53), ¶ 46. Plaintiffs allege the nuisance here is imminent and reasonably certain, having already resulted in damage and injury for which there is no adequate remedy at law. *Id.*, ¶ 47. According to Plaintiffs, when an attempt is made to enjoin an anticipated nuisance and the threatened injury is reasonably certain, a court will exercise its equitable power to restrain it. *Id.* Plaintiffs seek to enjoin Defendants' construction of a solar farm

or BESS unless and until Defendants can demonstrate to the Court the development will not constitute a nuisance, trespass, or violation of the Texas Water Code. *Id.*, ¶ 101.

## 2.    **Defendants' assertions**

In their motion to dismiss the SAC, which was filed on May 14, 2024, Defendants argue Plaintiffs' claim for injunctive relief through the theory of an "anticipatory nuisance" (whose "applicability has been confined to a small number of cases, none of which are applicable here") should be dismissed for similar reasons as outlined in the February 28, 2024 R&R. Dkt. No. 54 at 21. First, Defendants argue that Plaintiffs have not sufficiently alleged that the facts of the present dispute—the construction and operation of a solar plant by a non-governmental landowner—fit within the few cases involving enjoined sewage treatment plants which can be anticipatorily enjoined. *Id.* at 21-22. Second, Defendants assert Texas courts "have held that before the construction of a building and operation of a business not a nuisance per se will be enjoined, it must appear that the proposed use of the building will necessarily create a nuisance." *Id.* at 22. Third, Defendants assert Plaintiffs have not alleged, and cannot allege, that the conduct complained of is a nuisance per se. *Id.* at 23. Fourth, Defendants assert there are insufficient allegations as to the imminence of the alleged harm. *Id.*

On June 7, 2024, the Texas Supreme Court issued its lengthy order in *Huynh v. Blanchard*, 694 S.W.3d 648 (Tex. 2024).[15] Application of the law as outlined in detail in *Huynh*, in conjunction

---

[15] *Huynh* was a nuisance suit brought by neighbors of two poultry farms located on a single tract of rural land in Henderson County. *Huynh v. Blanchard*, 694 S.W.3d 648, 660 (Tex. 2024). A jury found that odors from the farms were a temporary nuisance (which was unchallenged on appeal), and the trial court granted permanent injunctive relief that effectively shut down the farms. *Id.* The farm owners and operators challenged the injunction on appeal, raising three issues: (1) whether the trial court abused its discretion in finding imminent harm; (2) whether equitable relief was unavailable because damages provided an adequate remedy; and (3) whether the scope of the injunction was overly broad. *Id.* Although the Texas Supreme Court rejected the first two challenges and thus upheld the trial court's authority to grant an injunction, the court concluded the trial court abused its discretion in crafting the scope of that injunction, which was broader than necessary to abate the nuisance. *Id.* The court reversed in part and remanded for the trial court to modify the scope of injunctive relief. *Id.*

with the holding in *1717 Bissonnet, L.L.C. v. Loughhead*, 500 S.W.3d 488 (Tex. App. – Houston [14th Dist.] 2016, no pet.), eliminates the need to consider Defendants' first and third arguments. Rather, the issues are whether the allegations in the SAC sufficiently allege the construction and operation of the planned project will necessarily create a nuisance and the existence of imminent harm.

**3.      Analysis**

**a.      Necessarily create a nuisance**

Viewing all of the allegations in the SAC in the light most favorable to Plaintiffs, Plaintiffs sufficiently allege injury will necessarily be sustained. Plaintiffs' allegations, construed liberally, allege, among other things, the danger from fire, emission of toxic chemicals and gasses, and explosions from Defendants' threatened conduct is "liable to occur and with consequent injury to the residences. . ., or greatly interfering with, if not entirely destroying, the proper enjoyment of such dwelling houses," allegations which the court in *Enterprise Crude GP L.L.C.* noted could constitute a nuisance.[16] 614 S.W.3d at 301-02. Specifically, Plaintiffs allege the "well-known danger of the lithium batteries comprising a BESS are fire, emission of toxic chemicals and gasses, and even explosion." SAC (Dkt. No. 53), ¶ 27 (alleging these large BESS (100,000 large truck

---

[16]The court stated as follows:

> As these cases illustrate, conditions such as the one at issue can constitute a nuisance depending on the relevant circumstances. *See Crosstex*, 505 S.W.3d at 600. Courts have held, for example, that a horse stable, an earthen dam, a gun-powder magazine, a cemetery, and, significantly, oil storage tanks can be a nuisance to nearby property owners. In *Boren* [*v. Magnolia Petroleum Co.*, 266 S.W. 623, 624 (Tex. Civ. App. 1924)], the court rejected the claimant's right to enjoin the construction of two large oil storage tanks, but noted that the storage of oils may nevertheless constitute a nuisance in certain circumstances if "danger from fire or explosion therefrom is continuous and imminent or liable to occur and with consequent injury to the residences. . ., or greatly interfering with, if not entirely destroying, the proper enjoyment of such dwelling houses." *Boren*, 266 S.W. at 624.

*Enterprise Crude GP L.L.C. v. Sealy Partners, L.L.C.*, 614 S.W.3d 283, 301-02 (Tex. App. – Houston [14th Dist.] 2020, no pet.) (internal citations and footnotes omitted).

sized DC batteries linked by cable) are "relatively new technology" and further alleging the New York state government imposed a moratorium on further construction after about "fifty fires and thirteen deaths in 2023" were attributed to lithium batteries). Plaintiffs allege the solar farms and BESS are particularly unsuited to inclusion in agricultural or residential areas and particularly unsuited to be located next to a unique prairie preserve. *Id.*, ¶ 34; *see also id.*, ¶ 16 (alleging Hicks' Daphne Prairie Preserve will be surrounded on three sides by at least one of the proposed solar farms and will suffer unique damage). According to Plaintiffs, a BESS should be surrounded by a 1.3 mile evacuation zone, and this would encompass not only Borens' land but also 500 residences, subdivisions, and various animal husbandry farms.[17] *Id.*, ¶ 34. Plaintiffs further allege there is "more than a possibility of a leak of hydrogen chloride and hydrogen fluoride (deadly gases) that, being heavier than air, flow across the ground creating a deadly fog to every living entity." *Id.*, ¶ 30 (alleging this would be "catastrophic and fatal to the Borens, anyone else in the Evacuation Zone and all wildlife even beyond if it is undiscovered for any period of time"). Accepting these allegations as true, they cannot be described as "completely hypothetical, speculative, and conclusory" as urged by Defendants. Dkt. No. 54 at 22.

Despite these detailed allegations, Defendants rely on *Inwood Forest Cmty. Imp. Ass'n v. R. J. S. Dev. Co., Inc.*, 630 S.W.2d 751, 753 (Tex. App.—Houston [1st Dist.] 1982, no writ) to argue the allegations in the SAC are insufficient to plead that the construction and operation of the planned project "will necessarily create a nuisance." Dkt. No. 54 at 22. However, the *Ironwood Forest* case, which was decided on motions for summary judgment, does not suggest that Plaintiffs'

---

[17] According to Plaintiffs, the "fire marshal visited a solar farm under construction on the Hopkins/Franklin County line; a 5,000 acre farm that extends seven (7) miles. The fire marshal was told that he could not inspect the solar farm or BESS for the potential of hazardous materials and was further told that in the event of a leak, fire or spill, it would be handled by company teams not local officials. (This was the Stampede solar farm which is a sister company to Defendants)." SAC (Dkt. No. 53), ¶ 34.

allegations are insufficient to plausibly allege an injury is imminent and will necessarily be sustained.

There, homeowners sought injunctive relief to enjoin the proposed construction and operation of an apartment complex and sewerage treatment plant incident thereto, alleging "the development of the proposed facilities would, by their very nature, constitute a private and public nuisance." *Inwood Forest Cmty. Imp. Ass'n*, 630 S.W.2d 752. The court stated that in order for the homeowners to have raised a fact question on the issue of nuisance, they must have shown the operation and construction of the proposed facilities would constitute a nuisance per se or that "it must appear that the proposed use of the building will necessarily create a nuisance." *Id.* at 753-54. Considering the proper summary judgment proof in the record, the court held the only proof presented by the homeowners was contained in the affidavits of two residents of the Inwood Forest area, neither of whom were familiar with apartment complexes or sewerage treatment plants. *Id.* at 754. The court concluded the affidavits contained "only subjective opinions and conclusions and thus were not competent summary judgment evidence,"[18] and affirmed the judgment of the trial court. *Id.* Defendants' similar arguments are not controlling at this stage of the case.

**b.    Imminent harm**

Defendants next assert there are insufficient allegations as to the imminence of the alleged harm. If the nuisance is actual (as the jury found in *Huynh*), the imminent harm prerequisite is met when the injury is ongoing, whether in a continuous or recurrent manner. *Huynh*, 694 S.W.3d at 679. However, if the nuisance is threatened, the prerequisite is met when injury is imminent and

---

[18] The appellate court also noted it had held in a "very similar case" that a party must exhaust prescribed administrative remedies prior to seeking injunctive relief by a collateral attack on an order if the administrative remedies are adequate. *Inwood Forest Cmty. Imp. Ass'n v. R. J. S. Dev. Co., Inc.*, 630 S.W.2d 751, 753 (Tex. App.—Houston [1st Dist.] 1982, no writ); *see also id.* at 752 (noting the development company pointed out the homeowners were not entitled to injunctive relief because they failed to exhaust their administrative remedies before filing suit).

will necessarily be sustained. *Id.* (citing *Holubec v. Brandenberger*, 214 S.W.3d 650, 657 (Tex. App.—Austin 2006, no pet.) ("*Holubec II*"); *Freedman v. Briarcroft Prop. Owners, Inc.*, 776 S.W.2d 212, 216 (Tex. App.—Houston [14th Dist.] 1989, writ denied); *O'Daniel v. Libal*, 196 S.W.2d 211, 213 (Tex. Civ. App.—Waco 1946, no writ)). "[A]n injunction will not lie to prevent an alleged threatened act, the commission of which is speculative and the injury from which is purely conjectural." *Id.* (quoting *Dallas Gen. Drivers, Warehousemen & Helpers v. Wamix, Inc., of Dallas*, 156 Tex. 408, 295 S.W.2d 873, 879 (1956)).

> Regarding imminent harm, Plaintiffs allege as follows:
>
> The panels, in such great numbers, concentrated in one spot, will shed toxic waste residue from the manufacturing process with initial rainfall and continue to do so via deterioration over the life of the panels. (This is particularly true of Chinese panels that are constructed of cadmium telluride.) This toxic waste, mixed with rain groundwater, will run onto Plaintiff's Hicks land which is less than 100 feet down stream of the proposed installations. The toxic waste will also pollute the water table and all surrounding lakes, rivers and streams.
>
> Denuding the ground beneath the panels will require toxic herbicides and increase erosion on Plaintiff's land. Solar farms create islands of increased heat. The construction period will be prolonged and consists largely of the continual driving of piles which creates noise pollution and will destroy Plaintiff Hicks' ability to enjoy the Daphne Prairie Preserve.
>
> Upon completion, the panels and inverters will create a continuous humming sound which will have the same deleterious effect. All of this noise pollution is detrimental to surrounding wild life. The uninsulated transmission lines will emit an annoying hum and are dangerous to both human and animal life.
>
> * * *
>
> Further, it will create a "temperature island" raising the ambient temperature in the vicinity by approximately five to ten degrees.
>
> All of the above have already and will continue to adversely impact the value of the land, both as a natural preservation of vintage Texas and as an asset.

SAC (Dkt. No. 53), ¶¶ 13-15, 23-24 (internal numbering omitted); *see also id.*, ¶¶ 61-62 (alleging the damage is "IMMINENT" and not merely "probable" and further alleging Defendants' actions

have caused, "in the form of measurable diminution in property value and mental anguish," and "if allowed to continue, will progressively cause irreparable injury to Plaintiffs Hicks' and Boren's [unique] real estate for which there is no adequate remedy at law"). Unlike in their first amended complaint, Plaintiffs sufficiently allege in their SAC that the anticipated threatened injury is imminent.

Relying on *Bruington v. Chesmar Homes, L.L.C.*, No. 08-23-00015-CV, 2023 WL 6972987 (Tex. App. – El Paso Oct. 20, 2023, no pet.), Defendants argue Plaintiffs' allegations are merely speculative and based on fear and apprehension of injury, which the court in *Bruington* held was insufficient to support a claim for injunctive relief. Dkt. No. 54 at 23. However, in *Bruington*, the issue was decided after the trial court held an evidentiary hearing on the Bruingtons' request for a temporary injunction. *Id.* at *2, *4. On appeal, the court held the Bruingtons' evidence "only established their fear or apprehension of future and speculative damage due to Chesmar Homes' activities, which is insufficient to support their claim for injunctive relief." *Id*. at *11. Therefore, the court agreed with the trial court that the Bruingtons "failed to establish their claim for injunctive relief was ripe of review." *Id.*  Here, while the allegations in the SAC may be excessive or eventually shown to be unfounded, in the current posture, accepted as true, they are not speculative, purely conjectural, or based merely on fear or apprehension of the possibility of injury.

A finding of imminent harm can follow from a variety of circumstances, including actual injury, a pattern of actions, a threat to undertake harmful action, and other non-speculative bases to conclude that harm is impending. *Huynh*, 694 S.W.3d at 679 (citing *Vaughn v. Drennon*, 202 S.W.3d 308, 313 (Tex. App.—Tyler 2006, pet. denied) (explaining that finding of imminent harm can be based on "actual injury, the threat of imminent harm, or another's demonstrable intent to do that for which injunctive relief is sought"); also citing *Bankler v. Vale*, 75 S.W.3d 29, 39 (Tex.

App.—San Antonio 2001, no pet.) ("Demonstrable intent to breach a restrictive covenant will support an injunction. . . ."")). Thus, "showing that the defendant will engage in the activity sought to be enjoined" is sufficient to establish imminent harm for purposes of injunctive relief. *Id.* (citing *Schmidt v. Richardson*, 420 S.W.3d 442, 447 (Tex. App.—Dallas 2014, no pet.) (citing *State v. Morales*, 869 S.W.2d 941, 946 (Tex. 1994))).

The allegations show Defendants' "demonstrable intent to do that for which injunctive relief is sought." *Vaughn*, 202 S.W.3d at 313; *see also Schmidt*, 420 S.W.3d at 447 ("Imminent harm is established by showing that the defendant will engage in the activity sought to be enjoined."). Plaintiffs allege Defendants have announced their intent to install the solar farms and BESS and have obtained leases for solar placement, "all as a forewarning of the coming placement of panels, inverters, and transmission towers to carry the electricity generated by the panels." SAC (Dkt. No. 53), ¶¶ 11, 12. Plaintiffs allege bulldozing and clearing to accommodate placement of the Saddle House solar panels and right-of-way have already commenced. *Id*., ¶¶ 11, 14. The allegations, taken as true on a motion to dismiss, provide specific details concerning the imminence of the alleged harm.

In the context of a Rule 12(b)(6) motion to dismiss, the Court finds the allegations in the SAC in support of Plaintiffs' request for injunctive relief to redress a prospective nuisance are sufficient to plausibly show an injury that is imminent and that will necessarily be sustained by the threatened actions of Defendants. The Court recommends this part of Defendants' motion be denied.

**D.    Plaintiffs' Texas Water Code § 11.086 claim**

**1.    Defendants' assertions**

Defendants next assert Plaintiffs do not allege "present significant damage" to their property, and thus Plaintiffs do not state a legally cognizable claim under Texas Water Code § 11.086(a). Dkt. No. 54 at 26. Defendants argue successful claims under § 11.086 "are those with allegations of (and ultimately evidence of) significant action done by the higher ground holder which causes damage [to] the lower ground holder." *Id.* at 25 (citing cases). According to Defendants, Plaintiffs do not "articulate significant actions or damages as seen in the relevant cases." *Id.* at 26.

**2.    Applicable law**

Texas Water Code § 11.086 states, "No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded." *Good River Farms, L.P. v. TXI Operations, L.P.*, 100 F.4th 545, 551 (5th Cir. 2024) (quoting TEX. WATER CODE ANN. § 11.086(a)). Texas courts have long held that adjoining landowners have a legally enforceable obligation to not wrongfully burden adjoining properties with stormwater runoff in greatly increased, concentrated, or unnatural quantities. *Tri-Con, Inc. v. Union Pac. R.R. Co.*, No. 1:20-CV-535-MAC-CLS, 2023 WL 5831504, at *9 (E.D. Tex. Aug. 4, 2023), *report and recommendation adopted*, 2023 WL 5746920 (E.D. Tex. Sept. 6, 2023) (citing, among other cases, *Bunch v. Thomas*, 49 S.W.2d 421, 423 (Tex. 1932) ("[I]t it is the generally recognized rule both of the civil and the common law that a landowner cannot collect surface water into an artificial channel or volume, or precipitate it in greatly increased or unnatural quantities upon his neighbor, to the substantial injury of the latter."); *Langford v. Kraft*, 498 S.W.2d 42, 46–47 (Tex. App.—

Beaumont 1973, *writ ref'd n.r.e.*) (holding that developers that increased both the quantity and the velocity of the runoff water and caused it to pass off onto adjoining land in increased quantities violated governing statute and common law); *Vien v. Del Buono*, No. 10-09-00318-CV, 2010 WL 5117248, at *3-4 (Tex. App.—Waco Dec. 15, 2010, pet. denied) ("[S]urface waters are waters from precipitation which migrate across land until they evaporate, are absorbed, or reach a water course. . . . Under the common law, adjoining landowners have interrelated rights and duties with regard to surface water.")).

**3.    Analysis**

Liberally construing the SAC, Plaintiffs have alleged Defendants' actions in bulldozing and clearing the land have increased the flow of surface water from Defendants' higher ground to Plaintiff Hicks' lower property. SAC (Dkt. No. 53), ¶¶ 11 ("Bulldozing and clearing to accommodate placement of solar panels and right-of-way has already commenced."), 13 (Hicks' land is less than 100 feet down stream of the proposed installations), 14 & n.4 (alleging the ongoing construction consists of "continual driving of piles" and further alleging that leveling ground to install panels destroys topsoil), 37 (alleging current construction of transmission and internet communication line easements) *see also id.*, ¶ 21 (alleging Saddle House's installation disturbs the water flow from "a 495 foot elevation rushing to the 400 foot levels in the preserve"). As acknowledged by Defendants in their motion, Plaintiffs allege Defendants have cleared trees on a portion of Defendants' property as part of constructing a transmission line easement and also that the ongoing construction has caused current erosion and flooding on the Daphne Prairie Preserve. *See* SAC (Dkt. No. 53), ¶¶ 50-52, 57-58; *see also* Dkt. No. 54 at 25-26.  However, Defendants assert Plaintiffs do not allege Defendants have "shifted the slope of their property, placed barriers

to divert the flow of surface water, or taken any action to impermissibly increase the flow of surface water onto Plaintiffs' property to cause damage."[19] Dkt. No. 54 at 26.

The alleged changes in *Vaughn v. Drennon*, 202 S.W.3d 308, 314 (Tex. App. – Tyler 2006, no pet.), a case relied upon by Defendants which was decided after the trial court held a trial, are similar to the allegations challenged by Defendants in their motion to dismiss. In *Vaughn*, the Drennons' property shared a boundary with property at a higher elevation owned by the Vaughns. *Id.* at 312. When Millard Vaughn made some changes to the topography of his property near its boundary with the Drennon property (such as clearing and removing trees and all undergrowth from the property, bulldozing and tilling the soil, altering the natural slope of land, and constructing dams), water began draining from the Vaughn property onto the Drennon property. *Id.*; *see also id.* at 314. After finding water damage to their property, the Drennons sued the Vaughns alleging nuisance and seeking a temporary injunction. *Id.* at 312. The trial court ordered the Vaughns to lower the elevation of their land along the east/west boundary shared with the Drennons by eighteen inches. *Id.* at 316. On appeal, the court held the trial court "did not err by ordering Millard Vaughn to alter the slope of his property" but reversed and remanded for clarification because the order did "not clearly describe the corrective measures Millard Vaughn [was] required to implement."[20] *Id.* at 324.

---

[19] According to Plaintiffs' response, "Defendants have virtually admitted the causal factor – that they have done preparatory work (the cutting of trees) which caused the intrusion of water." Dkt. No. 58 at 12.

[20] Similarly, in *Fairfield Ests. L.P. v. Griffin*, 986 S.W.2d 719 (Tex. App. – Eastland 1999, no pet.), after the Fairfield defendants began construction on their tract, there was a noticeable increase in the water flow onto and across the plaintiffs' tracts. *Id.* at 721. The plaintiffs then brought suit to recover damages and to secure an injunction to prevent the diversion of surface water onto their property. Following a trial by jury, the trial court rendered judgment that the plaintiffs recover monetary damages and that the defendants be permanently enjoined from "any alteration of the terrain" on the defendants' property. *Id.* at 720. On appeal, the court held there was sufficient evidence in the record that the defendants' construction caused the amount of surface water flowing over plaintiffs' property to increase and that the excess water caused erosion to the plaintiffs' property. *Id.* at 722-23. The court affirmed the trial court's judgment as to actual damages but reversed and remanded the injunction portion of the judgment because the injunction was overly-broad. *Id.* at 723-24.

Defendants assert Plaintiffs "do not clearly portray what or how much damage has occurred" to the Daphne Prairie Preserve through the alleged floodings and erosion. Dkt. No. 54 at 25. However, as clarified in their response, Plaintiffs are seeking injunctive relief for the alleged Texas Water Code violations. Dkt. No. 58 at 12 (asserting in response to Defendants' motion that violations of the Texas Water Code (and trespass) are remedied by injunctive relief and that these "two causes of action, alone, support retention of this lawsuit"); *see also* SAC (Dkt. No. 53), ¶¶ 90 (alleging the "lack of sunlight caused by the solar panels will denude the plant life on the Andrews property which will cause an increased flow and velocity of rain water onto Plaintiffs' property thereby causing an increased amount of erosion," and further alleging the "chemicals associated with the solar farm and BESS will cause this rainwater to be permeated with chemicals that are antithetical to the existing plant and animal life on Plaintiffs' property"), 91 ("Each and every intrusion of surface water caused by the acts of Defendants constitutes a violation of the Texas Water Code which will cause injury to Plaintiffs' property unless enjoined for which there is no adequate remedy at law.").

An injunction is an equitable remedy that is available for a violation of statutory water rights under § 11.086 of the Texas Water Code. *Damron v. Till*, No. 11-01-00355-CV, 2002 WL 32344943, at *1 (Tex. App. – Eastland Oct. 3, 2002, no pet.) (citations omitted). Section 11.086 does not require that the injury be "serious" in order for an injunction to be appropriate. *Id*. at *2. It is not necessary for a plaintiff to plead or prove that the damages resulting from an unlawful diversion are "'beyond the possibility of repair by monetary compensation in order to authorize the court to grant equitable relief.'" *Muniz v. Dugi*, No. 04-20-00528-CV, 2022 WL 1479052, at *6 (Tex. App. – San Antonio May 11, 2022, no pet.) (citation omitted).

In *Muniz*, the Dugis alleged the Munizes' construction on neighboring property caused flooding on the Dugis' property. *Muniz*, 2022 WL 1479052, at *1. The Dugis sued, asserting a water diversion action against the Munizes. *Id.* at *2. After the case was tried to the bench, the trial court granted the Dugis, among other things, injunctive relief on the water diversion action. *Id.* at *2. On appeal, the Munizes argued "there was no evidence presented that they diverted the natural flow of surface water, much less that they did so in a manner that damaged the Dugis' property." *Id.* at *6 ("They maintain that the surface water flowing from their property to the Dugis' property does so naturally because their property sits at a higher elevation and that the torrential rain events in 2018 caused the damages in this case.").

The appellate court held the evidence was legally and factually sufficient to support the trial court's findings that the Munizes' construction altered the grade of their lot; the altered grade caused a diversion of water into the Dugis' lot; but for the altered grade caused by the construction, the surface water would not have been diverted to the Dugis' lot; and the diversion caused the Dugis' damages. *Id.* at *7 (citing TEXAS WATER CODE ANN. § 11.086; also citing *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 84 (Tex. App.—San Antonio 2011, no pet.) ("We hold this case involved a classic example of surface water—water diffused over the ground from falling rain—diverted by a change in elevation because of the construction of the development.")).

The appellate court in *Muniz* noted a "lower estate must receive the surface waters naturally flowing thereon from a higher estate" but the lower estate "is not required to receive these waters except in their natural condition, untouched by the hands of man." *Id.* (quoting *Bunch v. Thomas*, 49 S.W.2d 421, 423 (Tex. 1932)). The *Muniz* court held the trial court correctly determined that the Munizes had a responsibility to stop the flow of surface water over and above the natural flow—the unlawful diversion—caused by the construction on their higher estate to the

Dugis' lower estate. *Id*. (citing *Boatman v. Lites*, 888 S.W.2d 90, 93 (Tex. App. – Tyler 1994, no writ) (temporary injunctive relief appropriate when evidence showed damage from diversion occurs with every heavy rain)).

Here, viewing all of the allegations in the light most favorable to Plaintiffs, the SAC sufficiently alleges that after Defendants began construction at a higher elevation near the boundary with the Daphne Prairie Preserve, which included clearing and removing trees and bulldozing the soil, water began draining onto Hicks' lower estate. The SAC plausibly alleges a viable claim under the Texas Water Code. Therefore, the Court recommends this part of Defendants' motion be denied.

**E.    Plaintiffs' trespass claim**

**1.    Defendants' assertions**

Finally, Defendants argue "Plaintiffs' trespass claim fails to sufficiently allege facts to support the element of an unauthorized entry and intent by the Defendants to commit an act which violates a property right." Dkt. No. 54 at 27. Plaintiffs allege the following constitute trespass: (1) Defendants engaged Spectrum to enter Hicks' land to run internet cable, and any invasion by Spectrum for the installation of internet cable is a trespass (SAC (Dkt. No. 53), ¶¶ 57, 94); (2) Any incursion of Hicks' land to maintain the internet cable to service Defendants' solar farms, BESS, and offices is a trespass (*id*., ¶ 95); (3) Any encroachment of diverted water onto Hicks' land constitutes a trespass (*id*., ¶¶ 52-53, 93, 96); (4) Erosion of Hicks' land caused by water incursion is a trespass (*id*., ¶¶ 52-53, 97); (5) Each tree trunk, branch or limb which washes up on Hicks' land constitutes a trespass (*id*., ¶¶ 54, 98); and (6) Each intrusion of feral hogs from the bottoms of these creeks onto Hicks' land constitutes a trespass (*id*., ¶¶ 55, 99).

In their motion, Defendants assert as follows:

Plaintiffs' do not clearly assert that Defendants intended to divert water outside of its natural course or engage in any conduct that would rise to the level of trespass. And, as previously stated, Defendants are not liable for the actions of feral hogs, especially when these hogs are not the legal property of the Defendants. Therefore, the only remaining allegations for Plaintiffs to stand on are (1) [invasion by Spectrum for the installation of an internet cable to service Defendants' project] and (2) [any incursion to maintain the internet cable]. Allegation (2) is a statement of future action for which trespass has not occurred. Allegation (1) presents a different issue regarding consent. Plaintiffs' pleading is unclear on whether "Plaintiff Hicks" gave consent for Spectrum to enter his property. No conclusive statement is given regarding Plaintiff Hicks' consent. Instead, Plaintiff alleges that "Defendants engaged Spectrum to enter upon Plaintiff Hicks' land and used an existing waterline easement to run internet cable, not for the service of the residents of Franklin County as Plaintiffs were first lead to believe, but rather to service the solar farm offices and BESS." This statement only opines as to the reason for the internet cable. It does not assert that consent was not given before the internet cable was run. Finally, any concern regarding access to establish internet falls to Spectrum, the party which is accused of trespass. Plaintiffs do not support, and Defendants do not contend, that Spectrum is their agent, nor is Spectrum a party to the suit at hand.

Without alleging that Plaintiffs did not give consent to access their land or that [Defendants] intended to commit an act that would violate a property right there is nothing for a trespass claim to stand on. Accordingly, this claim should be dismissed.

Dkt. No. 54 at 27-28 (internal footnote omitted).

## 2. Applicable law

"Trespass to real property is an unauthorized entry upon the land of another, and may occur when one enters—or causes something to enter—another's property."[21] *MQ Prosper N., L.L.C. v. Coulter*, No. 05-20-00800-CV, 2022 WL 17580198, at *8 (Tex. App. – Dallas Dec. 12, 2022, pet. denied), *review denied* (June 23, 2023) (quoting *Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011) (per curiam)). Any person who assists, advises, or encourages the commission of the trespass is liable as a trespasser. *Lisle v. DO-MO Joint Venture*, No. 05-22-00236-CV, 2023 WL 6226160,

---

[21] In some instances, an action can be both a trespass and a nuisance. *Rankin v. FPL Energy, L.L.C.*, 266 S.W.3d 506, 509 (Tex. App. – Eastland 2008, pet. denied) (citing *Allen v. Virginia Hill Water Supply Corp.*, 609 S.W.2d 633, 636 (Tex.Civ.App.–Tyler 1980, no writ) (continuing encroachment upon the land of an adjoining owner by either erecting or maintaining a building without any right to do so is a trespass and a private nuisance)).

at *6 (Tex. App. – Dallas Sept. 26, 2023, pet. filed), *review denied* (June 21, 2024). "[E]very unauthorized entry upon land of another is a trespass even if no damage is done or injury is slight." *Id.* at *5 (quoting *Lightning Oil Co. v. Anadarko E&P Onshore, L.L.C.*, 520 S.W.3d 39, 46 (Tex. 2017)). To recover damages for such a trespass, a claimant must prove (1) she owns or has a lawful right to possess real property, (2) the trespasser entered the claimant's land and the entry was physical, intentional, and voluntary, and (3) the trespass caused injury to the claimant. *MQ Prosper*, 2022 WL 17580198, at *8 (citing *Wilen v. Falkenstein*, 191 S.W.3d 791, 798 (Tex. App.—Fort Worth 2006, pet. denied)).

### 3.    Analysis

Like Defendants, the Court focuses on Plaintiffs' allegation that Defendants engaged Spectrum to enter Hicks' land to run internet cable to service the solar farm offices and BESS and that such "invasion by Spectrum for the installation of internet cable is a trespass." SAC (Dkt. No. 53), ¶¶ 57, 94. Defendants assert three reasons why Plaintiffs' claim for trespass fails: (1) Plaintiffs do not "support," and Defendants do not contend, that nonparty Spectrum is Defendants' agent; (2) Plaintiffs have failed to allege that Hicks did not give consent for Spectrum to access the Daphne Prairie Preserve; and (3) Plaintiffs have failed to allege Defendants intended to commit an act that would violate a property right. Dkt. No. 54 at 28.

Liberally construing all of the allegations in the SAC and viewing them in the light most favorable to Plaintiffs, Plaintiffs have plausibly pleaded that Defendants caused and assisted Spectrum's entry onto Hicks' land. "Intent can be shown by proof that, while the actor did not know his conduct would result in trespass, his actions were practically certain to have that effect." *Kozak v. LeFevre Dev., Inc*., No. 09-18-00369-CV, 2019 WL 2220305, at *7 (Tex. App. – Beaumont May 23, 2019, no pet.) (citation omitted).

Plaintiffs allege Defendants, after announcing the projects in question, filed the option on Andrews' land and recorded and constructed "transmission and internet line easements to serve the planned BESS for both Stockyard and Saddle House projects." SAC (Dkt. No. 53), ¶ 37. According to Plaintiffs, Defendants engaged Spectrum to enter upon Hicks' land to service the solar farm offices and BESS. *Id*., ¶ 57. Plaintiffs allege that "Defendants have allowed Spectrum access to a large parking lot leased by Defendants. . . to access Plaintiff Hicks' land." *Id*., ¶ 54; *see Barnes v. Mathis*, 353 S.W.3d 760, 764 (Tex. 2011) (defining trespass to real property as "unauthorized entry upon the land of another" including "when one enters—or causes something to enter—another's property").

A plaintiff asserting a trespass cause of action has the burden of proving it did not consent to defendant's entry onto the land. *Dean v. Mitchell*, No. 09-21-00267-CV, 2023 WL 6317683, at *9 (Tex. App. – Beaumont Sept. 28, 2023, no pet.). One form of legal consent to enter property is an express easement. *Wiley v. Wabtec Manufacturing Solutions, L.L.C*., No. 4:20-CV-345-SDJ, 2021 WL 4399532, at *4 (E.D. Tex. Sept. 27, 2021) (citing *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002)). If the beneficiary of an easement enters or uses land in a way that exceeds the rights expressly conveyed in the easement, a trespass has occurred. *Id.*

While a landowner may choose to relinquish a portion of their rights by granting an easement, "[u]nlike a possessory interest in land, an easement is a nonpossessory interest that authorizes its holder to use the property for only particular purposes." *Samaratunga Fam. Tr. v. Am. Tower, Inc*., No. A-17-CV-097 LY, 2017 WL 2274491, at *2 (W.D. Tex. May 24, 2017), *report and recommendation adopted sub nom*., 2017 WL 10841490 (W.D. Tex. July 25, 2017) (quoting *Marcus Cable*, 90 S.W.3d at 700). Therefore, "if a particular purpose is not provided for

in the grant, a use pursuing that purpose is not allowed."[22] *Id.* (quoting *Marcus Cable*, 90 S.W.3d at 701). While the common law recognizes that certain easements may be assigned or apportioned to a third party, the third party's use cannot exceed the rights expressly conveyed to the original easement holder. *Id.* (citation omitted). The Texas Supreme Court has recognized that while "the manner, frequency, and intensity of an easement's use may change over time to accommodate technological development. . . such changes must fall within the purposes for which the easement was created," because "an express easement encompasses only those technological developments that further the particular purpose for which the easement was granted." *Id.* at *3 (quoting *Marcus Cable*, 90 S.W.3d at 701-02).

Viewing the allegations in the light most favorable to Plaintiffs, there are sufficient allegations to plausibly show that Defendants acted without Hicks' authorization. Plaintiffs allege the Daphne Prairie Preserve has "enjoyed protected status for over 25 years" and Hicks "gifted a conservation easement on the land restricting development." SAC (Dkt. No. 53), ¶ 16. According to Plaintiffs, Defendants engaged Spectrum to enter upon Hicks' land and used an existing waterline easement to run internet cable, "not for the service of the residents of Franklin County as Plaintiff's were first lead to believe, but rather to service the solar farm offices and BESS." *Id.*, ¶ 57. *See CenterPoint Energy Houston Elec. L.L.C. v. Bluebonnet Drive, Ltd.*, 264 S.W.3d 381, 387 (Tex. App.—Houston 2008, pet. denied) ("An easement holder who exceeds the rights granted

---

[22] The easement at issue in *Marcus Cable* allowed an electric utility permission to construct and maintain "an electric transmission or distribution line or system" over private property. *Samaratunga Fam. Tr. v. Am. Tower, Inc.*, No. A-17-CV-097 LY, 2017 WL 2274491, at *3 (W.D. Tex. May 24, 2017), *report and recommendation adopted sub nom.*, 2017 WL 10841490 (W.D. Tex. July 25, 2017). Marcus Cable then contracted with the utility to attach its **cable** lines to the utility's poles. *Id.* (emphasis added). The property owners sued, claiming that the cable company's use exceeded the scope of the easement and that they had not consented to the placement of the cable lines across their property. *Id.* The court found that the easement allowed the utility to run lines for "electric transmission" and "electric distribution," and those terms are commonly and ordinarily associated with power companies conveying electricity to the public, which did not include running wire for cable television transmission. *Id.* (citing *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 706 (Tex. 2002)).

by the owner of the servient estate. . . commits a trespass."). The plain implication is that Plaintiffs did not consent to Spectrum entering Hicks' land to serve the solar farm.

Defendants' arguments raise a fact question not suitable for disposition under Rule 12(b)(6). *See Wiley*, 2021 WL 4399532, at *5. The SAC sufficiently states a claim for trespass, and the undersigned recommends that Defendants' motion to dismiss on that ground be denied.

## VI. RECOMMENDATION

For the above reasons, it is

**RECOMMENDED** that Stockyard Solar Project, LLC and Saddle House Solar Project, LLC's Motion to Dismiss Second Amended Complaint for Failure to State a Claim (Dkt. No. 54) be **GRANTED IN PART AND DENIED IN PART**. Specifically, it is recommended that Defendants' motion be granted as to Plaintiffs' strict liability nuisance claim but denied as to Plaintiffs' claims for negligent nuisance, intentional nuisance, injunctive relief to prevent a prospective nuisance, Texas Water Code violations, and trespass. It is further

**RECOMMENDED** that Plaintiffs' strict liability nuisance claim be dismissed with prejudice.

<u>Objections</u>

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

SIGNED this the 21st day of November, 2024.

_____
J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE